IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **RAQUEL I. VILLARREAL,** § | | |
| *Plaintiff,* § | | |
| § | **CIVIL ACTION NO.** | |
| § | | |
| **VS.** § | | |
| § | | |
| § | | |
| **TROPICAL TEXAS BEHAVIORAL** § | | |
| **HEALTH,** § | | |
| *Defendant* § | **(JURY REQUESTED)** | |

**PLAINTIFF RAQUEL I. VILLARREAL'S ORIGINAL COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT:**

**COMES NOW, RAQUEL I. VILLARREAL** (hereinafter referred to as Plaintiff) complaining of the **TROPICAL TEXAS BEHAVIORAL HEALTH** (hereinafter referred to as the "Defendant", the "Defendant employer", or "Tropical Texas") and for such causes of action would respectfully show unto the Court and the Jury as follows:

**I.
Parties**

1. Plaintiff, RAQUEL I. VILLARREAL, is an individual residing in McAllen, Hidalgo County, Texas.

2. Defendant TROPICAL TEXAS BEHAVIORAL HEALTH is a company authorized to conduct business in the State of Texas, whose principal place of business is located at 5115 South McColl, Edinburg, Texas 78539, and may be served as follows:

Terry Crocker
Chief Executive Officer
1901 S. 24th Street
Edinburg, Texas 78539

## II.
## Venue and Jurisdiction

3. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

## III.
## Administrative Procedures

4. Within 300 days of the occurrence of the acts complained of, Plaintiff filed her initial complaint with the Equal Employment Opportunity Commission alleging that the Defendant had committed unlawful employment practices against the Plaintiff. The formal charge and the "Dismissal and Notice of the "Right to File Civil Action Letter" were filed and received as follows:

| | |
|---|---|
| Formal Complaint Filed: | November 1, 2018 |
| Notice of Right to File A | |
| Civil Action Letter Received: | November 20, 2018 |

5. On November 20, 2018, Plaintiff received from the United States Equal Employment Opportunity Commission, Plaintiff's Dismissal and Notice of Rights letter allowing the Plaintiff to file this lawsuit within ninety days of its receipt.  Plaintiff's statutory claims were filed within ninety days of its receipt. Plaintiff further invokes the relation back theory as well as any and all equitable doctrines necessary to satisfy the administrative requirements set forth by law.  All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

## IV.
## Factual Background

6. On or about April 2018, Plaintiff was initially employed by Tropical Texas Behavioral Health as a Program Specialist/Licensed Professional Healing Arts (LPHA). During her time of employment with Tropical Texas, Plaintiff performed all her duties with dedication, hard work and undivided loyalty.

7. Plaintiff is a single parent to a 13year old child with multiple disabilities who requires care for all of her daily living activities. Plaintiff's daughter has numerous medical specialists and has an average of 2-3 doctor's appointments a month. Plaintiff's ex-husband (child's father) gave up custodial rights in May 2017 including giving up his rights to make any decisions about their daughter's education and medical care. He also chose not to meet his obligation to take their child to her doctor's appointments. This placed all the responsibility on Plaintiff. Plaintiff has faced additional challenges in her work due to his lack of meeting his parental obligations. Plaintiff also struggles with a mental health condition diagnosed as depression, and in the last few months was diagnosed as a severe condition that required medical treatment.

8. Repeatedly, during the last year as an employee at Tropical Texas, Plaintiff felt pressured due to the constant reminders that she was missing too much work and was not accumulating PTO (paid time off). She was told by supervisors that Tropical Texas frowned upon employees who did not have accumulated PTO and that it could be reason for disciplinary action or termination.

9. Plaintiff obtained intermittent Family Medical Leave Act (FMLA) leave for her daughter from her Pediatrician, Dr. A. Mercado on July 2017 in order to protect her job when having to request time off to meet her daughter's medical needs and doctor's appointments. Plaintiff also developed her own health conditions in December 2017 when her Gynecologist, Dr. A Tey diagnosed a medical condition that would require surgery. When Plaintiff spoke to her supervisor about needing to be out in December to have the surgery, he asked if Plaintiff could postpone the surgery so that she would not miss work in December because the department was short on staff and he needed her to be at work. Plaintiff consulted with her doctor and the surgery was postponed for January 2018.

10. On January 4, 2018, Plaintiff's medical condition worsened. Plaintiff's doctor provided a medical excuse and surgery was scheduled for January 10, 2018. Plaintiff provided

Tropical Texas with an excuse and FMLA documents.

11. On March 9, 2018, Plaintiff's daughter had a scheduled MRI in San Antonio, Texas for her heart and brain which was ordered by her cardiologist, Dr. Brennan. In April 2018, the doctor provided results of the MRI, stating that Plaintiff's daughter was needing another open-heart surgery or face a prognosis of congestive heart failure. However, due to her multiple medical conditions Plaintiff was advised that she must take into account the high risk of the surgery and possible result in her death. This news caused a lot of mental distress and Plaintiff was out of work for about 4 days.

12. In May 2018, Plaintiff began to experience additional stressors and developed more significant symptoms of depression. In June 2018, she had a full-blown depressive episode which was diagnosed as severe depression. Plaintiff had to be out of work. Plaintiff's family doctor's office, Jessica Porras, PA provided medical treatment and prescribed medication. She also referred her to counseling services. Plaintiff had FMLA documents completed to be out of work due to the severity of her condition and provided them to Human Resources ("HR"). Plaintiff returned to work on July 12, 2018 because she was notified by Tropical Texas that she no longer had FMLA and was going to be left with unprotected leave.

13. On July 12, 2018, (Thursday), Plaintiff returned to work and spoke with acting Supervisor, Alejandro Pacheco (assigned while Josue Gutierrez-her immediate supervisor was out on vacation). Plaintiff expressed that due to her recent medical condition and treatment, she needed to reduce her work hours and have a flex schedule so that she could attend to her and her daughter's medical. The acting supervisor stated that he did not anticipate it being a problem and that he was glad that Plaintiff was back at work to provide assistance with diagnosis of incoming patients. He said he would be contacting Brando Mireles, Manager, to inform him and get back with a reply and would be sending him an email. Plaintiff received an email with a response from Mr. Mireles stating that the request was not approved by upper administration.

14. Plaintiff decided to submit a written request on July 16, 2018 (Monday) asking for reconsideration to her request for accommodation to reduce her schedule in order to provide a more detailed explanation of her recent and most current medical condition as well, as the needs Plaintiff had to meet for her daughter. Plaintiff submitted the letter by email to Josue Gutierrez, her immediate supervisor and Brando Mireles, Manager. Mr. Mireles replied that the written request would be sent to HR.

15. On July 23, 2018, Plaintiff emailed Mr. Mireles to follow up on the request. She received a reply from Mr. Mireles that the decision to not approve the request would be upheld.

16. On July 24, 2018, Plaintiff emailed Mr. Mireles asking him if he could provide her with the name of the administrator who reviewed her request. Mr. Mireles replied and redirected Plaintiff to Odilia Arredondo, HR Director. On that same day, Plaintiff received a call from Angel Quinones, HR staff, telling her that Ms. Arredondo wanted to meet with her and that she needed to set up an appointment to meet with her. Plaintiff contacted her and set up appointment to meet on July 25, 2018 at 2:30pm.

17. On July 25, 2018 (Wednesday), Plaintiff met with Ms. Arredondo in her office. She expressed Plaintiff's absences were a concern. Plaintiff explained factors (father not taking responsibility to take their daughter to appointments; her surgery at the beginning of the year; her daughter's disability and her current mental health diagnosis). She said that Tropical Texas had been more than generous in providing Plaintiff with time off and that it was now affecting the department's needs. She told her she was an excellent clinician and that there were no complaints to the quality of Plaintiff's work, but that she was missing too much work. Plaintiff told her she felt like she was being discriminated against because of her need to be absent due to her and her daughter's health conditions/disabilities. Ms. Arredondo asked Plaintiff if she would consider moving to another position. Plaintiff expressed that she did not feel she would be able to move jobs at the time due to her medical treatment and her anxiety. Plaintiff also said she knew her job

well and knew how to do her job well so didn't feel it would be just or a reasonable solution or accommodation. Plaintiff mentioned that she had been denied her request to reduce her work hours and flex her work schedule. She advised Ms. Arredondo that on July 12th she was told flexing Plaintiff's schedule was not foreseen to cause any concern. Mr. Mireles was not available to meet on that date, but when she mentioned that Plaintiff had talked to Alejandro Pacheco, Mr. Mireles discredited Mr. Pacheco stating that Mr. Pacheco's opinion did not matter. A follow up appointment was scheduled for Friday, July 27, 2018.

18. On (Friday) July 27, 2018 @ 8am, a meeting was held with Youth and Family Supervisor (Plaintiff's immediate supervisor), Josue Gutierrez; Brando Mireles, Manager; Odilia Arredondo, HR Director and Plaintiff. Plaintiff was told that she had used all her FMLA. Plaintiff provided two Flex Schedule Forms with options of a reduced work schedule of 35 or 32 hours a week (which Plaintiff indicated would help reduce her absences, help her attain PTO, and have more consistency). Plaintiff was told that if they were to consider the flex schedule that she still would not be able to miss any more work for the next 3 to 4 months. Plaintiff told them she was hoping to discuss a resolution that would better accommodate the department needs, but it seemed that she was being told that Plaintiff was doing something wrong. Plaintiff mentioned how other LPHAs were being allowed to flex their schedule. Plaintiff also brought up the recent announcement that Tropical Texas would be changing the Center's hours of operation on Tuesday and Thursdays from 8am to 7pm and every 2nd Saturday from 8am -12pm and how Plaintiff could work that schedule to flex hours on other days of the week and surely miss a lot less work when needing to go to doctor's appointments. They did not seem to express much interest in Plaintiff's suggestion to work those hours or any sincere desire to find a resolution. Plaintiff was told that they would get back to her with a reply.

19. On (Tuesday) July 31, 2018, after following up and asking Ms. Arredondo if there was a reply. She asked that they meet to discuss their offer. Plaintiff met with her 9am in her office.

She again mentioned the problem the absences were having on the department. When Plaintiff mentioned how working 35hrs instead of 40 would not have an adverse effect on the department; she was not clear on the flex schedule Plaintiff had requested because she did not have a copy of the form Plaintiff turned in. She stated that the option they were willing to consider was to offer Plaintiff another LPHA position that would be out in the community. Plaintiff expressed she would not be able to accept the offer to move positions because of the demands of that position, including driving to make visits throughout the valley. She then called Plaintiff's immediate supervisor to come to her office and explain the position and the requirements to Plaintiff. Plaintiff again stated she would not be able to consider what they were offering her due to her not feeling capable of making a change and being able to meet the new demands of the job. Her current position allowed her to remain in the office, meet with incoming patients and diagnose. She said that because Plaintiff was not willing to move positions, she would have to face repercussions (she noticed the puzzled look on Plaintiff's face) and said Plaintiff would have to take LWOP (leave without pay) for any absences. After Plaintiff's supervisor left the office, Plaintiff asked Ms. Arredondo if she could file a grievance or complaint because she felt she was being discriminated against. Ms. Arredondo said Plaintiff did not have any other options. Plaintiff quickly became very anxious and started to cry and could not continue her workday. Plaintiff advised her immediate supervisor, Josue, she would be leaving work for the rest of the day. Plaintiff also mentioned a scheduled medical appointment scheduled for that day weeks prior and reminded him of the appointment. He acknowledged it was okay.

20. At approximately 2:31pm, Plaintiff received an email from the HR Director, Ms. Arredondo, stating that she had been terminated from her job.

21. Plaintiff alleges that there was no legitimate business justification for her termination in that the Plaintiff had always performed a satisfactory job for the Defendant employer during her employment and that there was work available and there continues to be

work available which Plaintiff could perform.

## V.

## Causes of Action – Wrongful Termination

A.  **Violations of the Americans With Disability Act Amendments Act ("ADAA") and Title VII of the Civil Rights Act of 1964.**

22. Plaintiff re-alleges the allegations contained in Section IV, entitled *Factual Background*.

23. On or about July 31, 2018, Plaintiff was unlawfully terminated/discharged by members of Defendant's management due to discriminatory reasons and due to the culmination of discriminatory conduct directed against her by the Defendant.

24. Plaintiff asserts that a motivating or determining factor in her unlawful termination was because she was discriminated against due to her and her daughter's disabilities (real or perceived) in violation of the Americans With Disability Act Amendments Act ("ADAA") and Title VII of the Civil Rights Act of 1964.

25. The Defendant, its agents, servants, and employees failed to accommodate Plaintiff, discharged or in some other manner discriminated against Plaintiff.

26. Defendant, its agents, servants and employees violated the ADAA and Title VII of the Civil Rights Act of 1964, as amended by intentionally refusing to accommodate and terminate her employment due to plaintiff's disabilities (real or perceived) and/or her daughter's disabilities (real or perceived). Plaintiff's disability by association and/or discrimination against Plaintiff because of her daughter's disabilities (real or perceived), moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

As such, Plaintiff, falls within a protected class under the Americans With Disability Act Amendments Act ("ADAA").

27. As a result of the discriminatory treatment, her ultimate termination and/or the acts described herein, Plaintiff has suffered damages as further alleged in this Complaint.

## VI.
## Violations of The Family Medical Leave Act ("FMLA")

28. Plaintiff re-alleges the allegations contained in Section IV, entitled *Factual Background.*

29. Defendant discriminated and/or retaliated against Plaintiff for exercise of her FMLA rights, specifically her taking FMLA leave, and/or unlawfully interfered with Plaintiff's rights to take FMLA leave, in violation of the FMLA, 29 U.S.C. §2601, *et seq.*

30. In terminating Plaintiff's employment and/or refusing to rehire or return Plaintiff to work with similarly situated coworkers, Defendant interfered with, restrained, or denied the exercise or attempted exercise of Plaintiff's right to take FMLA leave; retaliated against Plaintiff because Plaintiff sought protection under the FMLA; and/or treated Plaintiff less favorably than employees who had not taken FMLA leave, requested FMA leave, and/or given notice of a need to take leave;

31. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*

32. Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

33. During the time that Plaintiff was employed by Defendant, in 2018, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

34. While Plaintiff was employed by Defendant, Plaintiff had to be absent due to health conditions related to her and her daughter's disabilities and medical needs.

35. Plaintiff was entitled to leave due to her and her daughter's health conditions related to her and her daughter's disabilities and her medical needs as provided in the FMLA in 29 U.S.C. § 2612(a)(1)(C).

36. Plaintiff was approved for leave under the FMLA by Defendant's insurance carrier. Defendant did not properly request additional information or seek proper certification from the employee for her FMLA qualifying leave nor did Defendant provide Plaintiff with an adequate written warning or sufficient time to provide additional documentation, which violates the protections of the FMLA as outlined in 29 C.F.R. § 825.208(a)(2) and 29 U.S.C. § 2613.

37. Defendant's conduct was in violation of 29 U.S.C. §2601, *et seq*.

38. As a result of the discriminatory treatment, her ultimate termination and the acts described herein, Plaintiff has suffered damages as further alleged in this Petition.

## VII.
## Actual Damages

39. As a result of the incident made the basis of this suit, Plaintiff has incurred damages in the following respects:

**A. Lost Earnings and Special Damages**

40. At the time of the incident complained of, Plaintiff was gainfully employed. As a proximate result of the wrongful conduct and corresponding acts of the Defendant employer, Plaintiff was unable to attend to her occupation and thereby suffered a loss of income for which she hereby sues. As a result of the wrongful conduct and corresponding acts of the Defendant employer, the Plaintiff's earnings, retirement and capacity to earn a livelihood were severely impaired. In all reasonable probability, the Plaintiff's loss of earnings and loss of earning capacity will continue long into the future, if not for the balance of the Plaintiff's natural life. Plaintiff therefore sues for any lost earnings in the form of back pay, lost wages, front pay, retirement benefits, and fringe benefits, lost future earnings and/or diminished earning capacity to the extent permitted by law due to the acts complained of above.

**B.     Past and Future Mental Anguish**

41.     As a result of the incident described above, that is made the basis of this suit, Plaintiff has suffered physical injuries, sickness and/or illness as well as emotional distress, loss of enjoyment of life, mental anguish and other hedonic damages.  The Plaintiff has suffered feelings of anxiety, worthlessness, embarrassment, and inferiority. The Plaintiff has further suffered ill-health effects including, but not limited to, agitation, restlessness, sleeplessness, depression and/or loss of self-esteem due to the discriminatory treatment and/or her illegal termination or wrongful discharge.  In all reasonable probability, Plaintiff will continue to suffer such physical injuries, sickness and/or illness as well as emotional distress, loss of enjoyment of life, mental anguish and other hedonic damages for a long time into the future, if not for the balance of her natural life.

## VIII.
## Exemplary Damages

42.     The conduct of the Defendant as set out above, was carried out and constituted such an entire want of care as to constitute a conscious indifference to the rights or welfare of the Plaintiff.  Because of the spite, ill-will, malicious and/or fraudulent intent held by the Defendant's management toward the Plaintiff, such management, acting in a willful and intentional manner, committed certain acts calculated to cause injury and/or damage to the Plaintiff.  Accordingly, the Defendant acted with malice, actual malice and/or a specific intent to injure the Plaintiff.  Plaintiff is hereby entitled to recover exemplary or punitive damages to deter such cruel and undignified procedures by the Defendant and its management in the future.  Accordingly, Plaintiff requests that punitive damages be awarded against the Defendant as a result of its egregious violations of the law.

## IX.
### Attorney's Fees

43. By reason of the allegations of this Complaint and should Plaintiff be designated the "prevailing party", Plaintiff is entitled to recover attorney's fees in a sum that is reasonable and necessary. In this connection, Plaintiff will show that she has employed the undersigned attorney to assist her in the prosecution of this action. Plaintiff further seeks an upward adjustment or enhancement to the *lodestar* amount of attorney's fees to be determined in the prosecution of this lawsuit. A reasonable attorney's fee is further requested for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts. If ultimately successful in this case, Plaintiff fully expects that the defendant employer will appeal this case. Plaintiff seeks attorney's fees to compensate the Plaintiff for the attorney's fees she has and will incur in the prosecution of this lawsuit, both at trial and on appeal. Plaintiff further pleads for the recovery of reasonable and necessary expenses for the use of associate counsel, paralegals and/or law clerks that assist in the prosecution of the case. As permitted, Plaintiff also seeks to recoup all litigation expenses expended in the prosecution of this lawsuit.

## X.
### Demand for Trial by Jury

44. Plaintiff, by and through her attorney of record make and file this demand for Trial by Jury in the above styled and numbered cause. Plaintiff requests that this case be set on the jury docket of the court for disposition in due order and as soon as practicable.

**WHEREFORE,** Plaintiff, **RAQUEL I. VILLARREAL** prays that this Honorable Court grant the following:

(1) Judgment against the Defendant, **TROPICAL TEXAS BEHAVIORAL HEALTH,** for the Plaintiff's actual damages;

(2) Attorney's fees;

(3) Pre-judgment interest allowed by law;

(4)    Interest on said judgment at the legal rate from the date of judgment;

(5)    For costs of suit herein; and

(6)    For such other and further relief at law or in equity to which the Plaintiff may show herself justly entitled to receive and for which he shall forever pray.

Respectfully submitted,

**THE LAW OFFICES OF**
**CINDY A. GARCIA, P.C.**
1113 Nightingale Ave.
McAllen, Texas 78504
Telephone: (956) 412-7055
Facsimile: (956) 412-7105
thegarcialawfirm@gmail.com
cluna.garcialaw@gmail.com

By: /s/ cindy a. garcia
    Cindy A. Garcia
    State Bar No. 07631710
    Federal ID No. 58460

**ATTORNEY FOR PLAINTIFF**
**RAQUEL I. VILLARREAL**