**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

| | | |
|---|---|---|
| **RAQUEL I. VILLARREAL,** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS** | § | **C.A. NO. 7:19-CV-00053** |
| | § | |
| **TROPICAL TEXAS BEHAVIORAL** | § | |
| **HEALTH,** | § | |
| **Defendant** | § | |

**DEFENDANT TROPICAL TEXAS BEHAVIORAL HEALTH'S
MOTION FOR SUMMARY JUDGMENT**

---

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT TROPICAL TEXAS BEHAVIORAL HEALTH (hereafter "Tropical" "Center" or "Defendant") and files this Motion for Summary Judgment as to Plaintiff's First Amended Complaint (hereafter "Complaint") pursuant to Federal Rules of Civil Procedure 56 as both a traditional and no evidence summary judgment.

## I. NATURE OF THE LAWSUIT/PROCEDURAL HISTORY

Plaintiff sues her former employer Tropical for FMLA retaliation and interference. Plaintiff also alleges that she was discriminated against on the basis of her alleged disability and the alleged disability of her daughter with respect to her separation from employment and an alleged failure to accommodate her.

Discovery has taken place in the form of written discovery and depositions. Defendant has previously filed a Rule 12 Motion to Dismiss which remains pending. Defendant continues to urge the Motion to Dismiss while alternatively and additionally urging this Summary Judgment.

## II. EXHIBITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant hereby submits in support of this dispositive motion a set of authenticated and admissible exhibits, which are incorporated by reference for all purposes:

1. Plaintiff's Deposition with selected deposition Exhibits
2. Tropical Personnel Manual
3. Hiring docs (letter; PAF; Job Description)
4. Job Description/Evaluation

| | | |
|---|---|---|
| 5. | | Job Description |
| 6. | | Intermittent FMLA leave documentation |
| 7. | | Intermittent FMLA leave documentation |
| 8. | | Job Evaluation/Description |
| 9. | | October 2017 Coaching Plan |
| 10. | | FMLA docs |
| 11. | | FMLA documentation |
| 12. | | FMLA documentation |
| 13. | | FMLA supervisor document |
| 14. | | Medical documentation-Plaintiff |
| 15. | | Medical documentation- Plaintiff |
| 16. | | Coaching Plan |
| 17. | | Affidavit of Odilia Arredondo with supporting documentation |
| | A. | Pacheco-Raquel emails |
| | B. | Raquel reconsideration email |
| | C. | Denial of request email |
| | D. | Emails regarding Raquel continued absences & adverse effect on Tropical |
| | E. | August 20, 2018 letter |
| | F. | July 31, 2018 Arrendondo email |
| | G. | Separation email and letter |
| | H. | FMLA tracker; timecard printouts and leave case editor for Raquel Villareal |

### III. FACTUAL BACKGROUND

Plaintiff was first hired in April 2016 for the Program Specialist position working at Tropical's office in Edinburg. *Ex. 3; Ex. 1, p. 45:10-20; p. 49:14-50:13 with depo Ex. 3.* Upon her hiring, Plaintiff indicated that she was fully capable of performing the essential duties, responsibilities and physical demands of the position. *Ex. 3; Ex. 1, p. 51:15-p. 52:6 with depo Ex. 4.* Upon being hired, Tropical allowed Plaintiff an exception to their policy of no absences in the first three months of employment in order to be absent to handle appointments having to do with her daughter's medical care. *Ex. 1, p. 41:8-42:21.* As of July 2016, Plaintiff's agreed shift was Monday-Friday, 8-5 or as needed; and she continued to acknowledge being able to perform the essential duties and functions of her position. *Ex. 4; Ex. 1, p. 78:18-p. 79:24 with depo Ex. 8.* Plaintiff received a coaching plan in March 2017 from her supervisor Josue Gutierrez for productivity issues, failing to meet standards regarding individual client treatment hour targets and she refused to sign it because she disagreed. *Ex. 1, p. 80:14-24, p. 81:22-89:20; p. 92:24-p. 93:3: with depo Ex. 9-10.* Plaintiff did not advise Tropical that her inability to meet these CTH hours

had anything at all to do with any medical condition related to her or her daughter. *Id.*

In March 2017 Plaintiff applied for a Program Supervisor position in the Veteran's Drop-In-Center; didn't advise Tropical of any potential problems she might have with attendance in that position and in May 2017, was hired for that position. *Ex. 1, p. 93:4-25, p. 95:8-20, p. 105:15-22 with depo Ex. 11 & 16.* Plaintiff acknowledged that she was fully capable of performing the essential duties of this Position, including its long and irregular work hours. *Ex. 5; Ex. 1, p. 105:18-p. 107:17 with depo Ex. 16.*

Prior to this promotion, beginning in April 2017, Plaintiff requested and used intermittent FMLA leave related to her daughter's medical condition, which was fully approved by Tropical. *Ex. 6; Ex. 17; Ex. 1, p. 96:4- p. 105:7 with depo Ex. 12-15.* In July 2017, Plaintiff again requested intermittent FMLA leave to miss work periodically over the next few months to tend to/care for her daughter; and all of her FMLA intermittent leave requested during this time period was approved. *Ex. 7; Ex. 17; Ex. 1, p. 109:7-p. 112:25, p. 113:18-23 with depo Ex. 17-18.* Plaintiff also used her paid-time off (PTO) and leave without pay (LWOP) during this time period to cover sporadic absences from work. *Ex. 17; Ex. 1, p. 113:18-p. 114:15.*

Plaintiff was provided a 3-month job evaluation in early October 2017, at which time she again acknowledged that she was fully capable of performing the essential duties of the Position. *Ex. 8; Ex. 1, p. 118:19-p. 119:8 with depo Ex. 19.* Later that month on October 17, Plaintiff received a Coaching Plan from supervisor Anna Castillo, with performance issues being noted regarding productivity, caseload performance and attendance. *Ex. 9; Ex. 1, p. 119:18-p. 120:6 with depo Ex. 20.* Specifically, among other things, it was noted that her attendance was a concern due to her low PTO balance. *Id.* Plaintiff disagreed with some of the issues raised in the Coaching Plan but testified that at least some of the issues raised regarding her job performance and attendance could be correct and that her consistently low PTO balance was a problem. *Ex. 1, p. 120:7-p. 127:25 with depo Ex. 20.* Plaintiff continued to use intermittent FMLA leave after this Coaching Plan into December 2017 and was never denied use of such leave. *Ex 17; Ex. 1, p. 131:8-23; p. 132:3-134:4.*

In November 2017, Plaintiff, at her own request, moved from Program Supervisor back to the position of Program Specialist. *Ex. 1, p. 134:5-14.* In December 2017, Plaintiff requested FMLA leave for a medical procedure from Tey Women's Health Center, which was approved. *Ex. 17; Ex. 10; Ex. 1, p. 146:4- p. 148:6 with depo Ex. 22-25; Ex. 17.* Plaintiff was out of work on

approved FMLA leave in the amount of 222.5 hours for herself on 1/4; 1/5; 1/8-1/12; 1/15/-1/19; 1/22-1/26; and 1/29-2/2; 2/5-2/9; 2/12 of 2018. *Ex. 10; Ex. 17.* On February 2, 2018, Plaintiff was notified by Tropical HR that she was designated and approved FMLA leave starting on January 4, 2018 for a serious health condition; that as of Feb 2, she had used 6 weeks (275 hours) of FMLA leave, thus leaving her a balance of 205 hours from her 480-hour rolling calendar year entitlement and that her expected return date was February 12. *Ex. 10; Ex. 1, p. 148:20-p. 149:8, p. 159:10-p. 160:8 with depo Ex. 23-25; Ex. 17.*[1] Of importance, Plaintiff had already used some intermittent FMLA leave in the months prior to this, thus reducing her available hours in that rolling calendar year for calculation of FMLA leave. *See Ex. 10 & 17.*[2]

On February 2, Plaintiff submitted to HR a disabilities claim form for being out of work for surgery from 1/4-2/10/18 and an hours donation request and on that same date, Tropical HR sent out an email to employees advising that Plaintiff was requesting donations of PTO and advising anyone interested to donating their leave time to notify HR with a form. *Ex. 1, p. 165:9-p. 168:9 with depo Ex. 26-27.* Almost immediately after returning from FMLA leave, Plaintiff requested, used and had approved another 4 hours of intermittent FMLA leave related to her daughter on 2/15/18. *Ex. 17; Ex. 1, p. 168:23-p. 169:15.*[3] Subsequently, from 3/1 to 6/19/18, Plaintiff requested, used and had fully approved, another 144.75 hours of FMLA leave. *Ex. 11*; *Ex. 17.* From 6/25 to July 9, 2018, Plaintiff requested, had approved and used another 79.25 hours of FMLA leave for herself, ultimately leaving her with an FMLA balance of .25 hours (15 minutes) in the rolling calendar year. *Ex. 12; Ex. 17.* This FMLA leave was never denied or not approved and during this same time period, Plaintiff continued to use other forms of leave offered by Tropical, in addition to FMLA. *Ex. 17; Ex. 1, p. 184:8-p. 188:11 with depo Ex. 31.*

On July 9, 2018, Tropical HR notified Plaintiff's supervisor Josue Gutierrez that Plaintiff

---

[1] This calculation includes the nearly 176 FMLA hours already used as a result of her leave for this medical condition between Jan 4 and Feb 2, plus another 40 hours of FMLA leave expected the following week.

[2] Highlighting the frivolousness of this lawsuit, Plaintiff testified that she essentially had no idea how FMLA leave is to be calculated. *Ex. 1, p. 148:20-p. 153;14, p. 158:2-15 with depo Ex. 24.*

[3] Interestingly, the next day, on February 16, 2018 Plaintiff notified Tropical that she was doing individual and family counseling sessions outside of work at Tropical, after hours or on weekends. *Ex. 1, p. 169:23-p. 173:12 with depo ex. 28.* Thus at this time she was capable of doing extra work in addition to her Tropical duties, provided she got to set the hours. Furthermore, this was fully approved by Tropical well after she had been taking FMLA leave. *Ex. 1, p. 176:19-p. 179:3 with depo Ex. 29.* Further, Plaintiff had already requested in December 2017 to supervise an LPC intern after hours from her Tropical work, another request fully approved by Tropical. *Ex. 1, p. 142:6-p. 146:2, with depo Ex. 21.*

had approved FMLA leave from 6/25-7/11 and that her FMLA leave expires on 7/10/18. *Ex. 13.* Immediately after her allowable FMLA leave was reduced to .25 hours, on 7/12/18, the Plaintiff took another 8 hours of FMLA leave, not only fully exhausting her allowable yearly FMLA leave in the process, but going 7.75 hours over her statutory allowable FMLA leave. *Ex. 17.* Plaintiff was allowed to go over her statutory FMLA leave. With regard to her daughter's treatment and needs, Plaintiff was always allowed to use FMLA leave as long as she had hours remaining.

With respect to her disability claim, Plaintiff testified that she suffered from "major depressive disorder", first diagnosed in June 2018 by physician's assistant Jessica Porras with Dr. Luis Delgado's office. *Ex. 1, p. 181:25-p. 183:20.* Plaintiff alleges she submitted medical documentation to Tropical advising them that she was suffering from this disability *Ex. 1, p. 183:21-24; Ex. 11-12.* Factually in regards to this, on June 27, Plaintiff submitted to HR a "doctor's excuse" for herself, which was an HR-72 physician medical status form in which Plaintiff's medical provider Jessica Leal Porras indicates that she suffers from major depression which first occurred on 1/6/17; that it was temporary; *that she could return to work on 7/10/18*; *that she had no limitations in job activities at this time*; *that there is no health risk at this time*; while simultaneously noting in the next section that she may need a reduced schedule depending on the type of work as a limitation in job activities *Ex. 14; Ex. 1, p. 194:8- p. 196:4 with depo Ex. 33.* This form was subsequently dated and signed 7/10/18 by her "physician". *Ex. 11.* Based on the documentation, this is the first notification of an alleged disability by plaintiff and it identifies absolutely no accommodations that need to be made, in fact stating that Plaintiff has no limitations at all. *Id.*

In relation to this disability, Plaintiff also submitted an FMLA medical certification on 7/9/18 signed by the same Dr. Porras which gives different dates of start and duration for her condition. *Ex. 15; Ex. 1, p. 190:1-17, p. 192:5-194:2 with depo Ex. 32.* In this document, her medical condition is noted as commencing on 6/10/18 (as opposed to 1/6/17) and is expected to last until 8/10/18 (as opposed to 6/25/19); and that she was treated for the condition from 6/26-7/9/18. This doctor's note also notes that while the Plaintiff will likely have episodic flare-ups preventing the employee from performing her job functions, *it will not be medically necessary for her to be absent from work during the flare-ups* and only that she will need an appt with a doctor with excuse for absence. Most importantly, this doctor's note specifically has a section wherein if a reduced work-schedule is medically needed for the employee, the medical provider is to indicate

how much of a reduced work schedule is needed. *Ex. 15, p. 3.* In Plaintiff's case, her medical provider did not indicate the need for a reduced work schedule *at all*, leaving this section completely blank. In fact, the only leave needed as identified by Plaintiff's medical provider is periodic time off to attend appointments. *Id.* It is factually undisputed that Plaintiff's medical provider did not identify the need for a reduced/flex work schedule as an accommodation and Plaintiff submitted absolutely no medical documentation to this effect. Plaintiff testified that the only medical documentation she submitted to Tropical requesting an accommodation in the form of a flex or reduced hour work schedule are these same documents identified above in which she was cleared to return to work with no limitations or restrictions. *Ex. 1, p. 205:22-207:14 with depo Ex. 32-33.*

Immediately upon returning from her now-exhausted FMLA leave (and with absolutely no protected leave of any kind available), given her extensive absence history and continuing need for time-off after exhausting her FMLA leave, Plaintiff determined that she could not continue to comply with Tropical requirements for work attendance without a "reduced work schedule" or flex schedule. *Ex. 1, p. 223:9-225:20.* Thus on July 11, after she returned to work from her fully exhausted FMLA leave, Plaintiff first requested of her supervisor that her work-week be reduced to 30 hours as an "accommodation" for her medical condition and the medical condition of her daughter and then later requested either a 33-hour or 35-hour work week. *Ex. 1, p. 225:4-231:5, p. 232:8-25.*

She testified that this accommodation was for both disabilities (hers and her daughter's) and that this was conveyed to Tropical. *Ex. 1, p 276:5-277:15.* There was not any submittal of specific written medical documentation with Plaintiff's request, other than the previous FMLA form and HR-72 physician medical status forms submitted on 7/10. *Ex. 1, p. 205:22-207:14 with depo Ex. 33.* Further, Plaintiff did not request a corresponding pay decrease to make up for her reduced hours since she was a salaried employee. *Ex. 1, p. 228:12-p. 230:21.* Plaintiff's request was denied and on July 12, Plaintiff was notified by supervisor Alejandro Pacheco that her work schedule "accommodation" was denied due to a shortage of LPHAs (Plaintiff's position). *Ex. 1, p. 230:22-p. 231:5, 232:8-25. Ex. 17.* While this request was pending with her supervisor and his supervisors, Plaintiff continued to rack up unexcused absences, missing half a day on July 10; and being absent on July 11-12, with absolutely no protected leave of any kind for usage of these absences. *Ex. 17).*

On July 16, Plaintiff requested reconsideration of the denial of her request to reduce her work hours from 40 hours a week and reiterated that she wanted to work a 6-hour day from 8 am -2 pm Monday-Friday (30 hours) to manage her daughter's needs and to recover from her treatment. *Ex. 1, p. 232:10-25; Ex. 17.* In the meantime, her unexcused absences continued, with Plaintiff missing work on July 10-13; 17-20, 23 and 24 without any protected leave of any kind for usage of these absences. *Ex. 17; Ex. 1, p. 245:4-8.* On July 23, she was notified by manager Brando Mireles that the denial of her reduced-hours work week request stood. *Ex. 17.* The basis for this denial was in regards to work-flow; productivity and work-goals and an inability to meet them with reduced staffing hours. *Ex. 17.* On July 23, she also received a Coaching Plan regarding her inability to meet her CTH hours and she promptly missed work on the 24th, again with absolutely no protected leave of any kind for usage of this absence. *Ex. 16; Ex. 17.*

On July 26, Plaintiff submitted two proposed flex schedule work forms one for a 33-hour work week and one for a 35-hour work week, indicating the basis for the request on each one was "due to medical reasons". *Ex. 1, p. 279:23-280:18 with depo Ex. 41-42.* She did not submit any additional medical documentation beyond that which had already been submitted.

Plaintiff met with her Tropical HR Director Odilia Arredondo and her supervisor(s) on July 25 and July 31 to discuss her request(s) and her absences. *Ex. 1, p. 233:25-234:2, p.247:21-248:24; Ex. 17.* In her meetings with Tropical HR and supervisors, despite having already taken over a week of totally unexcused absences, the accommodation request process was engaged in to the extent required by law by Tropical. Plaintiff acknowledged her lack of protected leave; acknowledged she would need to continue to miss work for appointments despite no protected leave; and acknowledged that she was asked if Tropical was to accommodate her by granting her the shorter work week, would she agree that she would not miss any more work for a few months. *Ex. 17; Ex. 1, p. 233:25-234:13; 237:3-239:9.* Given her extensive absence history and the fact she had absolutely zero protected leave remaining, this was a reasonable request. Plaintiff testified she responded by saying she could not guarantee that because she would still need to care for her daughter and take absences. *Id.*

After rejecting the first offer by Tropical, with absolutely no counter-proposal from Plaintiff, HR Director Arredondo then offered to move Plaintiff to another counseling position with a more flexible schedule fully accommodating her scheduling needs, with absolutely no reduction in pay. *Ex. 17; Ex. 1, p. 239:20-240:19.* Plaintiff flatly refused this. *Ex. 17.* Her

deposition testimony for the basis for the refusal was that she did not want to move positions because the position would require driving and she was on medication and could not drive[4.] *Ex. 1, p. 240:17-241:23, p. 257:10-21.* Plaintiff made no counter-offer for another proposal. *Ex. 17).*

Subsequently, on July 31, 2018, Plaintiff's request for a modified work schedule was responded to by HR Director Arredondo by email giving her another chance to accept the accommodation offered by Tropical. *Ex. 17.* Arredondo noted that Plaintiff exhausted her FMLA leave on July 10, 2018 and that since then, had been absent on July 11-13, 17-20, 23-24 and 31st with completely unexcused absences as she had no protected leave. *Id.* Arredondo also noted that allowing her to be out despite FMLA exhaustion and absolutely no protected leave was an accommodation Tropical had already provided. *Id.* Arredondo addressed the 35-hour work week schedule Plaintiff requested, noting that the reduction in 5 work hours would negatively impact the program's response time and volume of diagnoses. *Id.* Arredondo again emphasized that Tropical was offering her as an accommodation, a lateral move to a vacant counseling position with its own caseload, allowing her to schedule her appointments within the proposed work schedule she proposed and that there would be no reduction in pay. *Id.* Arredondo then noted that in light of this, Tropical could not tolerate any more absences (since she had now been absent from work with unexcused/unprotected absences *9 times* since returning from exhausted-FMLA leave), which Plaintiff admitted would continue; and that therefore if Plaintiff did not accept the new position, she would be terminated. *Ex. 17.* Plaintiff did not respond to accept the offer. *Ex. 17*; *Ex. 1, p. 258:6-261:21 with depo Ex. 40.*

Later that day at 2:41 pm, Arredondo forwarded Plaintiff a neutral termination. *Ex. 17.* The termination letter notes that Plaintiff exhausted FMLA leave; was allowed addition unprotected leave time after that; and was offered another position with a more flexible schedule all as an accommodation. *Id*. The termination letter notes that Plaintiff turned down the transfer and is ineligible for any further protected leave and therefore her employment had to be terminated. *Id*

## IV. GROUNDS FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on the following grounds:

1. Plaintiff cannot make out FMLA retaliation claim against Defendant as a matter of law.

2. Plaintiff cannot make out FMLA interference claim against Defendant as a matter of law.

---

[4] Despite the fact that there is absolutely no medical restrictions of any kind presented by Plaintiff to Tropical of this fact; of this restriction or of this alleged "limitation".

3.  Plaintiff cannot make out a disability discrimination claim against Defendant as a matter of law.

4.  Plaintiff cannot make out a discrimination by association disability claim against Defendant as a matter of law.

## V.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings and affidavits and discovery on file "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *see also Celotex Corp. vs. Catrett*, 477 U.S. 317, 322 (1986).  The plain language of FRCP 56(c) mandates the entry of a summary judgment against a party "who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.   "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in *any* case 'where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little*, 37 F.3d at 1075 (quoting *Armstrong vs. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)).

Defendant urges this Motion as both a traditional motion for summary judgment and also urges a no-evidence motion as to each of the Plaintiff's claims.

## VI. SUMMARY OF THE ARGUMENT

Plaintiff cannot make out as a matter of law a claim that Defendant retaliated against her pursuant to the FMLA as there was no retaliatory actions taken towards her for usage of FMLA; and Defendant had legitimate non-retaliatory reasons for all personnel actions taken against her. Plaintiff cannot make out at as a matter of law that Defendant committed FMLA interference against her as there was no FMLA interference and she was allowed even more FMLA leave than the law requires.

Plaintiff cannot make out a disability discrimination claim as a matter of law as she was not a qualified individual with a disability; she did not make a reasonable accommodation request; Tropical engaged in the interactive process and made a reasonable accommodation request rejected by Plaintiff; and to accommodate Plaintiff as she requested would cause an undue hardship on Tropical. Plaintiff cannot make out a disability by association discrimination claim as a matter of law as such a claim does not exist as pled in the Fifth Circuit; and Plaintiff cannot make out any

of the elements of said claim as it exists in other circuits.

## VII. ARGUMENT & AUTHORITIES

### A. Plaintiff cannot show as a matter of law that Defendant retaliated against her in violation of FMLA

Plaintiff has no evidence of FMLA retaliation by Defendant. To make a *prima facie* showing of retaliation under the FMLA, Plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). When there is no direct evidence of discriminatory intent, the familiar *McDonnell Douglas* burden shifting framework [is used] to determine whether an employer retaliated for participating in FMLA-protected activities. Specifically, once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination. *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 332 (5th Cir.2005) (citing *Hunt,* 277 F.3d at 768.

There is some disagreement about whether the mixed-motive framework or the "but for" analysis applies to FMLA retaliation claims. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016). Defendant asserts for purposes of this Motion and case that the "but for" analysis applies in light of the Supreme Court decision in *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338 (2013) holding that to satisfy the "causal link" requirement of Title VII retaliation and ADEA claims, the employee must provide substantial evidence that "but for" exercising protected rights, she would not have been discharged.

Due to the uncertainty however, Defendant addresses both standards and asserts that summary judgment should be granted under either the "but-for" causation standard or the "motivating factor" standard. Under both standards, Plaintiff must first establish a *prima facie* case as described above. After the *prima facie* case of retaliation is established, the burden shifts to the employer under both the "but for" and "motivating factor" standards to articulate a legitimate, non-discriminatory reason for the adverse personnel action. Under the mixed-motive framework, the third step is modified: [T]he employee must offer sufficient evidence to create a genuine issue of

fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. Under the mixed-motive standard, if the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. This is the distinction from the "but for" standard.

Defendant asserts that Plaintiff has no evidence that she was treated less favorably than similarly situated employees who had not requested or taken leave under the FMLA; and no evidence that any adverse employment actions complained of by her were made because she took FMLA leave. Plaintiff has no evidence of a "causal link" under either the "but for" standard or the motivating factor standard.

Further, the competent summary judgment evidence defeats Plaintiff's claim as a matter of law as to each element, under the but for or mixed motive standard. The competent summary judgment evidence attached to this MSJ and referenced above shows that Plaintiff: 1.)was allowed to freely use all of her FMLA allotted time; 2.) that Plaintiff fully exhausted her FMLA leave allowed by law; 3.) that Plaintiff was allowed to use FMLA leave in excess of the 12 weeks allowed by law; 4.) that Tropical worked with her repeatedly on FMLA leave, allowing insufficient or last-minute documentation to suffice to approve the leave; 5.) that plaintiff was never denied allowable FMLA leave; 6.) that after returning from exhausted FMLA leave, Plaintiff began amassing totally unprotected and unexcused absences from work; 7). That Tropical still attempted to work with her regarding her schedule and absences; 8.) that Plaintiff's absences and work-schedule demands caused a undue burden on Tropical; 9.) that Plaintiff advised Tropical she would continue to take un-excused absences "as needed" even if given a reduced schedule; and 10.) that Tropical had legitimate non-retaliatory reasons for separation of Plaintiff's employment. *Ex. 1; 6-7; 10-15; 17.* Furthermore, Tropical took steps favorable to Plaintiff despite her FMLA usage, including allowing her to perform outside work after she was already taking and using FMLA leave; and allowing her to go over the allowable FMLA leave in the one-year period. *Ex. 1; Ex. 17.*

There is absolutely no factual dispute that Plaintiff was allowed to and did take, utilize and exhaust her entire statutorily allowable FMLA leave for the rolling calendar year 2018-2019. *Ex. 1; 6-7; 10-15; 17.* There is absolutely no factual dispute that Plaintiff was even allowed to exceed the statutory allowed FMLA maximum by 8 hours after failing to return to work upon FMLA

exhaustion. *Ex. 17*. Far from retaliating against Plaintiff, Tropical allowed Plaintiff to continue to accrue additional totally unprotected absences, after exhausting fully her FMLA leave and her other forms of protected leave such as PTO. *Ex. 17*. In taking absences post-FMLA exhaustion, with no protected leave bank whatsoever, Plaintiff was in effect AWOL from work for days on end. And still, Tropical did not terminate nor reprimand her but tried to work with her. This is factually undisputed based on the summary judgment evidence.

Assuming her neutral separation from employment in July 2018 is the specific "adverse personnel action" of which Plaintiff claims was retaliatory in this case, undisputed factual evidence exists to support a legitimate non-discriminatory reason for her separation from employment in light of her totally unexcused amassing absences; her admitted inability to keep to her allotted work schedule and her direct indications that she could not work that schedule and would continue to amass absences even after FMLA and other protected leave had been exhausted. *Ex. 17*.

The evidence is undisputed that Plaintiff simply wasn't showing up for work and worse yet, advised Tropical she would in fact continue to miss work "as needed" for her and/or her daughter's conditions, regardless of her leave situation. *Ex. 1; Ex. 17*. After demanding a modified work schedule reducing her from a full-time 40-work week schedule, Tropical still attempted to work with Plaintiff in several ways before resorting to employment separation. *Ex. 17*. Her unexcused absences; her admitted likely future absences; and her refusal to move to a more flexible position caused a hardship on Tropical in terms of scheduling and a shortage of counselors in Plaintiff's position. *Id*. In short, her repeated, now totally unexcused absences were hampering the ability of her Department, her supervisors and her fellow counselors to do their jobs. *Id.*

Far from FMLA retaliation, the summary judgment evidence shows that Plaintiff was allowed to take FMLA leave *every single time she requested i*t, starting in 2017 and continuing all the way through her entire exhaustion (and exceeding) of FMLA leave in 2018. *Ex. 1; 6-7; 10-15; 17*. Defendant allowed her to actually exceed her statutorily allowed FMLA leave usage, with no disciplinary action at all. *Id*. Defendant allowed Plaintiff her request to do outside work despite her extensive FMLA absences. *Ex. 1*. And after Plaintiff had exhausted all FMLA leave, and began to miss work with absolutely no protected leave of any kind, essentially AWOL from work, Defendant did not discipline or terminate her, instead allowing such leave and still trying to work with Plaintiff and her absences through her reduced work schedule request with no further absences; or a lateral transfer to a more flexible schedule. *Ex. 17*. This is hardly evidence of FMLA

retaliation; but instead undisputed factual evidence of an employer bending over backwards to accommodate an employee who was allowed to, and did, totally exhaust her yearly allowable FMLA leave. Further, Defendant asserts that Plaintiff has no evidence that the articulated legitimate, nondiscriminatory reasons for the complained of personnel action of Plaintiff's mutual separation are merely a pretext for FMLA discrimination.

Lastly, Plaintiff "identified" two similarly situated employees whom Plaintiff believes were treated better than her for not requesting FMLA leave. Shooting totally from the hip, Plaintiff has absolutely zero evidence that these alleged employees were similarly situated; much less that they had never taken or requested FMLA leave. In fact, she never identified their names.

This competent summary judgment evidence serves to defeat Plaintiff's prima facie case; establishes a legitimate non-retaliatory reason for her employment separation; and defeats any claim by Plaintiff that the legitimate non-retaliatory reasons were mere pretexts for FMLA retaliation.

## B. Plaintiff cannot show as a matter of law that Defendant interfered with her use of FMLA

The FMLA also allows for FMLA interference claims To establish a *prima facie* interference case, Plaintiff must show that (1) she was an eligible employee, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) her employer interfered with, restrained, or denied her the benefits to which she was entitled under the FMLA, and (6) she was prejudiced. *Lanier v. Univ. of Tex. Sw. Med. Ctr.,* 527 Fed.Appx. 312, 316 (5th Cir.2013). "The term 'interference with' includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.' *Bell v. Dall. Cnty.,* 432 Fed.Appx. 330, 334 (5th Cir.2011) (quoting 29 C.F.R. § 825.220(b) (2010)).

As to Plaintiff's FMLA interference claim, it is entirely frivolous. First, Defendant asserts that Plaintiff has absolutely no evidence to establish the claims. Plaintiff's Petition is vague as to what and when she claims to have had her FMLA interfered with, but to the extent the claim is made in regards to any attempt to use FMLA, she has no evidence as to elements No. 3-6. It is factually indisputable that not only did Plaintiff never have her attempted usage of FMLA denied, but she completely and fully exhausted her entire FMLA 12 weeks by July 2018. *Ex. 1; 6-7; 10-15; 17.* Further, it is undisputed that far from interfering with the use of FMLA, Plaintiff requested

and received, all FMLA leave allowed by law while at Tropical. It is factually indisputable that Plaintiff actually received more FMLA leave by Tropical than required by law. *Ex. 1; 6-7; 10-15; 17.* As to any alleged FMLA interference, absolutely no evidence exists to support any of the above-described elements.

Plaintiff testified that Tropical never denied her use of FMLA for her daughter. *Ex. 1, p. 181:2-181:24, p. 131:8-23; p. 132:3-134:4.* Plaintiff acknowledged she used and exhausted her entire 12 weeks of FMLA leave; testified that she's not saying or alleging that Tropical ever incorrectly calculated her FMLA leave. *Ex. 1, p. 184:8-p. 188:11 with depo Ex. 30-31.* Defendant asserts that the competent summary judgment evidence attached to this MSJ defeats this claim and there are no material issues of fact. Plaintiff had approved and took, her entire yearly bank of allowable FMLA leave, even going over the statutory maximum by a full 8 hours, which was allowed by Defendant. It is hard to imagine an employer doing more than Tropical did to accommodate Plaintiff's FMLA leave usage. It was never denied. It was never interfered with. Plaintiff used it all. Plaintiff used even more than the statute allows. This is a frivolous claim unsupported by any factual evidence and it should be dismissed.

## C. Plaintiff cannot establish as a matter of law her Disability Discrimination claim

Plaintiff takes two bites at the apple with her ADA claim(s), urging not only that her daughter's disability was the basis of discrimination (addressed below), but that her own disability was the basis of discrimination. To prevail under the ADA with regards to her own disability claim, the plaintiff must plead and prove three things: (1) she has a disability; (2) she is an otherwise qualified employee; and (3) she suffered an adverse employment decision solely because of her disability. *Rizzo v. Children's World Learning Centers, Inc.,* 173 F.3d 254, 260 (5th Cir. 1999), *on reh'g en banc,* 213 F.3d 209 (5th Cir. 2000). In the Fifth Circuit, a plaintiff alleging a failure to accommodate a disability (which Plaintiff does allege) must prove that 1) the plaintiff is a qualified individual with a disability; 2) the disability and its consequential limitations were known to the employer; and 3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 452 (5th Cir.2013) (internal quotations omitted).

The relevant portion of the ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). In addition, Section 12112(b)(5) states that the term, "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir.1999). Because the ADA mandates that employers reasonably accommodate the limitations caused by the disability and not the disability itself, an employee asserting a disability discrimination claim must produce evidence that the employer not only knew of the employee's disability, but also of the physical and mental limitations arising from it. *Id.*

As a threshold requirement in an ADA claim, the plaintiff must ... establish that she has a disability. *Rogers v. Int'l Marine Terminals,* 87 F.3d 755, 758 (5th Cir.1996). The relevant time for assessing the existence of a disability is the time of the adverse employment action. *EEOC v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 618 (5th Cir.2009). The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Hale v. King,* 642 F.3d 492, 500 (5th Cir.2011). Working is a "major life activity" such that an individual is disabled for the purposes of the ADA if her ability to work is "substantially limited." 29 C.F.R. § 1630.2(i)(1)(i).

To be substantially limited in the major life activity of working, an employee must be unable to work in a broad range or category of jobs. 29 C.F.R. § 1630.2(j)(3)(i); *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492 (1999). It is not enough to be substantially limited in the ability to perform a single job or narrow range of jobs. *Id.* at 492 ("[t]o be substantially limited in the major life activity of working, then, one must be precluded form more than one type of job, a specialized job, or a particular job of choice"). A physical or mental impairment that only affects the claimant's ability to engage in a narrow range of jobs or a particular job alone 'does not substantially limit one or more major life activities.' ... Instead, 'the impairment must substantially limit employment generally.' "*Carter v. Ridge,* 255 Fed.Appx. 826, 829–30 (5th Cir.2007);

*Hileman v. City of Dallas,* 115 F.3d 352, 354 (5th Cir.1997)); *Rodriguez v. Alcoa Inc.,* 805 F. Supp. 2d 310, 317 (S.D. Tex. 2011). For an impairment to be substantially limiting to the life activity of work, it must "significantly restrict [the individual's] ... ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Aldrup v. Caldera,* 274 F.3d 282, 286–87 (citing 29 C.F.R. § 1630(j)(3)(I)). The mere inability to perform any job at one specific location is not a substantial limitation. *Id.* at 287–88.

In addition to the initial showing of "disability," the ADA plaintiff's prima facie case must also establish the plaintiff as "a qualified individual with a disability." 42 U.S.C. § 12111(8). Even if a plaintiff can establish that she was disabled under the ADA, she still must show that he was "otherwise qualified" for her job. *Chiari v. City of League City,* 920 F.2d 311, 315 (5th Cir.1991); *Leckelt v. Board of Commissioners,* 909 F.2d 820, 827 (5th Cir.1990). Determining whether a claimant was qualified for his job involves a two-prong test. First, the Court must examine whether he could perform the "essential functions" of his job. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993). Second, the Court must determine whether he proved that the employer could have made a "reasonable accommodation" to enable him to perform his job. *See id.*

An ADA claimant is "qualified" if, with or without the employer's reasonable accommodation, he can perform the "essential functions" of the job. The "essential functions" are the "fundamental job duties of the position in question." *Haysman,* 893 F.Supp. at 1101. Some ADA claimants argue whether the essential function claimed by the employer truly is "essential," as opposed to dispensable, or even pretextual (*i.e.,* employed more to discriminate than to advance a legitimate job requirement, see 42 U.S.C. § 12112(b)(6)).. § 1630.2(n)(3)(i-vii); *Haysman,* 893 F.Supp. at 1101. In this regard, "consideration shall be given to the employer's judgment as to what functions of a job are essential...." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3)(i) (1995); 29 C.F.R. Pt. 1630 App. § 1630.2(n) at 405–06 (1995); *Johnston v. Morrison, Inc.,* 849 F.Supp. 777, 778 (N.D.Ala.1994). To determine whether the plaintiff is "otherwise qualified" for the job, the court must first decide whether the plaintiff can perform the core functions of the job; if not, the court must determine whether a reasonable accommodation would enable the employee to do so. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). A covered employer must provide reasonable accommodations to an "otherwise qualified" person with

a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). The plaintiff bears the burden of requesting reasonable accommodations. *Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 315 (5th Cir.2007). *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 449 (S.D. Tex. 2010).

Lastly the Plaintiff will need to show that Tropical failed to accommodate her disability. When an employee's limitations caused by a disability are not "open and obvious" to the employer, it is the employee's responsibility to notify the employer of the limitations and suggest a reasonable accommodation. *EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 621 (5th Cir.2009) (citing *Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 165 (5th Cir.1996)). Then, the employer must engage in a good faith interactive process, which is "a meaningful dialogue with the employee to find the best means of accommodating that disability." *Id.* (quoting *Tobin v. Liberty Mut. Ins. Co.,* 433 F.3d 100, 108 (1st Cir.2005)). There are strict requirements regarding the employer needing to engage in the interactive process or else risk violating the ADA/THCRA. While the employee is entitled to reasonable accommodations, the employer is not obligated to adhere to the employee's preference and has final discretion as to the most effective accommodations that satisfy both the employee's and employer's needs. *EEOC v. Agro Distrib., LLC,* 555 F.3d 462, 471 (5th Cir.2009) (citing 29 C.F.R. pt. 1630, App., § 1630.9).

The ADA provides that a reasonable accommodation may include:

(A) making existing facilities used by employees readily accessible to and useable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training material or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
42 U.S.C. § 12111(9).

Where the ADA plaintiff intends to show that she can perform the essential job function with reasonable accommodation, the initial evidentiary burden of production is placed upon her. The plaintiff must show that her employer can make a reasonable accommodation to enable the plaintiff's employment notwithstanding her disability. *Ricks,* 877 F.Supp. at 1476. Once the plaintiff meets her burden of proving that reasonable accommodation is possible, the burden then shifts to the employer to prove inability to accommodate. *Milton v. Scrivner. Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995); *Morton v. GTE North Incorporated,* 922 F.Supp. 1169, 1178

(N.D.Tx.1996). *Andress v. Nat'l Pizza Co. Int'l*, 984 F. Supp. 475, 484 (S.D. Miss. 1997).

A simple factual analysis of the evidence in this case shows that as a matter of law, Plaintiff cannot meet the elements of this cause of action as a matter of law.

**1. Plaintiff Not Disabled; Not a Qualified Individual with Disability & her accommodation request not reasonable/Plaintiff failed to inform of limitations and request reasonable accommodation accordingly**

Plaintiff's "accommodation request" in no way matched up with her medical documentation regarding actual limitations she had. Plaintiff simply took her actual medical documentation submitted to Tropical, and then came up with her own demanded accommodation, never identified in respect as to any actual limitations. Consequently, it was not a reasonable request and Plaintiff failed to identify her disability limitations to Tropical, as required by law.

The only medical documentation submitted by Plaintiff in relation to her disability and need to accommodate it was two forms filled out by physician's assistant Jessica Porras with Dr. Luis Delgado's office. *Ex. 1, p. 183:21-24; Ex. 11-12.* The first form submitted indicated that she suffers from temporary major depression; *that she could return to work on 7/10/18*; *that she had no limitations in job activities at this time*; and *that there is no health risk at this time. Ex. 11; Ex. 1, p. 194:8- p. 196:4 with depo Ex. 33.* There is absolutely no medical note that she is limited in any way with respect to her employment with respect to schedule, *much less at all*. The form casually note that she *may* need a reduced schedule depending on the type of work as a limitation in job activities *Ex. 11; Ex. 1, p. 194:8- p. 196:4 with depo Ex. 33.* However, there is absolutely no documentation indicating that based on her type of work she in fact does need a reduced schedule; nor did Plaintiff provide any follow-up documentation to support this alleged limitation. Plaintiff simply created limitations on her own and created an "accommodation" on her own that did not match up with her actual physical limitations. This is the first notification of the alleged disability by plaintiff and it identifies absolutely *no* accommodations that need to be made, identifies absolutely no limitations in working Plaintiff; and in fact states that Plaintiff has *no limitations at all*. *Id.*

The second set of medical documentation submitted by Plaintiff only reinforces the fact that she provided absolutely zero documentation to support actual limitations in work with regard to her current schedule/need for a reduced schedule. *Ex. 12; Ex. 1, p. 190:1-17, p. 192:5-194:2 with depo Ex. 32.* This FMLA medical certification on 7/9/18 signed by the same Dr. Porras notes

that while the Plaintiff will likely have episodic flare-ups preventing the employee from performing her job functions, *it will not be medically necessary for her to be absent from work during the flare-ups* and *only* that she will need an appt with a doctor with excuse for absence. *Id.* Most importantly, this doctor's note specifically has a section wherein if a reduced work-schedule is medically needed for the employee because of a limitation, the medical provider is to indicate how much of a reduced work schedule is needed. *Ex. 12, p. 3*. In Plaintiff's case, her medical provider *did not* indicate the need for a reduced work schedule *at all*, leaving this section completely blank. *Id.* In fact, the only leave needed as identified by Plaintiff's medical provider is periodic time off to attend appointments. *Id.* It is factually undisputed that Plaintiff's medical provider did not identify any job limitation requiring a reduced work schedule as Plaintiff herself demanded; and did not identify the need for a reduced/flex work schedule as an accommodation. This is the only medical documentation she submitted to Tropical requesting an accommodation in the form of a flex or reduced hour work schedule. *Ex. 1, p. 205:22-207:14 with depo Ex. 33*. Plaintiff's accommodation request was simply made up; not supported by any medical documentation on limitations; and was entirely unreasonable.

An employee has the initial duty to inform the employer of his disability before ADA liability is triggered for the employer's failure to provide accommodation. *See Hunt–Golliday v. Metropolitan Water Reclamation Dist.,* 104 F.3d 1004, 1012 (7th Cir.1997). Accordingly, no liability arises under the ADA when an employee fails to request a reasonable accommodation. *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 160–61 (5th Cir.), *cert. denied,* 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). Once a request for an accommodation is made, the responsibility for fashioning a reasonable accommodation is shared between the employer and employee. *See id.* As the Fifth Circuit has noted, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability, because the ADA requires employers to accommodate limitations, not disabilities. *See id.* at 164–65. Thus, to prove discrimination, an employee must show that the *employer knew of the employee's substantial physical or mental limitation*. *See id* at 163. Emphasis Added. Furthermore, the ADA does not require an employer to assume that an employee with a disability necessarily suffers from a limitation. *Id.* at 165.

The determination of whether an individual plaintiff has a disability that substantially impairs the major life activity of working "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. § 1630, App. (1996). "Some impairments may be disabling for particular individuals but not for others...." *Id.*[2] A physical or mental impairment "substantially limits" the major life activity of working when an individual is "significantly restricted" in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average individual having comparable training, skills, and abilities. *Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996). The inability to perform a single, particular job or an impairment that affects only a narrow range or category of jobs does not constitute a substantial limitation in the major life activity of working. *Id.* at 332–33 (finding that an impairment that precluded employment in any position "involving routine exposure to extreme trauma" precluded only a "narrow range of jobs"); *see also Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) ( "restrictions against working with meat products in a cold environment ... only appeared to prevent [plaintiff] from performing a narrow range of meatpacking jobs"). Further, when the need for accommodation is not obvious, the employer may require that the employee provide documentation. 29 C.F.R. § 1630.9 (1995).

In this case, not only was Plaintiff not limited in an ability to perform a wide range of jobs, she was not limited in her ability to do *her* job as a result of her claimed disability. Her own medical documentation submitted in support of her disability and accommodation request, clearly stated she had no limitations with respect to her job and was fully cleared her to return to work. Plaintiff herself, with no documentation or evidence to back up the limitations, simply demanded an unreasonable accommodation of a reduced and flexible work schedule. The reason is clear, it was not based on any actual limitations suffered by her, but based on a desire to have her own schedule to allow her to take off whenever and however she needed to tend to her daughter's needs. Plaintiff is merely trying to bootstrap her own disability discrimination claim onto her disability by association claim. This does not constitute disability discrimination as to her alleged disability.[5]

---

[5] The ADA is designed to allow an employer to fashion an accommodation based on one's particular limitation. An employer does not need to accommodate an employee to account for a bad attendance record. *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721 (5th Cir. 1998). This is particularly the case when Plaintiff fully admits that even with her requested reduced schedule, she could not and would not commit to no more absences in the next few months.

Additionally, Plaintiff is further not a qualified individual with a disability based on her own testimony regarding her need to have absences, whether she has protected leave for such absences or not. Essentially, Plaintiff argues that she needs the reduced schedule in order to be absent to attend to medical appointments or her daughter's medical appointments; regardless of her protected leave status. She essentially urged she was "limited" in her ability to actually be present at work.[6]

Numerous courts have held that attendance at work, the most basic element of an employee's duties, is an essential element of almost all jobs. *See, e.g., Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 213 (4th Cir.1994) (an employee must be willing and able to come to work on a regular basis); *Carr v. Reno,* 23 F.3d 525, 529 (D.C.Cir.1994) ("essential function of government job is an ability to appear for work"); *Law v. United States Postal Serv.,* 852 F.2d 1278, 1279–80 (Fed.Cir.1988) ("an agency is inherently entitled to require an employee to be present during scheduled work times"); *U.S. E.E.O.C. v. AIC Sec. Investigation Ltd.,* 820 F.Supp. 1060, 1064 (N.D.Ill.1993) (for ADA purposes, attendance is necessary for any job); *Walders v. Garrett,* 765 F.Supp. 303, 309 (E.D.Va.1991) (generally employees cannot perform their job without attendance); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 979 (E.D.Pa.1990) ("[a]ttendance is necessarily the fundamental prerequisite to job qualification"), *aff'd,* 928 F.2d 396 (3d Cir.1991); *Barfield v. Bell South Telecomms., Inc.,* 886 F.Supp. 1321, 1326 (S.D.Miss.1995) ("regular attendance at work is an essential function of virtually all jobs").

In no uncertain terms, a disabled employee cannot establish that she is qualified under the ADA without demonstrating that she can maintain a reliable attendance. Several courts have held that where attendance is an essential aspect of the job, an individual who has frequent absences is unqualified. *See Jackson v. Veterans Admin.,* 22 F.3d 277, 279 (11th Cir.1994) (housekeeping aide who missed several days of work was not qualified because his sporadic attendance rendered him incapable of performing daily tasks); *Kennedy v. Applause, Inc.,* No. CV 94–5344, 1994 WL 740765 (C.D.Cal. Dec.6, 1994) (sales representative suffering from chronic fatigue syndrome who was unable to work regular hours was unqualified because reliable attendance was a minimum function of the job), *aff'd,* 90 F.3d 1477 (9th Cir.1996).

---

[6] Even though her medical documentation did not substantiate this at all.

It is factually indisputable that Plaintiff couldn't/didn't make it to work regularly. After exhausting all of her FMLA leave, and having used up all of her other protected leave, she racked up unexcused absences ultimately leading her to ask for an "accommodation" in her schedule in order to allow her not to have to be at work as often. She was clear that without this schedule accommodation, she would continue to miss work and wanted a flex/reduced schedule to fix he "problems" with her attendance and leave. *Ex. 1, p. 223:9-225:20.* To the extent that her "limitation" was an inability to appear for work regularly, this is an essential element of her job. As Plaintiff could not regularly show up for work because of medical appointment commitments, etc, she could not perform the essential elements of her job without a reduced work schedule. Thus, she was not a qualified individual with a disability.

For the above reasons, Plaintiff was not a qualified individual with a disability; had no limitations requiring her "accommodation request" and thus never made a reasonable accommodation request upon her employer. She is not entitled to recover under the ADA and her disability discrimination claim should be dismissed as a matter of law.

**2. Defendant provided reasonable accommodations & Plaintiff rejected; Defendant could not reasonably accommodate Plaintiff as she requested due to undue hardship/burden on employer**

The plaintiff is required to demonstrate, as part of her *prima facie* case, that an accommodation of her disability exists and that such accommodation is reasonable. *See Riel v. Electronic Data Sys. Corp.,* 99 F.3d 678, 683 (5th Cir.1996); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997) (citing *Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997)). Once the plaintiff has done this, the defendant has the burden of showing that the proposed accommodation is unreasonable, which "merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship." *See id.* In practice, the questions of whether an accommodation is reasonable and whether it creates an undue burden are almost identical. *See, e.g., School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) ("Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or requires a 'fundamental alteration in the nature of [the] program' ") (citation omitted); *Riel,* 99 F.3d at 681 ("The terms "reasonable accommodation" and "undue hardship" often go hand-in-hand."); *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1080 (6th

Cir.1988) (stating that an accommodation is not reasonable if it places an undue burden on the employer).

While the ADA provides a right to reasonable accommodation, the accommodation does not have to be the employee's preferred accommodation. Cite: *E.E.O.C. v. Universal Mfg. Corp.,* 914 F.2d 71, 73 (5th Cir.1990) (If accommodation offered is reasonable, employee cannot insist upon specific or more beneficial accommodation). If an employer is unwilling to participate in good faith in the interactive process, the employer violates the statute. *See Loulseged v. Akzo Nobel, Inc.,* 178 F.3d 731, 736 (5th Cir.1999). The employee is held to the same expectations; if the employee is responsible for the breakdown in the interactive process, the employer cannot be found to have violated the statute. *See id.* The interactive process, however, "is not an end i[n] itself—it is a means to the end of forging reasonable accommodations." *Id.*

Even if Plaintiff somehow qualified as substantially impaired in the activity of working, there is another reason that she cannot recover in this case. The employer properly engaged in the accommodation interactive process and offered Plaintiff several reasonable accommodations. Plaintiff simply rejected them. As to Plaintiff's one and only accommodation demand (a reduced schedule to 35 or lower hours per week in her same job at her same pay with no guarantee she wouldn't be absent in the next few months), Tropical could not and was not required to accommodate in such a fashion because it would not be reasonable and would be overly burdensome and cause an undue hardship on Tropical and Plaintiff's fellow employees/counselors in her Department.

The uncontroverted evidence in this case is that: 1.) Plaintiff was working a 40-hour week job as a counselor; 2.) she was missing work consistently; 3.) she requested a reduced hourly schedule (between 30 and 35 hours per week) as an "accommodation" for her "disability" and for her daughter's disability in that she needed more time to miss work to take her daughter to appointments; 4.) she was asked by Tropical that if they were to accommodate her by granting her the shorter work week, would she agree that she would not miss any more work for a few months and she responded by saying she could not guarantee that because she would still need to care for her daughter; 5.) Plaintiff did not propose any counter-proposal or other accommodation in response to the first rejected proposal; 6.) Tropical offered another accommodation in the form of another counseling position in another Department with a more flexible schedule with absolutely no reduction in pay. 7.) Plaintiff rejected the second accommodation offer, advising that she would

absolutely not change positions; 8.) Plaintiff made no counter-offer for another proposal; and 9.) Plaintiff's employment was separated given her extensive absences; refusal to move to a more flexible position to alleviate absences; and Plaintiff acknowledgement that she would likely have to continue to have absences despite using up all protected leave. *Ex. 1, p. 239:20-240:19*; *Ex. 17.*

Plaintiff essentially requested (and refused to budge) that Tropical accommodate her (and her daughter's) disability by allowing her to work less hours every week than her shift required and all of her co-worker counselors were required. Such an accommodation is not reasonable, as it would place an undue hardship on Tropical; Plaintiff's Department; Plaintiff's supervisors and Plaintiff's immediate co-workers. *Ex. 17.* This accommodation would necessarily fundamentally alter the shift structure and place a greater burden on the other counselors, and impair their ability to meet client goals, particularly given a shortage of counselors existing at that time. This would have required substantial modification of Tropical's basic employment practice of requiring employees to follow a regular schedule of 40-hour work week minimum attendance. Further, this would essentially alter the budget of Tropical, as Plaintiff was a salaried employee and reducing her hours would either give Plaintiff a non-budgeted pay raise (and unfair and more favorable position than her co-workers) or would require a complete alteration of her pay/salary structure.

Altering an employer's general practice of requiring regular attendance would be unduly burdensome to most employers, but is especially onerous for a mental health center where the predictability of a certain level of staff is essential for proper patient care. On its face, the financial burden of such an accommodation outweighs any conceivable benefit, both as Tropical believed then and now. Moreover, Plaintiff's suggestion did not address the manner in which Tropical could accommodate her disability at her place of employment, but rather, are merely ways in which Tropical could deal with her absences from work. In such a case, the suggested accommodation places an undue burden on the employer, and therefore are not required under the ADA. *Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995) (citing *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir.1991)), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996); *Amato v. St. Luke's Episcopal Hosp.,* 987 F. Supp. 523 (S.D. Tex. 1997).

In short, Plaintiff's disability affects her employment, if at all, long before she arrives at her place of employment or before she fails to arrive and therefore, any accommodation of this disability, aside from tolerating numerous sporadic absences, is outside the employer's realm. Furthermore, while the ADA focuses on eradicating barriers, the ADA does not relieve a disabled

employee or applicant from the obligation to perform the essential functions of the job; to the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled." *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 807 (5th Cir.1997) (citation omitted). Plaintiff's suggested accommodations sought to exempt her from the performance standards and attendance requirements demanded of other Tropical counselors in her position and because she was unable to perform the essential functions of her job due to her lack of regular attendance, and her suggested accommodations are neither reasonable nor effective, she cannot be viewed as an otherwise qualified individual with a disability under the ADA.

For the above reasons, Plaintiff's claim for disability discrimination fails as a matter of law because Plaintiff rejected reasonable accommodations and thus ended/failed to engage in the interactive process; Defendant Tropical fully engaged in the interactive process and offered reasonable accommodations; the accommodation Plaintiff requested was not reasonable and would have resulted in undue hardship upon Tropical and was denied out of business necessity.

## D. Plaintiff cannot establish as a matter of law a Disability by Association Discrimination claim

Plaintiff also brings an ADA discrimination claim both with regards to her alleged disability and the alleged disability of her daughter. As to the ADA discrimination by association claim in regards to her daughter, Defendant currently has pending a Rule 12 Motion to Dismiss that as pled by Plaintiff, this is not a viable claim for which relief can be granted. Defendant continue to urge said Rule 12, but would also assert that Plaintiff cannot establish this claim as a matter of law and dismissal of said claim pursuant to Summary Judgment is warranted. Based on the factual pleadings and evidence in this case, this is clearly not the type of disability associational claim allowed by the ADA. Plaintiff alleges that her daughter's "disability" affected her job and resulted in her termination because she was forced to miss work in order to tend to her daughter's disability. *Plaintiff's Complaint.* Plaintiff confirmed this in deposition and in the factual basis for her request for a "modified work schedule" in the form of less than 40 hours. *Ex. 1, p 276:5-277:15*; *Ex. 17.* Plaintiff's disability by association claim is in essence that it was Tropical's inability to allow her to continue to miss work to tend to her daughter's disability, through a flex/reduced working hours schedule, that constitutes the discrimination by the Defendant against the Plaintiff in regards to her "disability by association". *Id.*

Plaintiff's disability associational claim fails for failure to state a cause of action for which relief can be granted and as a matter of law. Defendant would start by acknowledging that some Courts have allowed and held that the ADA prohibits discrimination against an individual who is known to associate with a disabled individual. *Haire v. BIOS Corp.,* No. 08–CV–336–TCK–FHM, 2009 WL 484207, at *2 (N.D.Okla. Feb.26, 2009) (citing 42 U.S.C. § 12112(b)(4)); *Spinks v. Trugreen Landcare, L.L.C.,* 322 F.Supp.2d 784, 795 (S.D.Tex.2004) (quoting *Rogers v. Int'l Marine Terminals,* 87 F.3d 755, 760 (5th Cir.1996)). *Moresi v. AMR Corp.,* No. CA 3:98–CV– 1518–R, 1999 WL 680210, at *2–*3 (N.D.Tex. Aug.31, 1999).[7]

However, neither the US Supreme court nor the Fifth Circuit have ever adopted a specific test for evaluating such claims in that neither has ever recognized an actual cause of action for discrimination based on association with a handicapped individual. *See Grimes v. Wal–Mart Stores Texas, LLC,* 505 F.App'x 376, 380 n .1 (5th Cir.2013). Defendant specifically references *Grimes* for the proposition asserted, that the 5th Circuit, even when addressing a disability association discrimination claim, has not affirmatively found such to in fact be a validly existing claim. As the Fifth Circuit noted in *Grimes*:

> "The Fifth Circuit has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor have we described what such a claim requires. This Court referenced an associational discrimination claim based on disability in an unpublished opinion. *Carter v. Ridge,* 255 Fed.Appx. 826, 833 (5th Cir.2007) (per curiam) (unpublished). However, that opinion affirmed dismissal of the associational discrimination claim on exhaustion grounds. *Id.* Likewise, judgment as a matter of law was affirmed in *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755 (5th Cir.1996), without explaining what an associational discrimination claim entails. 87 F.3d at 760–61. In *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.,* 156 F.3d 581, 588–89 (5th Cir.1998), *partially vacated on other grounds sub nom., Williams v. Wal–Mart Stores, Inc.,* 182 F.3d 333 (5th Cir.1999) (en banc) (per curiam), the Court recognized an associational discrimination claim based on an interracial relationship, but the Court did not elucidate the elements required to make a prima facie showing.
>
> District courts within this Circuit have, however, recognized a cause of action for associational discrimination. *See, e.g., Spinks v. Trugreen Landcare, LLC,* 322 F.Supp.2d 784, 796 (S.D.Tex.2004); *Moresi v. AMR Corp.,* No. CA 3:98–CV–1518–R, 1999 WL 680210, at *2–*3 (N.D.Tex. Aug. 31, 1999). It is the test laid out in these cases that the Court cites here. *See Moresi,* 1999 WL 680210, at *3. However, this opinion should not be construed as recognizing a cause of action for associational discrimination based on

[7] Interestingly, Plaintiff argued in her Response to Defendant's First Rule 12 Motion that this acknowledgement constitutes an admission that Plaintiff's ADA associational discrimination claim is valid in this case. Defendant makes no such admission as the Rule 12 record and remaining argument makes quite clear.

disability since, even assuming such a cause exists, Grimes cannot meet the burden that such a claim would entail."

*Id.*

Because the ADA does not explicitly call for a disability by association discrimination claim, and because neither the US Supreme Court nor 5th Circuit have affirmatively acknowledged such a claim validly exists, the Defendant hereby urges no such cause of action exists and Plaintiff's claim must be dismissed as a matter of law.

However, even if this Court were to assume such a cause of action does exist, Plaintiff's factually pled claim still fails to plead a claim upon which relief can be granted. While the Fifth Circuit has not expressly adopted such a claim, the other circuits and district courts that have, have applied the four-part test created in *Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1085 (10th Cir.1997). Under this test, to establish a prima facie case of disability by association, a plaintiff must demonstrate: (1) the plaintiff was 'qualified' for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Den Hartog,* 129 F.3d at 1085.

In this case Plaintiff alleges that the Defendant not allowing her to miss work through a modified reduced hours working schedule, in order to take her disabled daughter to doctor's appointments, is the "discrimination" by association in this case and not reasonably accommodating her schedule with reduced work hours to take her disabled daughter to the doctor is "discrimination". *Plaintiff's Complaint; Ex. 1, p 276:5-277:15; Ex. 17*. This is not the type of discrimination by association contemplated by the Courts that have even recognized this cause of action. *Den Hartog,* 129 F.3d at 1085. The ADA states that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual ...." *Den Hartog,* 129 F.3d at 1085 citing 42 U.S.C. § 12112(a). In the context of this general prohibition, the word "discriminate" is a term of art which includes "not making reasonable accommodations." *Id* citing 42 U.S.C. § 12112(b)(5) (1994); 29 C.F.R. § 1630.9(a) (1996). By the plain terms of § 12112(b)(5), the ADA does not require an employer to make any "reasonable accommodation" to the disabilities of relatives or associates of an employee who is not himself

disabled. *Id.* The plain language of the only two provisions requiring "reasonable accommodation" in Title I of the ADA suggests that only job applicants or employees, but not their relatives or associates, need be reasonably accommodated. *Id.* The lack of any reference to the associates or relatives of the employee or applicant in Section 12112(b)(5)'s articulation of the ADA's "reasonable accommodation" requirement is not due to any inadvertent omission and in its Report, the House Education and Labor Committee clearly expressed its intention that under the association provision, "[t]he employer need not provide any accommodation to the nondisabled employee." *Id.* citing H.R.Rep. No. 101–485, pt. 2, at 61–62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 344. *See* Subpart A, *supra.*

Furthermore, the Ten Circuit's conclusion in *Den Hartog* has also been reached by the EEOC itself, which, pursuant to 42 U.S.C. § 12116 (1994), has issued regulations and Interpretive Guidance on the ADA. *Id.* The Interpretive Guidance notes that where an associate or relative of the employee is disabled, but the employee himself is not disabled: an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities. *Id.* Thus, for example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability. 29 C.F.R. Pt. 1630.8 app. at 349 (1996) (citing legislative history materials).[8]

Consequently, an employer is not required under the ADA to provide an employee with any "reasonable accommodation" of the employee's relative/associate's disability. *Den Hartog*, 129 F.3d at 1084–85. The 4th Circuit has similarly held. *Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209 (4th Cir.1994) (employee was terminated because she missed work repeatedly and extensively primarily to care for disabled son and the Court rejected the plaintiff's disability association claim…"If [a non-disabled employee] violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for the [disabled associate].").

---

[8] The EEOC Interpretive Guidance provides three examples of forbidden association discrimination: (1) refusal to hire where the employer makes an unfounded assumption that the employee will miss work in order to care for a disabled relative; (2) discharging an employee who does volunteer work with AIDS victims, due to fear that the employee may contract the disease; and (3) denying health benefits to a disabled dependent of an employee but not to other dependents, even where the provision of benefits to the disabled dependent would result in increased health insurance costs for the employer. *Den Hartog*, 129 F.3d 1076 at 1085 (10th Cir. 1997) citing 29 C.F.R. Pt. 1630 app. at 349 (1996).

Thus, even if this Court were to acknowledge that causes of action for disability by association do in fact exist in the Fifth Circuit, and Defendant disputes that it does, Plaintiff's claim for disability discrimination by association still fails because her specific claim is neither the type of disability association claim allowed by Courts holding the cause of action exists; and the competent summary judgment evidence defeats said claim as a matter of law. First, there simply is no ADA disability discrimination claim as a matter of law, *in any jurisdiction*, wherein one alleges an employer failed to reasonably accommodate the employee's family's disability by giving her a modified schedule to take care of a disabled relative. This is *exactly* what Plaintiff alleges with this claim: that the Defendant was legally obligated to provide Plaintiff a reasonable accommodation in the form of a revised work schedule in order to accommodate her to take care of her child's disability. *Plaintiff's Complaint.* Because the ADA does not require an employer to make any "reasonable accommodation" to the disabilities of relatives or associates of an employee, this portion of plaintiff's ADA claim must be dismissed as a matter of law.

Further, even if this type of disability association claim were in fact allowable by law, the competent summary judgment evidence shows that Plaintiff's claim fails for all of the reasons identified above with regards to her disability claim. The plaintiff was not "qualified for the job" at the time of her separation from employment; her accommodation request was not reasonable; Tropical could not accommodate her request without undue burden on the employer; Tropical did in fact engage in the interactive process and did offer a reasonable accommodation that Plaintiff rejected; and Plaintiff's separation from employment was based on legitimate non-discriminatory factors and not her daughter's disability. Far from ignoring her request and failing to reasonably accommodate her, Tropical attempted to work with Plaintiff in every way required by the law (and in fact went above and beyond what is required by law).

Plaintiff cannot make out a disability by association claim as a matter of law. There is no issue of disputed fact as to every element of these types of claims recognized by other jurisdictions.

## VIII.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant would request that the Court grant this Motion for Summary Judgment and dismiss Plaintiff's claims identified above pursuant to FRCP 56. Defendant further requests such other and further relief to which it may show itself to be justly entitled, at law and in equity.

SIGNED this 14th day of January, 2020.

Respectfully submitted,

By:     *Ricardo J. Navarro*
        RICARDO J. NAVARRO
        Attorney In Charge
        State Bar No. 14829100
        So. Dist Id No. 5953
        rjnavarro@rampage-rgv.com
        **DENTON NAVARRO ROCHA**
        **BERNAL & ZECH**
        A Professional Corporation
        701 E. Harrison Ste 100
        Harlingen, Texas 78550
        956/421-4904
        956/421-3621 (fax)

By:     *Robert L. Drinkard*
        ROBERT L. DRINKARD
        Of Counsel
        State Bar No. 24007128
        So. Dist Id No. 23712
        rdrinkard@rampage-rgv.com
        **DENTON NAVARRO ROCHA**
        **BERNAL & ZECH**
        A Professional Corporation
        701 E. Harrison Ste. 100
        Harlingen, Texas 78550
        956/421-4904
        956/421-3621 (fax)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served on the persons or parties identified below in accordance with one or more of the recognized methods of service by the Federal Rules of Civil Procedure on the 14th day of January 2020.


Cindy A. Garcia                                                    **Via E-Filing Method**
**Law Offices of Cindy A. Garcia, PC**
1113 Nightingale Ave.
McAllen, Texas 78504
Email: thegarcialawfirm@gmail.com
**COUNSEL FOR PLAINTIFF**


*Robert L. Drinkard*
RICARDO J. NAVARRO
ROBERT L. DRINKARD