**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **RAQUEL I. VILLARREAL,** | § | |
| *Plaintiff* | § | |
| | § | **CIVIL ACTION NO. 7:19-CV-00053** |
| | § | **(JURY REQUESTED)** |
| **VS.** | § | |
| | § | |
| **TROPICAL TEXAS BEHAVIORAL** | § | |
| **HEALTH,** | § | |
| *Defendant* | § | |

**PLAINTIFF RAQUEL I. VILLARREAL'S FIRST AMENDED RESPONSE IN
OPPOSITION TO DEFENDANT TROPICAL TEXAS BEHAVIORAL HEALTH'S
MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE RANDY CRANE:**

**COMES NOW,** Plaintiff **RAQUEL I. VILLARREAL ("Villarreal")** and pursuant to Rule 56 of the Federal Rules of Civil Procedure hereby files this her First Amended Response in Opposition to the Motion for Summary Judgment filed by Defendant **TROPICAL TEXAS BEHAVIORAL HEALTH** ("Tropical Texas") In support of her amended response, Villarreal would show unto the Court that there are various genuine issues of material fact which necessarily require resolution by a jury and therefore preclude rendition of summary judgment as a matter of law. This is an employment case brought by Villarreal for wrongful termination based on unlawful discrimination on the basis of disability, FMLA and retaliation.

**I.**
**<u>NATURE OF THE CASE</u>**

Raquel I. Villarreal worked faithfully for Tropical Texas, from April 2016 until her termination on July 31, 2018.

Villarreal brings forth claims of disability and disability by association, real or perceived, under the Americans' with Disabilities Act of 1990, as amended ("ADA"), and the ADA Amendments Act of 2008 ("ADAAA").

Villarreal also brings forth claims of FMLA interference and FMLA retaliation under the Family Medical Leave Act ("FMLA").

Villarreal further shows unto the Court that there are genuine issues of material fact as to whether she was qualified for her continued employment with Tropical Texas.

## II.
## FACTUAL BACKGROUND

On or about April 2016, Villarreal began working at Tropical Texas as a Program Specialist/Licensed Professional Healing Arts ("LPHA"). *See Exhibit A at 22:3-8. Also see Exhibit D: Bate Stamped Doc.# 000024; 000056.* During her time of employment with Tropical Texas, Villarreal was qualified for her position and performed all her duties with dedication, hard work and undivided loyalty. *See Exhibit A at 26:7-23; 45:18-20, 22; 49:12-13; 64:10-12. Also see Exhibit D: Bate Stamped Doc.# 000060-000068; 000071-000080; 000094-000103.*

Villarreal is a single-parent to a 13-year-old daughter with multiple disabilities and serious medical conditions who requires care for all of her daily living activities. Villarreal's daughter has numerous medical specialists and has an average of 2-3 doctor's appointments a month. Villarreal's ex-husband (minor child's father) gave up custodial rights in May 2017 and his rights to make any decisions about their daughter's education or medical care. He also chose not to meet his obligation to take their child to her doctor's appointments. Therefore, Villarreal is solely responsible for taking her daughter to her monthly doctor's appointments. *See Exhibit A at 94:15-25; 95:1-7; 99:13-19; 102:20-22; 103:4-7, 18-20; 111:5-9; 141:7-11. Also see Exhibit D: Bate Stamped Doc.# 000058-000059; 000069-000070; 000081-000082; 0000654.*

Villarreal has depression, a disability that substantially limits more than one major life activity and bodily function, including concentration, thinking and sleeping. Regardless of these substantial limitations, Villarreal exceptionally performed her job duties at Tropical Texas. *See Exhibit A at 115:24-25; 116:1, 6; 182:1-6, 8-14; 183:9-7, 20-24; 190:2-5, 8-25. Also see Exhibit D: Bate Stamped Doc.# 000068-00006, 00071000080; 000094-000103; 000323-000326; 000328-000331; 000463-000464; 000466-000468;000470-000471; 000811.*

During Villarreal's last year of employment at Tropical Texas, she was repeatedly pressured by supervisors that she was missing too much work and was not accumulating paid-time off ("PTO"). Villarreal was told by supervisors that Tropical Texas "frowned upon" employees who did not have accumulated PTO and that it could be reason for disciplinary action or termination. *See Exhibit A at 126:9-25; 137:17-25; 138:1-19; 140:12-19; 211:1-5; 213:20-25; 220:12-15. Also see Exhibit D: Bate Stamped Doc.# 000058-000059; 000069-000070; 000081-000082; 000654.*

In July 2017, Villarreal obtained intermittent leave pursuant to the Family Medical Leave Act of 1993 ("FMLA") through pediatrician, Dr. A. Mercado, to protect her job when requesting time off to meet her daughter's medical needs. *See Exhibit A at 99:4-7, 13-25; 112:4-10.* Villarreal also developed her own serious medical conditions in December 2017 when her gynecologist, Dr. A Tey, diagnosed her with a serious medical condition requiring surgery. *See Exhibit A at 116:11-18; 127:4-6.* When Villarreal spoke to her supervisor about her request for time off in December to have surgery, her supervisor asked if Villarreal could postpone the surgery because the department was short on staff, and they needed her to be at work. *See Exhibit A at 210:14-23.* Villarreal consulted with her doctor, and the surgery was postponed until January 2018. *See Exhibit A at 147:5-19; 155:7-14; 156:17-21. Also see Exhibit D: Bate Stamped Doc.# 000342; 000344; 000346; 000348; 000505-000508; 000983-000984.*

On January 4, 2018, Villarreal's serious medical condition worsened. Villarreal's doctor provided a medical excuse, and her surgery was scheduled for January 10, 2018. Villarreal provided Tropical Texas with a doctor's note and proper FMLA documentation. *See Exhibit A at 148:1-6, 14-15.*

On March 9, 2018, Villarreal daughter had a scheduled MRI in San Antonio, Texas for her heart and brain, which was ordered by her daughter's cardiologist, Dr. Brennan. In April 2018, the doctor provided results of the MRI, stating that Villarreal's daughter another open-heart surgery, or her daughter would face a prognosis of congestive heart failure. However, the doctor informed Villarreal there was a risk her daughter could die from surgery due to her daughter's multiple serious medical conditions. This news caused severe mental/emotional distress to Villarreal, and she was out of work for approximately four days. *See Exhibit A at 176:1-3, 15-16.*

In May 2018, Villarreal's depression worsened and she developed more serious medical conditions. In June 2018, Villarreal had an extreme depressive episode, which was diagnosed as severe depression. Villarreal had to be out of work. Villarreal's family doctor, Jessica Porras, PA, treated her and prescribed medication for her disability and severe medical condition. Porras also referred Villarreal to counseling services. Villarreal obtained proper FMLA documents and provided them to Tropical Texas's Human Resources ("HR") department. Villarreal returned to work on July 12, 2018 because she was notified by Tropical Texas that she exhausted her FMLA leave. *See Exhibit A at 196:10-18; 197:1-2, 11-17, 19-25; 198:9-13; 199:3-6; 200:7-9; 201:8-11; 236:15-18. Also see Exhibit D: Bate Stamped Doc.# 000324-000326; 000330; 000463-000464; 0000466; 0000467-0000468; 0000470-0000471.* It appears however that Villarreal's FMLA leave may have been miscalculated by Tropical Texas and that she may not have exhausted her FMLA leave. *See Villarreal's Affidavit with supporting documentation attached hereto.*

On July 12, 2018, Villarreal returned to work and spoke with her acting supervisor, Alejandro Pacheco (assigned while her immediate supervisor, Josue Gutierrez, was on vacation). Villarreal expressed that since her disability resulted in the recent serious medical condition, she needed to reduce her work hours and have a flex schedule so that she could care for her daughter's disabilities/serious medical conditions as well as her own. *See Exhibit A at 208:6-21.* The Pacheco stated that he did not anticipate any problems with Villarreal's request and he was glad she was back at work to assist with the diagnosis of incoming patients. The acting supervisor said he would be contacting a manager at Tropical Texas, Brando Mireles, by email to inform him and reply to Villarreal. Villarreal then received an email from Mireles stating that her request was not approved. *See Exhibit A at 199: 3-6, 12-13, 17, 19; 201:4-11; 204:17-24; 205:25; 206:1-4, 6, 8, 13-14; 207:2-3, 5-10, 23-25. Also see Exhibit D: Bate Stamped Doc.# 000440-000441; 000447; 000553; 000559; 000584; 000984.*

Villarreal submitted a written request for reconsideration on July 16, 2018, and pled again for a reasonable accommodation to reduce her schedule, and provided a more detailed explanation of her and her daughter's recent and most current medical conditions and needs. *See Exhibit A at 191:5-23.* Villarreal emailed this letter to Gutierrez, her immediate supervisor, and Mireles. Mireles replied that the written request was sent to HR. *See Exhibit A at 208:6-25; 223:16-20; 224:13-16, 22-25;225:1-3, 12-20; 231:10-25; 232:1-4. Also see Exhibit D: Bate Stamped Doc.# 000562; 000570; 000580; 000582; 000605; 000610-000611.*

On July 23, 2018, Villarreal emailed Mireles to follow up on her request for an accommodation. Mireles replied that Tropical Texas's decision not to approve Villarreal's accommodation request would stand. *See Exhibit A at 231:1-5. Also see Exhibit D: Bate Stamped Doc.# 000580; 000588; 000590; 000592.*

On July 24, 2018, Villarreal emailed Mireles asking if he could provide her with the name of the administrator who reviewed her request. Mireles replied and redirected Villarreal to Odilia Arredondo, Tropical Texas' HR Director. *See Exhibit A at 231:17; 234:15-17. Also see Exhibit D: Bate Stamped Doc.# 000590; 000630; 000632.* Mireles then sent an email to several of Tropical Texas' administrators, including Arredondo, suggesting mutual separation as a response to Villarreal's requests. *See Villarreal's Affidavit with supporting documentation attached hereto as Exhibit E.* Arredondo responded that termination would be the only option. *See Villarreal's Affidavit with supporting documentation attached hereto.*

On that same day, Villarreal received a call from Angel Quinones, HR staff, telling her that Arredondo wanted to meet with her and that she needed to set up an appointment to meet with Arredondo. Villarreal contacted Arredondo and scheduled a meeting on July 25, 2018, at 2:30 P.M. *See Exhibit A at 231:17; 234:15-17. Also see Exhibit D: Bate Stamped Doc.# 000590; 000630; 000632.*

On July 25, 2018, Villarreal met with Arredondo in her office. *See Exhibit A at 244:13. Also see Exhibit D: Bate Stamped Doc.# 000557; 000592; 000984.* Arredondo commented that Villarreal's absences were a concern. *See Exhibit A at 239:24-25. Also see Exhibit D: Bate Stamped Doc.# 000590; 0005952; 000984.* Villarreal explained that both she and her daughter had serious medical conditions and disabilities. Arredondo responded by stating Tropical Texas "had been more than generous" (*See Exhibit A at 234:19; 236:7; 236:18. Also see Exhibit D: Bate Stamped Doc.# 000546; 000559; 000984.*) in providing Villarreal with time off and that it was now affecting the department's needs.

In this same meeting, Arredondo also commended Villarreal and told her she was an excellent clinician, and they had no complaints of the quality of her work. However, Arredondo then made the comment that Villarreal "was missing too much work." Villarreal told Arredondo

that she felt like she was being discriminated against because of her need to take FMLA leave for her and her daughter's health conditions/disabilities. *See Exhibit A at 128:4-20; 201:8-11; 204:17-24; 237:7-14.* As a means of demoting Villarreal (and not engaging in the interactive process of providing accommodations to Villarreal), Arredondo asked her if she would consider moving to another position. Villarreal expressed that because she was qualified for her current job, this suggestion by HR was not a solution or reasonable accommodation. In this same meeting with HR, Villarreal mentioned that she had been denied her accommodation request for reduced work hours and flex her work schedule. *See Exhibit A at 199:2-6; 205:5-11.* Villarreal advised Arredondo that on July 12, she was told adjusting her schedule was not anticipated by Tropical Texas to cause any concern (i.e. undue burden on the company). Mireles was not available to meet on that date, but when she mentioned that Villarreal had talked to Alejandro Pacheco, Mireles discredited Pacheco stating that Pacheco's opinion did not matter. A follow up appointment was scheduled for July 27, 2018. *See Exhibit A at 231:10-25; 232;1-4; 233:25; 234:15-17; 239:24-25; 240:1-12.*

On July 27, 2018, at 8:00 A.M., a meeting was held with Josue Gutierrez, Brando Mireles, Odilia Arredondo, and Villarreal. Tropical Texas represented to Villarreal that she exhausted all her FMLA leave and offered Villarreal a demotion with condition that she could not be absent from work (including absences for her and her daughter's care) for the next three to four months. *See Exhibit A at 238:3-10; 17-19.* Villarreal expressed to everyone at the meeting how this was more of a punishment rather than discussing a resolution (*i.e.* engage in the interactive process of Tropical Texas providing accommodations) that would better fit the department needs. Villarreal explained how other similarly situated LPHAs were being allowed to flex their schedule. *See Exhibit A at 280:19-24:10-19. Also see Exhibit D: Bate Stamped Doc.# 000049; 000980; 000985.* In an attempt to engage in the interactive process, despite Tropical Texas's lack of engagement, Villarreal proposed a working schedule that conformed to the recent announcement that Tropical

Texas would be changing the center's hours of operation on Tuesday and Thursdays from 8:00 A.M. to 7:00 P.M. and every second Saturday from 8:00 A.M. to 12:00 P.M. Tropical Texas dismissed this reasonable request, since they intended to either demote or get rid of her because of her and her child's disabilities/serious medical conditions. *See Exhibit A at 237:7-14; 238:3-5; 239:2-9. Also see Exhibit D: Bate Stamped Doc.# 000570; 000576; 000590; 000980; 000985.* Arredondo then scheduled a follow-up meeting with Villarreal for July 31, 2018 at 9:00 A.M. Arredondo was adamant that Villarreal's absences were a problem. As a final desperate attempt to engage Tropical Texas in the interactive process, Villarreal explained how working 35 hours instead of 40 hours would not have any substantially negative effect on the department. *See Exhibit A at 279:23-25: 280:1-18. Also see Exhibit D: Bate Stamped Doc.# 000636; 000638; 000980; 000985.*

     Arredondo feigned a lack of understanding because she did not have copies of the forms Villarreal submitted to Tropical Texas. Instead, Arredondo made an unreasonable offer for an LPHA position that she knew Villarreal could not do. *See Exhibit A at 236:18-24. Also see Exhibit D: Bate Stamped Doc.# 0000590; 00592.* When Villarreal expressed how she could not do the job Arredondo proposed, Arredondo said that Villarreal "would have to face repercussions." *See Exhibit A at 242:3-6.* Villarreal asked Arredondo if she could file a grievance or complaint because she felt she was being discriminated against. Arredondo said Villarreal "did not have any other options." *See Exhibit A at 236:18-24; 242:15-18; 19-23; 243:2-5, 7-9, 11-14, 21-22. Also see Exhibit D: Bate Stamped Doc.# 000050; 00592.* Villarreal then became very upset, suffered from anxiety symptoms, and started to cry. Because of her anxiety and mental state, Villarreal could not continue her workday. Villarreal advised her immediate supervisor she would be leaving work for the rest of the day. Villarreal also mentioned a scheduled medical appointment scheduled for that day weeks prior and reminded him of the appointment. Villarreal's immediate supervisor said

it was okay and approved her leaving for the day. *See Exhibit A at 240:18-25; 241:1-4, 7-19; 241:22-23.*

That same day, July 31, 2018., Villarreal received an email from Arredondo, stating that she had been terminated from her job. *See Exhibit A at 243:24. Also see Exhibit D: Bate Stamped Doc.# 000598; 000645; 000981.* Tropical Texas had no legitimate business justification for Villarreal's termination. In fact, Tropical Texas fired Villarreal for her disabilities/serious medical conditions, her request for accommodation and FMLA leave, and her discrimination complaints and desire to file a grievance. *See Exhibit A at 251:11-25; 276:12-21.*

## II.
## LEGAL STANDARD FOR SUMMARY JUDGMENT

### A.     The Standard of Review on a Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides summary judgment is appropriate only "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is *no genuine issue as to any material fact* and that the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex,* 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor

of the non-movant. *Little,* 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the non-movant is able to make such a showing, the court must deny summary judgment. *Little,* 37 F.3d at 1075.

Courts recognize two types of Title VII employment discrimination cases, each requiring different elements of proof. The first type is the "pretext" case, in which the Plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d at 476 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The second type of case is the "mixed-motive" case, in which the Plaintiff has direct evidence of discriminatory animus. This direct evidence shifts the burden of proof to the employer to show that legitimate reasons would have led to the same decision regardless of any discriminatory motives. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Starceski v. Westinghouse Elec. Corp*., 54 F.3d 1089, 1095-99 (3 Cir.1995); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed. 84 (2003).

Thus, how a case will be classified depends entirely on the presence or absence of direct evidence. *Price Waterhouse v. Hopkins*, 490 U.S. at 276, 109 S.Ct. 1775. If the Plaintiff has only circumstantial evidence of discrimination, the case will be classified as a pretext case regardless of how many motives the employer had. *Mooney v. Aramco Servs. Co*., 54 F.3d 1207, 1216 (5th Cir.1995); *Starceski v. Westinghouse Elec. Corp.,*54 F.3d at 1097-98.

**B. Effect of *Reeves, Desert Palace* and *Rachid* on Summary Judgment in Employment Discrimination Cases.**

The Supreme Court's unanimous opinions in *Reeves* and in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) significantly impact the methods of proof and summary judgment practice in employment discrimination cases. While *Reeves* involved a motion for judgment as a matter of law under FED. R. CIV. P. 50, *Reeves* made clear that the same standards apply to summary judgment motions. *Reeves* stated, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same,'" quoting *Anderson*, 477 U.S. 242 at 250-51.

In *Desert Palace*, the Supreme Court held that a Plaintiff can obtain a mixed-motive jury instruction *on the basis of circumstantial evidence alone* and is not required to submit direct evidence of discrimination in order to obtain the instruction. The Court extolled the value of circumstantial evidence in discrimination cases, stating:

> We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), we recognized that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of *circumstantial evidence* that is probative of intentional discrimination.' *Id*. at 147. The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: 'Circumstantial evidence is not only sufficient, but may *also be more certain, satisfying, and persuasive* than direct evidence.' *Rogers v. Missouri Pacific R Co.*, 352 U.S. 500 (1957).

> *Desert Palace,* 539 U.S. at 99-100.

> *Desert Palace* and *Reeves* also reaffirm the rule that discrimination may be inferred solely from a Plaintiff's *prima facie* case and evidence that the employer's asserted reason for the employment decision is false.

The Fifth Circuit has held that *Desert Palace* modifies the third step of the traditional *McDonnell Douglas* burden-shifting framework at the summary judgment stage in discrimination cases, stating in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) that the framework now involves the following:

(1) **Prima Facie** **Step:** Plaintiff Raquel I. Villarreal must raise a genuine issue of material fact on her *prima facie* case of disability discrimination, disability by association discrimination, FMLA interference, and FMLA retaliation.

(2) **Legitimate Non-Discriminatory Reason Step:** Defendant must then articulate, with admissible evidence, a specific legitimate, nondiscriminatory reason for its actions, and, if (and only if) that burden of production is met,

(3) **Pretext and/or Mixed Motive Step:** Plaintiff Raquel I. Villarreal must then offer sufficient evidence to create a genuine issue of material fact either (a) that Defendant's reason is not true or (b) that Defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is Plaintiff Raquel I. Villarreal's disability or disability by association.

See *Rachid*, 376 F.3d. at 312.

This case is a *pretext* case. Villarreal provides this Court with circumstantial evidence to support her claims. The United States Supreme Court defined the order and allocation of proof for a pretext case in *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. 1817 and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 252-53, 101 S.Ct. 1089. Initially, the complainant must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. 1817. Although the precise elements of discrimination will vary depending on the allegations, *Id.* at 802, the complainant's burden at this stage of the case "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. 1989.

To establish a *prima facie* case of disability or disability by association discrimination, Villarreal must show that: (1) she is a member of the protected class, (2) she was otherwise qualified for the position of Program Specialist (3) she suffered an adverse employment action, and (4) that Villarreal was replaced by someone outside of the protected class or that she was otherwise treated differently or discriminated against on account of her disability or disability by association.

The establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. To establish a presumption is to say that a finding of the *prima facie* case

produces a required conclusion against the employer in the absence of an explanation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Thus, once the Plaintiff has established a *prima facie* case, a burden of production falls to the employer to articulate a legitimate, nondiscriminatory reason for any alleged unequal treatment. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 506-07, 113 S.Ct. 2742; *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. 1817. This burden is one of production, not persuasion; it can "involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 509, 113 S.Ct. 2742. If the Defendant can satisfy this burden of production, the presumption of discrimination created by the Plaintiff's *prima facie* showing is eliminated, see *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. 1089 and all that remains is the ***Plaintiff's burden to persuade the fact-finder*** that the proffered reason was not the true reason for the employment decision and that the improper consideration--in this case, age discrimination--was the true reason. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507-08, 113 S.Ct. 2742.; *Reeves,* 530 U.S. at 142, *Palasota*, 342 F.3d at 575-576; *West*, 330 F.3d at 383-384.

In addition, the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible, is prima facie evidence that the employer acted in bad faith. *Fiellstad v. Pizza Hut of Am., Inc.***,** 188 F.3d 944, 952 (8th Cir. 1999). This shows that a factual error exists as to whether the employer has attempted to provide reasonable accommodation as required by the ADA. *Id.*

The ultimate fact question is whether unlawful discrimination was a motivating factor in terminating the employee. Because proof that the defendant's explanation is unworthy of credence ***is simply one form of circumstantial evidence*** that is probative of intentional discrimination, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 147, 120 S.Ct. 2097, the fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

In other words, in appropriate circumstances such as this case, it is permissible for the trier of fact to infer the ultimate fact of discrimination from the *falsity* of the employer's explanation. *Reeves v. Sanderson Plumbing Prods.,Inc.*, 530 U.S. at 147, 120 S.Ct. 2097. Consistent with this

proposition in a discrimination case, a plaintiff can defeat a summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the defendant's summary judgment evidence as failing to prove, as a matter of law, a legitimate, nondiscriminatory reason for the challenged employment action. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex.2000).

The plaintiff need not establish that her protected status was the *sole* reason she was discharged but must prove instead only that her protected status actually played a role in and had a determinative influence on the employer's decision-making process. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 383-384, (5th Cir. 2003). Importantly, *Reeves* teaches, and *West* reaffirms that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's non-discriminatory explanation. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2107; *West, supra* at 383-384.

There is overwhelmingly sufficient evidence beyond pretext to create multiple fact issues as to the Defendant's motivation to terminate Villarreal. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147, 120 S.Ct. at 2108. "In circumstances of this case, the trier of fact (i.e.– the jury) can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the fact-finder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves*, 530 U.S. at 147, 120 S.Ct. at 2108 (citations omitted).

### C.      Falsity of the Stated Reason

Proof that the employer's stated reason for the adverse employment action taken is false is a form of circumstantial evidence that is probative of intentional discrimination. *St. Mary's* at

2742; *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2108 (2000); *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 223 (5th Cir. 2000). The United States Supreme Court has held that "the fact finder's disbelief of the reasons put forward by the Defendant (particularly if disbelief is accompanied by suspicion of mendacity), together with the elements of the *prima facie* case, may suffice to show intentional discrimination." *St. Mary's* at 2742; *Reeves* at 2108. "[R]ejection of the Defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination ... [and] '[n]o additional proof of discrimination is required.'" (emphasis in original) *St. Mary's* at 2747-50; *Reeves* at 2108; *Russell* at 223.

Here, the evidence of the falsity of the stated reason for termination and the Defendant's serious credibility issues are substantial and plainly sufficient to preclude summary judgment. *Reeves* at 2108; *St. Mary's* at 2747-50. See also, *Uffelman v. Lone Star Steel, Co*., 863 F.2d 404, 407 (5th Cir. 1989)(the Fifth Circuit held that where the evidence is contradictory regarding an employee's performance, the resolution of the issue should be left to the fact finder.).

In summary, when the evidence is taken as a whole, the competent summary judgment evidence rebuts the stated reasons for Villarreal's termination and permits a reasonable fact finder to find that Villarreal was discriminated against based on her disability and her disability by association. Therefore, summary judgment is not proper.

Because there are numerous disputed material facts and Tropical Texas has failed to meet its burden of rebutting Villarreal's *prima facie* case of discrimination, the Defendant's motion for summary judgment should be denied in its entirety.

# III.
## PLAINTIFF RAQUEL I. VILLARREAL RELIES ON THE FOLLOWING COMPETENT SUMMARY JUDGMENT EVIDENCE

In responding to the motion for summary judgment, Villarreal relies on the following evidence attached to this response and it is incorporated by reference as if set forth herein verbatim:

(A)     The oral and videotaped deposition of Plaintiff Raquel I. Villarreal

(B)     Exhibits attached to Plaintiff Raquel I. Villarreal's deposition testimony, labeled as Exhibit "B";

(C)     Plaintiff Raquel I. Villarreal's sworn Charge of Discrimination, labeled as Exhibit "C";

(D)     Bates Stamped Documents;

(E)     Affidavit of Raquel I. Villarreal with supporting documents; and

(F)     All documents on file with the court in this matter.

# IV.
## ARGUMENT

**A. Summary Judgment should be denied because Villarreal had clinical depression, her daughter had a serious heart condition, and because of these conditions Tropical Texas terminated Villarreal even though she was exemplary psychologist.**

This Court should deny Tropical Texas' motion for summary judgment because Raquel I. Villarreal can show that Tropical Texas terminated her because she had major depression and her daughter had a heart condition, even though she was qualified for her job and excelled in it.

The ADA prohibits an employer from discriminating against a qualified individual based on disability regarding the discharge of their employees. 42 USCA § 12112(a). To prevail under the ADA, the plaintiff must show: (1) she has a disability; (2) she is an otherwise qualified employee; and (3) she suffered an adverse employment decision solely because of her disability. *Rizzo v. Children's World Learning Centers, Inc.,* 173 F.3d 254, 260 (5th Cir. 1999), on reh'g en banc, 213 F.3d 209 (5th Cir. 2000).

Under the act, an employer discriminates against an employee by not providing a reasonable accommodation to the known mental limitations of an otherwise qualified individual with a disability. *EEOC v. Chevron Phillips Chemical Co.*, 570 F.3d 606 (5th Cir. 2009). However, employers can escape liability under the ADA if they can show that an accommodation would place an undue hardship on the employer's operation of business. *Id.*

In addition, the ADA also prohibits discrimination against an individual who is known to associate with a disabled individual. 42 U.S.C. § 12112(b)(4). *See also Ruiz v. Edcouch-Elsa Indep. Sch. Dist.,* No. 7:13-CV-443, 2014 WL 1385877, at *2 (S.D. Tex. Apr. 9, 2014). This provision protects employees "from adverse job actions based on unfounded stereotypes and assumptions arising from the employees' relationship with particular disabled persons." *Id.*

Villarreal is a qualified individual under the ADA because she had major depression, which was documented by her doctor, and was an experienced psychologist who could have performed her tasks if she had a slight decrease in the number of hours in her schedule. Tropical Texas was aware of this condition because Villarreal gave them a note that detailed her condition. Due to this condition, she was terminated from her position with no offer of a reasonable accommodation.

In addition, Villarreal is protected under 42 U.S.C. § 12112(b)(4) because her daughter had a heart condition which needed constant medical attention, for whom she is the primary custodial parent. Villarreal was terminated because of her daughter's disability.

A reasonable jury could conclude that, under the ADA, Villarreal was impermissibly terminated due to her disability and disability by association. Therefore, summary judgement should be denied.

### a. Villarreal's depression was diagnosed by her doctor and required her to go to therapy during working hours and limited her ability to think.

Villarreal had clinical depression, as diagnosed by her physician, that required she attend therapy session during working hours, which is a disability protected by the ADA.

The ADA prohibits an employer from discriminating against a qualified individual based on disability regarding the discharge of their employees. 42 USCA § 12112(a). For her ADA claim to survive summary judgment, Villarreal must show, as a threshold matter, that she suffers from a disability. *Williams v. Tarrant County College District*, 717 Fed.Appx 440, 446 (5th Cir. 2018). Under the ADA, "disability" is: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.". 42 USCA § 12102(2). The last subsection can be satisfied if the individual establishes that he or she has been subjected to a prohibited action because of an actual or perceived mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 USCA § 12102(3)(A). Working and thinking are considered "major life activities" under the ADA. 29 C.F.R. § 1630.2(i)(1)(i).

The "substantially limits" standard of 42 USCA § 12102(2)(A) is not meant to be a demanding standard. *Williams*, 717 Fed.Appx at 446. "An impairment need not prevent, or significantly or severely restrict" performance of major life activities, but rather, the standard is whether it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population". *Id.*

In addition, under 42 USCA § 12102(2)(C) Villarreal "need only show that her employer perceived her as having an impairment and that it discriminated against her on that basis". *Id.* No matter which standard Villarreal asserts her disability under the ADA, courts are commanded to construe disability broadly, "to the maximum extent permitted by the terms of the ADA." *Id.*

A can plaintiff show they have a disability in the Fifth Circuit by self-declaration without any supporting medical analysis. *Williams,* 717 Fed.Appx at 447. In *Williams*, the plaintiff had major depression, Post-Traumatic Stress Disorder ("PTSD"), and Attention Deficit Hyperactivity Disorder ("ADHD"). *Id*. The symptoms of these conditions were constantly with her and impaired her ability to form thoughts or communicate. *Id.* The court found the plaintiff's declaration, without any medical documentation to be sufficient to create a genuine dispute of a material fact of the plaintiff's disability. *Id.* In addition, the court noted that the ADA amendments broaden protection for the disabled by clarifying that showing substantial limitation "usually will not require scientific, medical, or statistical analysis" and a plaintiff's self-declaration is sufficient. *Id at 448.*

Here, Villarreal had documentation from her medical provider that she had major depression and was unable to work for a certain time. [Depo Exch 33 000324] Villarreal's provider indicated that a reduced work schedule might be required upon her returning to work. *Id.* In addition, Villarreal's provider stated that although the worst of her symptoms were temporary, major depression is a chronic disorder. *Id.*

Like in *Williams*, where the plaintiff had major depression, Villarreal's symptoms will always be with her and impaired her ability to work and form thoughts. Additionally, Villarreal exceeds what is required by the Fifth Circuit by providing medical documentation instead of just a self-declaration like in *Williams*. Villarreal provided this to Tropical Texas and it was signed off by them, showing that they perceived she had this condition.

Villarreal's depression impaired her ability to think and also work because she had to attend therapy sessions during working hours. In addition, Tropical Texas knew that she had this condition as they received proof of her diagnosis by her medical provider. Therefore, Villarreal has sufficiently established that she has a disability under the ADA.

**b. Villarreal's depression only required her to be absent from work for therapy appointments and she could otherwise exceptionally perform her duties if given a flexible work schedule.**

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 USCA § 12111(8). To avoid summary judgment on whether she is a qualified individual, Villarreal needs to show: (1) that she could perform the essential functions of the job in spite of her disability or; (2) that a reasonable accommodation of his disability would have enabled her to perform the essential functions of the job. *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir. 1996).

**i. Scheduled and protected absences from work do not facially show that Villarreal could not perform her essential job functions in spite of disability.**

To show she was a qualified individual under the ADA, Villarreal needs to show that she could perform the essential functions of the job in spite of her depression. *Turco,* 101 F.3d 1093. It is undisputed Villarreal was a qualified psychologist. Odilia Arredondo, Tropical Texas' HR Director, commended Villarreal and said she was an excellent clinician. Tropical Texas' main concern was with Villarreal's absences.

Defendants assert, and cite several authorities from other circuits, that even if Villarreal has a disability under the ADA, her potential absences at work undercut her disability claim. However, a disability claim in the Fifth Circuit does not fail because of her absence from work due to leave, protected or otherwise.

In *Williams*, the court held that "an individual's ability to perform her job does not prevent a finding of disability; her disability may be unrelated to the performance of her job, or perhaps, with reasonable accommodations, she is capable of fulfilling her duties." *Williams,* 717 Fed.Appx

at 448. Here, Villarreal submitted documentation from her medical provider that she made need an accommodation in the form of a reduced schedule for her depression. Villarreal would have been able to perform her job if she had been given a reduced schedule.

ii. **Villarreal's proposal for a flexible schedule was a reasonable accommodation, and would not have been an undue hardship on Tropical Texas.**

To show that she was a qualified individual under the ADA, Villarreal needs to show that a reasonable accommodation would have enabled her to perform the essential functions of her job. *Turco*, 101 F.3d 1093. A plaintiff, to defeat a motion for summary judgment, need only show that an "accommodation" seems reasonable on its face. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Employers can escape liability under the ADA if they can show that an accommodation would place an undue hardship on the employer's operation of business. *Chevron Phillips Chemical Co.*, 570 F.3d at 606. However, the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible, is prima facie evidence that the employer acted in bad faith. *Fiellstad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999). This shows that a factual error exists as to whether the employer has attempted to provide reasonable accommodation as required by the ADA. *Id.*

Villarreal's medical provider listed that she needed a reduced schedule in order to work with her symptoms due to major depression. Villarreal requested from Tropical Texas a reduced flexible schedule to accommodate her disability. When Tropical Texas rejected that request and offered her a demotion instead, they claimed that her proposal would provide an undue hardship on the organization. *See Villarreal's Affidavit with supporting documentation attached hereto.* Villarreal calculated that at most she could see and diagnose an average of 6-9 clients a day during a 40 hour work week. *Id.* A reduced work schedule at 35 hours a week would allow her to see an average of 5-8 clients daily at most. *Id.*

However, taking into account the amount of missed appointment, cancellations and no shows per day, her reduced schedule would mean that she would see no fewer clients than she would during a 40 hour work week. *Id.*

Tropical Texas refused to consider this request multiple times and only responded with an offer to move to a different position which was effectively a demotion. This failure to engage in the interactive process shows that Tropical Texas acted in bad faith and create a material fact as to whether they attempted to provide a reasonable accommodation as required by the ADA. Therefore, Villarreal showed that her proposal was a reasonable accommodation. In addition, Tropical Texas' failed to engage in the interactive process to provide a reasonable accommodation.

### c. Villarreal was discriminated against because she was terminated due to her daughter's disability.

In addition to prohibiting discrimination against a disabled individual, the ADA also prohibits discrimination against an individual who is known to associate with a disabled individual. *Ruiz*, 2014 WL 1385877, at *1. Under this test, to establish a prima facie case of disability by association, a plaintiff must demonstrate: (1) the plaintiff was 'qualified' for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Id* at *2.

Here, some of Villarreal's absences at work were due to her daughter's heart condition. Villarreal is the sole custodial parent to her daughter and she had 2-3 doctor's appointments per month for her disability. Tropical Texas was aware of this disability because Villarreal had taken approved FMLA leave to care for her daughter. *See Exhibit A at 99:4-7, 13-25; 112:4-10.* Later, due to her absences at work, a combination of caring for her own and her daughter's disabilities, she was terminated despite requesting a reasonable accommodation. Therefore, Villarreal has shown that Tropical Texas discriminated against her due to her daughter's disability.

**B.     Villarreal Easily Establishes Her *Prima Facie* Case of Violations of the FMLA.**

The FMLA prohibits both interference with FMLA rights and retaliation against an employee who exercises FMLA rights.  28 U.S.C. § 2615; *Mauder v. Metropolitan Transit Authority of Harris County,* 446 F.3d 574, 580 (5th Cir. 2006) (citing *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 927 (5th Cir. 1999).

**1.  Interference**

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  28 U.S.C. § 2615.  To succeed on an FMLA interference claim, an employee must prove that his employer interfered with, denied, or restrained his exercise of FMLA rights, and that the interference actually resulted in prejudice or harm. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  Once the employee establishes that she was entitled to the FMLA entitlement, and that entitlement was denied by her employer, then the employer's intent or motivation in denying the right is of no consequence. *Nero*, 167 F.3d at 927.  Furthermore, the employer cannot defend the treatment by arguing that it treated all employees equally.  *Id.*

Villarreal has established a case of interference with her FMLA rights. On numerous occasions, Villarreal advised HR and management of her need to seek FMLA intermittent leave due to doctor's visits for her daughter that is permanently disabled. Villarreal also took FMLA leave as well as FMLA intermittent leave for her own medical conditions. In January 2018, Villarreal took FMLA leave for surgery that was to have taken place in January. She had already requested the leave with medical documentation for December but was asked by her supervisor if she could postpone it until January. Villarreal complied. Villarreal was on FMLA leave from June 25, 2018 until July 9, 2018 with medical documentation. Exhibit B Deposition Exhibit 22. (FMLA Form WH-380-E) Villarreal advised her supervisors that she still was not feeling well and was

under treatment. Her doctor had also indicated in both the FMLA Form (WH-380-E), signed on July 9, 2018 and The Employers to Work Form (HR-72), signed on July 10, 2018: Yes, employee will be incapacitated with an approximate date conditions start date of June 10, 2018 and probable duration of August 10, 2018 (Total of 9 weeks or 45 days). Her doctor also indicated that July 25, 2019 as the *anticipated date that employee will fully recover.* Exhibit B Deposition Exhibit 33 (HR-72 Report of Medical Status/Physician's Release to Return to Work)

While on leave, Villarreal was told to return to work because her FMLA leave had been exhausted and she was no longer protected. Villarreal was confused because there appeared to be miscalculations and/or discrepancies on what hours she had available for FMLA leave. Affidavit of Raquel I. Villarreal with supporting documents paragraphs 3 and 4. Tropical Texas argues that Villarreal did not provide any additional medical information to support her medical condition in July 2018 when she was requesting an accommodation. Tropical Texas did not request any additional information. Tropical Texas failed to inform Villarreal of her right to obtain a recertification for her FMLA leave in July 2018 as required by their own policies SS1-06.27. Bates Stamped Document 00079.

### 2. Retaliation

The Fifth Circuit analyzes FMLA retaliation claims under the *McDonnell Douglas* framework, as there is "no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws." *Hunt v. Rapides Healthcare System,* 277 F.3d 757, 768 (5th Cir. 2001) (citing *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir. 1999)). Villarreal must prove a *prima facie* case of retaliation by proving that (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) the adverse decision was made because she exercised FMLA rights. *Chaffin,* 179 F.3d at 319.; *Mauder*, 446 F.3d at 583 (citing *Hunt v. Rapides Healthcare Sys.,* 277 F.3d 757, 768 (5th Cir. 2001)). To determine the causal

relationship between the employee's termination and her exercise of FMLA rights, the Court may consider the "temporal proximity" between the two events. *Mauder,* 446 F.3d at 583. A retaliatory motive may be inferred if the termination occurs shortly after the exercise of FMLA rights. *Nero*, 167 F.3d at 928.

The burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the termination, which rebuts the presumption of retaliation raised by the *prima facie* case. *Id.* at 319320. If the defendant is able to do so, the burden then shifts back to the plaintiff to prove that the reason stated by the employer was a pretext, and that the actual reason for the termination was the exercise of FMLA rights. *Id.* at 320. At the summary judgment stage, a plaintiff need only raise a genuine issue of material fact with regard to the *prima facie* showing. *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir. 1991).

Villarreal has shown a *prima face* case of retaliation: (1) she was protected under the FMLA, (2) She suffered an adverse employment action, she was terminated, and (3) the adverse decision was made because she attempted to exercise her FMLA rights.

Villarreal returned to work from FMLA leave on July 10, 2018. Immediately she reaches out to her supervisors advising that she needed an accommodation of a reduced work schedule for several days there was no response from Tropical Texas. Villarreal continues to engage in an interactive process with Tropical Texas. Instead what transpires is a flurry of emails between management and HR characterizing Villarreal as a troubled employee, suspecting her of abusing the system but still not responding to her request to discuss an accommodation. In or around July 23 and 24, 2018, management and HR are recommending a separation of employment (termination).

Villarreal again sends a written request to address the accommodation she requested, a reduced week schedule that her immediate supervisor indicated would not be a problem. Villarreal

finally receives a response denying her accommodation. On Friday July 27, 2018 Villarreal finally gets a meeting with management and HR and proposes two flex schedules as an accommodation. They advised her that if they were to offer anyone of the schedules Villarreal had to guarantee she would not miss one day of work for the following 3-4 months. Villarreal could not guarantee that due to her medical condition and her daughter's disability. HR told Villarreal. They "had been more than generous in accommodating her absences".

Villarreal followed up with management and HR to see if they were considering the schedules she proposed. The response was to offer her a position that involved being out of the office and seeing patients in the community that involved a significant amount of driving. A position they knew she could not accept given her mental state, medication and treatment. She advised HR of her medical condition sometime prior to this offer. Her position at the time of her termination involved for the most part driving to and from the office. Later that day, Villarreal received an email that they were proceeding with termination. Affidavit of Raquel I. Villarreal with supporting documentation.

Villarreal has presented summary judgement evidence that her FMLA rights were interfered with and that her employer retaliated against because she attempted to exercise those rights, she has established a *prima face* case of violations of the FMLA.

## PRAYER

Villarreal has established a *prima facie* case. The competent summary judgment evidence in this case establishes a *prima facie* case of unlawful discrimination on the basis of disability, FMLA and retaliation. The competent summary judgment evidence in this case establishes that genuine issues of material fact exist with regards to the Defendant's alleged non-discriminatory reasons. The summary judgment evidence in this case provides ample reason for the jury to suspect and scrutinize the actions of the Defendant Tropical Texas Behavioral Health. On this

record, Villarreal is entitled to take her case to a jury. As such, Villarreal respectfully requests this Court to deny the Defendant's Motion for Summary Judgment in its entirety.

**WHEREFORE, PREMISES CONSIDERED**, Villarreal prays that this Court deny Defendant's Motion for Summary Judgment and for such other and further relief, at law or in equity, general or special, to which she may show herself justly entitled to receive and for which she shall forever pray.

Respectfully submitted,

**THE LAW OFFICES OF**
**CINDY A. GARCIA, P.C.**
1113 Nightingale Avenue
McAllen, Texas 78504
Telephone: (956) 412-7055
Facsimile: (956) 412-7105
E-mail: thegarcialawfirm@gmail.com and
cluna.garcialaw@gmail.com

By: /s/cindy a. garcia
    Cindy A. Garcia
    State Bar No. 07631710
    Federal ID No. 58460

**ATTORNEY FOR PLAINTIFF**
**RAQUEL I. VILLARREAL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>17th</u> day of February 2019, a true and correct copy of Plaintiff Raquel I. Villarreal's First Amended Response in Opposition to Defendant's Motion for Summary Judgment was electronically filed on the CM/ECF system which will automatically serve a Notice of Electronic Filing to the attorney in charge for the Defendant Tropical Health Behavioral Health.

**VIA E-MAIL: rjnavarro@rampage-rgv.com**
Ricardo J. Navarro
**rdrinkard@rampage-rgv.com**
Robert L. Drinkard
**DAYTON NAVARRO ROCHA**
**BERNAL & ZECH**
A Professional Corporation
701 E. Harrison Ste. 100
Harlingen, Texas 78550


/s/ cindy a. garcia
Cindy A. Garcia