UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAQUEL I. VILLARREAL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-00053 |
| | § | |
| TROPICAL TEXAS BEHAVIORAL | § | |
| HEALTH, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Now before the Court is Defendant Tropical Texas Behavioral Health's Rule 12 Motion

to Dismiss for Failure to State a Claim as to Plaintiff's First Amended Complaint. Dkt. No. 16.

Defendant requests that the Court dismiss two of Plaintiff Raquel Villarreal's claims: (1) her

claim of disability discrimination by association under the Americans with Disabilities Act of

1990, as amended ("ADA") and the ADA Amendments Act of 2008 ("ADAAA") and (2) her

claim of interference under the Family and Medical Leave Act ("FMLA"). *Id.* After considering

the Motion and the parties' responsive briefings (Dkt. Nos. 16, 18–19), the Court is of the

opinion that the Motion should be granted in part and denied in part as described herein.

## I.    Factual and Procedural Background[1]

Plaintiff filed suit in this Court on February 13, 2019, alleging that Defendant, Plaintiff's

past employer, violated the ADA/ADAAA and FMLA. Dkt. No. 1.[2] Plaintiff suffers from "a

---

[1] As this Order concerns a motion to dismiss under Federal Rule of Civil Procedure 12(b), the facts presented herein are as alleged by Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")

[2] Plaintiff additionally alleged that Defendant violated Title VII of the Civil Rights Act of 1964; however, she abandoned this claim when she amended her pleading on May 10, 2019. *Compare* Dkt. No.1, *with* Dkt. No. 15. The

mental disability of depression" and is the single parent to a minor child with multiple disabilities. Dkt. No. 15 at ¶¶ 7–8. Plaintiff began working for Defendant as a "Program Specialist/Licensed Professional Healing Arts ("LPHA")," around April 2016. *Id.* at ¶ 6. Plaintiff has taken FMLA leave in the past, in 2017 and 2018, to take time off to care for her minor child as well as to care for herself. *Id.* at ¶¶ 10–11, 13. Plaintiff's most recent FMLA leave began around June 2018 and ended on July 12, 2018, when Plaintiff was "notified by [Defendant] that she no longer had FMLA leave and was going to be left with unprotected leave." *Id.* at ¶ 13. On the day that she returned to work, July 12, 2018, Plaintiff "expressed that . . . she needed to reduce her work hours and have a flex schedule so that she could care for her daughter's disabilities/serious medical conditions as well as her own." *Id.* at ¶ 14. Following an initial denial and a request for reconsideration, Plaintiff's "request for accommodation," a flexible schedule and reduced work hours, was ultimately denied. Dkt. No. 15 at ¶¶ 14–16.

In July 2018, Plaintiff met with Defendant's director of human resources three times, and in at least two of those meetings the director "commented that Plaintiff's absences were a concern." *Id.* at ¶¶ 18–20. Following the final meeting, on July 31, 2018, where the human resources director "made [Plaintiff] an unreasonable offer for an LPHA position that [the director] knew Plaintiff could not do," Plaintiff asked if she could file a complaint as she felt Defendant was discriminating against her. *Id.* at ¶ 20. The human resources director stated that "Plaintiff 'did not have any other options.'" *Id.* Plaintiff then left work, with her immediate supervisor's approval, "[b]ecause of her anxiety and mental state" as well as because she had to attend a medical appointment. *Id.* Later that same day, on July 31, 2018, Plaintiff was terminated from her job via email. Dkt. No. 15 at ¶ 21.

Plaintiff alleges, "[Defendant] had no legitimate business justification for Plaintiff's

---

Court hereinafter only refers to the live pleading, Plaintiff's Amended Complaint (Dkt. No. 15).

termination. In fact, [Defendant] fired Plaintiff for her disabilities/serious medical conditions, her request for accommodation and FMLA leave, and her discrimination complaints and desire to file a grievance." *Id.* at ¶ 22. Plaintiff represents that she filed a complaint with the Equal Employment Opportunity Commission on November 1, 2018, and received a Dismissal and Notice of Rights letter on November 20, 2018. *Id.* at ¶¶ 4–5; Dkt. No. 1, Ex. A (Dismissal and Notice of Rights indicating that it was mailed on November 15, 2018). Plaintiff filed this action on February 13, 2019. *See* Dkt. No. 1.

In her Amended Complaint (Dkt. No. 15), Plaintiff alleges multiple causes of action against Defendant, namely: (1) disability discrimination under the ADA/ADAAA, alleging that Plaintiff was terminated at least in part due to her own disability; (2) disability discrimination by association under the ADA/ADAAA, alleging that Defendant "discriminated against Plaintiff because of her need to be the caregiver of her minor child's disabilities"; (3) FMLA interference; and (4) FMLA retaliation. Dkt. No. 15 at ¶¶ 23–57. Defendant now moves for the Court to dismiss Plaintiff's disability discrimination by association claim and her FMLA interference claim, contending that, with respect to those two claims, Plaintiff has failed to state a claim upon which relief can be granted. Dkt. No. 16 at ¶¶ 6–15. The Court will examine each of these two causes of action in turn.

## II.     Rule 12(b)(6) Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). "Thus, claims may be dismissed under Rule

12(b)(6) 'on the basis of a dispositive issue of law,'" and also "if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Inclusive Communities Project, Inc. v. Lincoln Property Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678), *petition for cert. filed*, (U.S. Oct. 17, 2019) (No. 19-497). This plausibility standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[3] "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

III. **Analysis**

Defendant contends that Plaintiff has failed to adequately plead: (1) her disability

---

[3] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir.2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

discrimination by association claim under the ADA/ADAAA; and (2) her FMLA interference claim. Dkt. No. 16 at ¶¶ 6–15. The Court will examine each alleged cause of action in turn.

### a. Disability Discrimination by Association[4] Claim under the ADA/ADAAA

Defendant attacks Plaintiff's allegations regarding this cause of action in two ways: first, it argues that no such cause of action exists; second, it contends that, even if such a cause of action exists, Plaintiff has failed to factually plead a claim upon which relief can be granted. Dkt. No. 16 at ¶¶ 6–13. Plaintiff responds by asserting that a cause of action for associational discrimination exists. Dkt. No. 18 at 2–3. Plaintiff does not address Defendant's second argument but rather contends that Defendant "confus[es] the motion to dismiss standard with the motion for summary judgment standard." *Id.* at 2. The Court begins by examining whether this alleged cause of action exists under the ADA/ADAAA.

### i. Whether a Disability Discrimination by Association Cause of Action Exists Under the ADA/ADAAA

Defendant contends that "the ADA does not explicitly call for a disability by association discrimination claim," yet does not address the plain text of the ADA and its implementing regulations. *See* Dkt. No. 16 at ¶ 8. In contrast with Defendant's contention, the statute and its implementing regulations explicitly prohibit associational discrimination. *See* 42 U.S.C. § 12112(a)–(b); 29 C.F.R. § 1630.8.

The discrimination provision of the ADA states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against a qualified individual on the basis of disability," as used in section

---

[4] The Court uses the terms "associational discrimination," "disability discrimination by association," and "disability by association discrimination" interchangeably to refer to the cause of action at issue here.

12112(a), includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *Id.* at (b)(4). The Regulations to Implement the Equal Employment Provisions of the ADA expound upon this prohibition by stating, "It is unlawful for a covered entity to exclude or deny equal jobs or benefits to, or otherwise discriminate against, a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a family, business, social, or other relationship or association." 29 C.F.R. § 1630.8 (Relationship or association with an individual with a disability).

Rather than address the plain text of the relevant statute, Defendant primarily argues that "neither the U.S. Supreme Court nor [the] 5th Circuit have affirmatively acknowledged such a claim validly exists . . . ." Dkt. No. 16 at ¶ 8. In response, Plaintiff contends that the Fifth Circuit has acknowledged that this cause of action *may* exist. Dkt. No. 18 at 3. Both parties cite *Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 Fed. Appx. 376 (5th Cir. 2013) (per curiam) (unpublished) in support of their arguments. Dkt. No. 16 at ¶ 8; Dkt. No. 18 at 2–3.

Defendant correctly notes that the Fifth Circuit has not explicitly recognized a cause of action for disability by association discrimination under the ADA. Dkt. No. 16 at ¶ 8. The Fifth Circuit has yet to decide the issue of whether such a claim exists. *See Spencer v. FEI Inc.*, 725 Fed. Appx. 263, 267 (5th Cir. 2018) (per curiam) (unpublished) (noting the "unsettled viability of associational discrimination claims" in the Fifth Circuit). In *Grimes*, the court acknowledges as much when it states:

> The Fifth Circuit has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor have we described what such a claim requires. This Court referenced an associational discrimination claim based on disability in an unpublished opinion. *Carter v. Ridge*, 255 Fed. Appx.

826, 833 (5th Cir. 2007) (per curiam) (unpublished). However, that opinion affirmed dismissal of the associational discrimination claim on exhaustion grounds. *Id.* Likewise, judgment as a matter of law was affirmed in *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996), without explaining what an associational discrimination claim entails. 87 F.3d at 760–61. In *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 588–89 (5th Cir. 1998), *partially vacated on other grounds sub nom.*, *Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999) (en banc) (per curiam), the Court recognized an associational discrimination claim based on an interracial relationship, but the Court did not elucidate the elements required to make a prima facie showing.

District courts within this Circuit have, however, recognized a cause of action for associational discrimination. *See, e.g.*, *Spinks v. Trugreen Landcare, LLC*, 322 F.Supp.2d 784, 796 (S.D. Tex. 2004); *Moresi v. AMR Corp.*, No. CA 3:98–CV–1518–R, 1999 WL 680210, at *2–*3 (N.D. Tex. Aug. 31, 1999). . . . [T]his opinion should not be construed as recognizing a cause of action for associational discrimination based on disability since, even assuming such a cause exists, [Plaintiff] cannot meet the burden that such a claim would entail.

*Grimes*, 505 Fed. Appx. at 380 n.1.

While the Fifth Circuit has not explicitly recognized a cause of action for associational discrimination, it has repeatedly identified what a plaintiff would have to show to prove a prima facie case of associational discrimination, and, assuming but not deciding that the cause of action exists, found that the plaintiff failed to carry its burden on summary judgment. *See, e.g.*, *Spencer*, 725 Fed. Appx. at 267–68; *Grimes*, 505 Fed. Appx. at 380–383. Additionally, a number of other federal circuit courts explicitly recognize an associational discrimination cause of action under the ADA. *See Equal Emp't Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1318–20 (11th Cir. 2019); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 431–32 (2d Cir. 2016); *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002–04 (8th Cir. 2012); *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336–39 (7th Cir. 2012); *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486–89 (6th Cir. 2011); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509–11 (3d Cir. 2009); *Oliveras-Sifre v. P.R. Dep't of Health*, 214 F.3d 23, 26–27 (1st Cir. 2000); *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1081–85 (10th Cir. 1997); *Tyndall v. Nat'l*

*Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212–15 (4th Cir. 1994).

Furthermore, Defendant acknowledges that "some [district] [c]ourts have allowed and held that the ADA prohibits discrimination against an individual who is known to associate with a disabled individual." Dkt. No. 16 at ¶ 7 (citing *Haire v. BIOS Corp.*, No. 08–CV–336–TCK–FHM, 2009 WL 484207, at *2 (N.D. Okla. Feb. 26, 2009) (citing 42 U.S.C. § 12112(b)(4)); *Spinks v. Trugreen Landcare, LLC*, 322 F. Supp. 2d 784, 795 (S.D. Tex. 2004) (quoting *Rogers v. Int'l Marine Terminals*, 87 F.3d 755, 760 (5th Cir. 1996)); *Moresi v. AMR Corp.*, No. CA 3:98–CV–1518–R, 1999 WL 680210, at *2–*3 (N.D. Tex. Aug. 31, 1999). This Court has also recognized a claim for associational discrimination under the ADA in the past. *See Ruiz v. Edcouch-Elsa Independent School District*, No. 7:13–CV–443, 2014 WL 1385877, at *1–2 (S.D. Tex. Apr. 9, 2014) (Crane, J., presiding).

Therefore, based on the plain text of the ADA, its implementing regulations, and the above-cited case law both within and outside of the Fifth Circuit, the Court continues to find that a disability discrimination by association claim exists under the ADA.

### ii. Whether Plaintiff States a Disability Discrimination by Association Claim Upon Which Relief Can be Granted

Having found that an associational discrimination cause of action exists under the ADA, the Court now turns to whether Plaintiff has adequately pled an associational discrimination claim. While the Fifth Circuit has not explicitly recognized this cause of action, it has repeatedly outlined what a plaintiff must show in order to establish a prima facie case of associational discrimination, should such a cause of action exist. *See, e.g., Grimes*, 505 Fed. Appx. at 380. To make a prima facie case of associational discrimination, the plaintiff would have to show: "(1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under

8 / 17

circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action." *Id.*

Defendant contends that Plaintiff's alleged case is "not the type of discrimination by association contemplated by the [c]ourts that have even recognized this cause of action" as employers are not required to provide reasonable accommodations to an employee on account of the employee's disabled relatives or associates. Dkt. No. 16 at ¶ 10. Plaintiff did not respond to this argument. *See* Dkt. No. 18 at 2–3.

Defendant is correct when it represents that the ADA does not require an employer to accommodate an employee on account of a disabled associate. *See* Dkt. No. 16 at ¶ 10. The ADA states:

> [T]he term "discriminate against a qualified individual on the basis of disability" includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability *who is an applicant or employee* . . . or denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. §§ 12112(b)(5)(A)–(B) (emphasis added). These two provisions are the only part of the discrimination section that requires an employer to make reasonable accommodations. *See* 42 U.S.C. § 12112 (Discrimination). These provisions explicitly state that the employer must reasonably accommodate the disabled employee or applicant and do not require the accommodation of any disabled associate. *Id.* at (b)(5)(A)–(B).

Furthermore, the regulations implementing the equal employment provisions of the ADA similarly require employers to make reasonable accommodations for applicants or employees with a disability. 29 C.F.R. § 1630.9(a).[5] The Appendix to these implementing regulations also

---

[5] The regulation states, "It is unlawful for a covered entity not to make reasonable accommodation to the known

addresses this issue, stating:

> It should be noted, however, that an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities. Thus, for example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability.

29 C.F.R. Pt. 1630, App. at 349 (1996) (citing S. Rep. No. 101-116 at 30 (1989); H.R. Rep. No. 101-485, pt. 2, at 61–62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343–44; H.R. Rep. No. 101-485, pt. 3, at 38–39 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 461).

While the Fifth Circuit has not addressed the question of whether an employer is required to provide reasonable accommodation to an employee on account of his or her relationship to a disabled associate under the ADA, a number of other circuits have confronted this issue and found in accordance with the plain text of the ADA and the regulations implementing that text. *See, e.g., Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009) ("Under the association provision [of the ADA], there is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative."); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 214 (4th Cir. 1994) (finding that the plaintiff's absences were caused not by her own disability but "by [the plaintiff's] personal need to tend to her son's disability, which an employer is not obligated to accommodate through scheduling modifications").[6] At least one district court within the Fifth Circuit has reached the same conclusion. *See Darby v. Hinds Cnty. Dep't of Human Servs.*, 83 F.

---

physical or mental limitations of an otherwise qualified *applicant or employee* with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a) (emphasis added).

[6] *See also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432–33 (2d Cir. 2016); *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 334 (7th Cir. 2012) ("As correctly observed by the district court, [the plaintiff's] true complaint is that [the employer], by mandating [the plaintiff] work weekends, failed to accommodate her need to care for her disabled daughter. But unfortunately for [the plaintiff], the ADA does not require employers to reasonably accommodate employees who do not themselves have a disability."); *Stansberry v. Air. Wis. Airlines Corp.*, 651 F.3d 482, 489 (6th Cir. 2011).

Supp. 2d 754, 761 (S.D. Miss. 1999) ("[T]he regulations interpreting the ADA make it clear that the [employer] was not obligated to accommodate [the plaintiff] to allow her to care for her allegedly disabled family members.").

A district court in Louisiana highlighted this aspect of the law when addressing an associational discrimination claim in which the plaintiff alleged that he was terminated based on his employer's unfounded assumption that he would miss work more frequently because of his relationship to disabled individuals. *Murray v. Neff Rental, Inc.*, No. 08–0471, 2009 WL 3172831, at *1–2 (W.D. La. Sept. 29, 2009). The court examined whether the plaintiff stated an associational discrimination claim upon which relief could be granted. *Id.* at *5–6. The district court held that the plaintiff adequately pled his associational discrimination claim, noting that the "plaintiff [did] not allege *he was having to miss work more frequently . . . .* Rather, [the] plaintiff allege[d] that he was fired because [his employer] ***believed*** *that he* ***would*** *have to miss work to care for a disabled person, not that he was actually missing work.*" *Id.* at *5–6 (emphasis in original). Thus, while an employer is not required to reasonably accommodate an employee's need to miss work in order to care for a disabled associate, the employer cannot act based on an unfounded assumption that an employee will need to miss work because of his or her relationship to a disabled individual. *See id.*

Here, Plaintiff does not allege that she was fired based on any unfounded assumption made by Defendant; rather, she represents that she repeatedly stated that she would need reduced work hours and a flexible schedule in order to care for herself and her disabled daughter and that after Plaintiff's request for this accommodation was denied, she was fired. *See* Dkt. No. 15 at ¶¶ 14–22, 28–30. In her Amended Complaint, Plaintiff alleges that "during her last year of employment [with Defendant], Plaintiff was pressured by constant reminders/comments from

supervisors that she was missing too much work and was not accumulating paid-time off ("PTO")" and that she was told that this "could be reason for disciplinary action or termination." *Id.* at ¶ 9. Plaintiff represents that she took leave pursuant to the FMLA in order to care for her daughter in July of 2017. *Id.* at ¶ 10. Plaintiff states that she also took FMLA leave to care for her own medical needs. *Id.* at ¶¶ 11 ("Plaintiff provided [Defendant] with . . . proper FMLA documentation")[7], 13. After taking FMLA leave around June 2018 to care for her depression, "Plaintiff returned to work on July 12, 2018 because she was notified by [Defendant] that she no longer had FMLA and was going to be left with unprotected leave." *Id.* at ¶ 13.

Upon her return to work, Plaintiff began requesting reduced work hours and a flexible work schedule in order to accommodate her own medical needs and those of her daughter. Dkt. No. 15 at ¶¶ 14, 15 (characterizing this request as a "request for accommodation"), 16 (same), 17–20. In her first meeting with the director of human resources, on July 25, 2018, the director "commented that Plaintiff's absences were a concern" and that she was "missing too much work." *Id.* at ¶ 18. In this meeting, Plaintiff again mentioned her request for reduced work hours and a flexible schedule. *Id.* In the following meeting with the director of human resources, and other supervisors, Plaintiff proposed a work schedule that would allow her to care for herself and her daughter. *Id.* at ¶ 19. Plaintiff alleges Defendant dismissed the request, attributing the dismissal to Defendant's alleged desire to "demote or get rid of [Plaintiff] because of her and her child's disabilities/serious medical conditions." *Id.* In Plaintiff's final meeting with the director of human resources, on July 31, 2018, the director again noted that "Plaintiff's absences were a problem." Dkt. No. 15 at ¶ 20. In that same meeting, Plaintiff again explained her request to

---

[7] Plaintiff does not explicitly state that she took leave pursuant to the FMLA in this paragraph. She simply alleges that she submitted proper FMLA documentation to Defendant. Dkt. No. 15 at ¶ 11. Regardless, later, Plaintiff clearly alleges she took FMLA leave to care for herself in 2018. *Id.* at ¶ 13.

In addition to her FMLA leave, Plaintiff notes that she missed approximately four days of work around April 2018 after her daughter received difficult medical news. *Id.* at ¶ 12.

work reduced hours. *Id.* Plaintiff was terminated later that day. *Id.* at ¶ 21.

Running throughout Plaintiff's factual allegations is her repeated request that Defendant allow her to work reduced hours and have a flexible schedule so that she could care for her disabled daughter as well as herself. *See id.* at ¶¶ 14–20. Unlike the plaintiff in *Murray*, who alleged that he was fired due to his employer's unfounded assumption that he would have to miss work frequently due to his disabled relatives, Plaintiff does not allege that Defendant terminated her based on an unfounded belief that she would have to miss work to care for her daughter or based on any other assumption. *Id.* at ¶¶ 14–20; *see Murray*, No. 08-0471, 2009 WL 3172831, at *5. Rather, Plaintiff alleges that she was terminated due to Defendant's unwillingness to provide an allegedly reasonable accommodation, reduced work hours and a flexible schedule. *See* Dkt. No. 15 at ¶¶ 14–20. Plaintiff alleges that she repeatedly notified Defendant that she would need reduced work hours and a flexible schedule in order to care for herself and her disabled daughter and that, ultimately, Defendant refused to provide this accommodation and fired her.[8] *Id.* at ¶¶ 14–21. As Defendant was not required to accommodate Plaintiff's need to care for her disabled daughter, its refusal to do so is not actionable under the ADA. *See* 42 U.S.C. §§ 12112(b)(5)(A)–(B); *see, e.g.*, *Tyndall*, 31 F.3d at 214.

Therefore, accepting all of Plaintiff's allegations as true,[9] Plaintiff fails to state a claim

---

[8] When purporting to allege a claim under the associational discrimination provision of the ADA, Plaintiff states "Defendant . . . discriminated against Plaintiff because of her need to be the caregiver of her minor child's disabilities, despite the fact that similarly-situated employees were able to work a flexible shift and less hours like Plaintiff requested. This associational discrimination by Defendant ultimately led to Plaintiff's termination." Dkt. No. 15 at ¶ 29. This statement explicitly ties Defendant's alleged discrimination against Plaintiff to its denial of her request for accommodation, and, therefore, does not support an associational discrimination claim under the ADA, as Defendant was not required to accommodate Plaintiff's need to care for her disabled daughter. *See* 42 U.S.C. §§ 12112(b)(5)(A)–(B); *see, e.g.*, *Tyndall*, 31 F.3d at 214. Additionally, the statement is a legal conclusion resting on Plaintiff's prior allegations. *See Twombly*, 550 U.S. at 564 (disregarding the "few stray statements" that there spoke directly of an agreement between the defendants as they were "merely legal conclusions resting on prior allegations"). Therefore, the allegation does not state an associational discrimination claim under the ADA.

[9] The Court notes that it accepts Plaintiff's allegations as true only for the purposes of ruling upon Defendant's Motion (Dkt. No. 16). *See Iqbal*, 556 U.S. at 678 (citation omitted) (internal quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

for associational discrimination upon which relief can be granted. Accordingly, the Court finds that Plaintiff's claim for disability by association discrimination should be dismissed.

### b. Interference under the FMLA

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for an enumerated list of reasons. 29 U.S.C. § 2612(a)(1). The act further states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," which includes section 2612. 29 U.S.C. § 2615(a)(1). When making a prima facie case of interference under the FMLA, a plaintiff must show: "(1) [she] was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [she] was entitled to leave; (4) [she] gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [she] was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Defendant contends that Plaintiff has failed to plead any facts in support of her claim. Dkt. No. 16 at ¶ 15. Plaintiff argues that she properly pled her claim as she alleged "she was eligible for FMLA leave, [] Defendant was subject to the FMLA, [] she intended to use FMLA leave, and [] she was prejudiced and denied FMLA leave."[10] Dkt. No. 18 at 4.

Contrary to Plaintiff's assertions, she did not plead that she intended to use and was subsequently denied FMLA leave.[11] *See* Dkt. No. 18 at 4 (citing Dkt. No. 15 at ¶¶ 13–20, 31–

---

is plausible on its face.")

[10] In making her argument that she has adequately pled a FMLA interference claim, Plaintiff states that "a court errs by requiring a plaintiff to plead something more than the ultimate elements of a claim." Dkt. No. 18 at 4 (citing *Cicalese v. Univ. of Tex. Med. Branch*, No. 18-40408, 2019 WL 2127562, at *3 (5th Cir. May 16, 2019) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016))). The Court notes that it does not require Plaintiff to prove a prima facie case of either cause of action at issue here. Rather, it enumerates the prima facie case to guide its analysis of whether Plaintiff has pled allegations that, when taken as true, state a claim upon which relief can be granted.

[11] Plaintiff alleges that she took FMLA leave around July 2017 and June 2018 and that she provided to Defendant

43). In paragraph 13 of her Amended Complaint, Plaintiff states that she took leave pursuant to the FMLA in June 2018 and "returned to work on July 12, 2018 because she was notified by [Defendant] that she no longer had FMLA and was going to be left with unprotected leave." Dkt. No. 15 at ¶ 13. Plaintiff does not allege that Defendant's representation that Plaintiff had used all of her FMLA leave was incorrect or that she contested Defendant's representation in any way. *See id.* Plaintiff alleges that, upon returning to work, she requested to work reduced hours and have a flexible schedule, but she does not allege that she requested to take additional FMLA leave. *See id.* at ¶ 14 ("Plaintiff expressed that due to her disability that resulted in the recent serious medical condition, she needed to reduce her work hours and have a flex schedule . . . ."). While this request for reduced hours and a flexible schedule was denied, Plaintiff does not allege that any request for FMLA leave was denied or that she made any request for such leave. *See id.* at ¶¶ 13–20.

When making her argument that she pled that she sought and was denied FMLA leave, Plaintiff points to the section of her Amended Complaint in which she purports to allege a claim of FMLA interference. Dkt. No. 18 at 4 (citing Dkt. No. 15 at ¶¶ 13–20, 31–43). Here, Plaintiff alleges, "Defendant discriminated against and interfered with and restrained Plaintiff's exercise, attempt to exercise, and her right to FMLA benefits by denying Plaintiff's request for leave to care for her serious medical conditions and her child's serious medical conditions." Dkt. No. 15 at ¶ 34. However, as noted above, Plaintiff does not identify an instance in which she was denied benefits under the FMLA. *See id.* at ¶¶ 6–22. As Plaintiff's allegation in paragraph 34 is a legal conclusion purporting to rest on prior allegations, and the prior allegations do not support the legal conclusion, this conclusory allegation by Plaintiff is legally insufficient to support a claim

---

documentation for FMLA leave in January 2018. Dkt. No. 15 at ¶¶ 10, 11 ("Plaintiff provided [Defendant] with . . . proper FMLA documentation"), 13. Plaintiff does not identify an instance in which she was denied benefits under the FMLA. *See* Dkt. No. 15 at ¶¶ 6–22.

for FMLA interference.[12] *See Twombly*, 550 U.S. at 564 (disregarding the "few stray statements" that there spoke directly of an agreement between the defendants as they were "merely legal conclusions resting on prior allegations"). Therefore, Plaintiff fails to state a claim for FMLA interference upon which relief can be granted.

While Plaintiff fails to adequately plead a claim for FMLA interference, Plaintiff's arguments in response to Defendant's Motion indicate that she thought she pled that she intended to use FMLA benefits and was denied those benefits. Dkt. No. 18 at 4 (stating that "Plaintiff [pled] that she . . intended to use FMLA leave . . . and was prejudiced and denied FMLA leave"). Plaintiff does not indicate, in her Amended Complaint, that she intended to use or requested benefits under the FMLA and was denied FMLA benefits. However, in light of Plaintiff's representation in her response to Defendant's Motion (Dkt. No. 18), which may indicate that she can, in fact, plead that she intended to use FMLA benefits, gave Defendant notice of this intent, and was denied those benefits to which she was entitled, the Court finds that justice is better served by allowing Plaintiff an opportunity to replead rather than dismissing her claim outright. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *see also Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312, 316–17 (5th Cir. 2012) (per curiam) (unpublished) (discussing the requirement that a plaintiff must give her employer proper notice of her intent to take FMLA leave).

Therefore, while Plaintiff fails to state a claim for FMLA interference upon which relief can be granted, the Court grants Plaintiff leave to amend her pleading with respect to this claim only.

---

[12] Similarly, Plaintiff's allegation that "[Defendant] fired Plaintiff for her disabilities/serious medical conditions, her request for accommodation and FMLA leave, and her discrimination complaints and desire to file a grievance" is also a legal conclusion. *See* Dkt. No. 15 at ¶ 22. As Plaintiff does not allege that she was ever denied a benefit under the FMLA, her factual allegations do not support this legal conclusion. Thus, this allegation is legally insufficient to support a claim for FMLA interference. *See Twombly*, 550 U.S. at 564.

## IV.    Conclusion

Accordingly, the Court hereby **ORDERS**:

Defendant's Motion to Dismiss (Dkt. No. 16) is **GRANTED** insofar as it seeks dismissal of Plaintiff's claim of disability discrimination by association under the ADA, and such claim is **DISMISSED** with prejudice;

The Motion is **DENIED** to the extent it seeks dismissal of Plaintiff's FMLA interference claim, and Plaintiff is granted leave to amend her pleading, **within 21 days** of the date of this Order, to attempt to cure the deficiencies in her allegations of interference under the FMLA.[13]

SO ORDERED this 14th day of April, 2020, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[13] In order to cure the present deficiencies, Plaintiff would need to additionally identify: 1) when she intended to seek leave under the FMLA, 2) the legally sufficient notice she provided to Defendant that she so intended, 3) her entitlement to the benefit sought, and 4) Defendant's denial of said benefit. *See Caldwell*, 850 F.3d at 245; *Lanier*, 527 Fed. Appx. at 316–17.