IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAQUEL I. VILLARREAL, § | | |
|    *Plaintiff*, § | | |
| § | CIVIL ACTION NO. 7:19-cv-00053 | |
| § | | |
| VS. § | | |
| § | | |
| TROPICAL TEXAS BEHAVIORAL § | | |
| HEALTH, § | | |
|    *Defendant* § | (JURY REQUESTED) | |

**PLAINTIFF RAQUEL I. VILLARREAL'S SECOND AMENDED COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT:**

     **COMES NOW, RAQUEL I. VILLARREAL** (hereinafter referred to as Plaintiff), pursuant to Rule 15(a)(1)(B), and files this her Second Amended Complaint against **TROPICAL TEXAS BEHAVIORAL HEALTH** (hereinafter referred to as the "Defendant", the "Defendant employer", or "Tropical Texas") and for such causes of action would respectfully show unto the Court and the Jury as follows:

**I.**
**Parties**

     1.    Plaintiff, RAQUEL I. VILLARREAL, is an individual residing in McAllen, Hidalgo County, Texas.

     2.    Defendant TROPICAL TEXAS BEHAVIORAL HEALTH is a company authorized to conduct business in the State of Texas and has made an appearance and is already before this Court for all intents and purposes.

## II.
## Venue and Jurisdiction

3. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

## III.
## Administrative Procedures

4. Within 300 days of the occurrence of the acts complained of, Plaintiff filed her initial complaint with the Equal Employment Opportunity Commission alleging that the Defendant had committed unlawful employment practices against the Plaintiff. The formal charge and the "Dismissal and Notice of the "Right to File Civil Action Letter" were filed and received as follows:

| | |
|---|---|
| Formal Complaint Filed: | November 1, 2018 |
| Notice of Right to File A | |
| Civil Action Letter Received: | November 20, 2018 |

5. On November 20, 2018, Plaintiff received from the United States Equal Employment Opportunity Commission, Plaintiff's Dismissal and Notice of Rights letter allowing the Plaintiff to file this lawsuit within ninety days of its receipt. Plaintiff's statutory claims were filed within ninety days of its receipt. Plaintiff further invokes the relation back theory as well as any and all equitable doctrines necessary to satisfy the administrative requirements set forth by law. All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

## IV.
## Factual Background

6. On or about April 2016, Villarreal began working at Tropical Texas as a Program Specialist/Licensed Professional Healing Arts ("LPHA"). During her time of employment with Tropical Texas, Villarreal was qualified for her position and performed all her duties with dedication, hard work and undivided loyalty.

7. Villarreal is a single-parent to a 13-year-old daughter with multiple disabilities and serious medical conditions who requires care for all of her daily living activities. Villarreal's daughter has numerous medical specialists and has an average of 2-3 doctor's appointments a month. Villarreal's ex-husband (minor child's father) gave up custodial rights in May 2017 and his rights to make any decisions about their daughter's education or medical care. He also chose not to meet his obligation to take their child to her doctor's appointments. Therefore, Villarreal is solely responsible for taking her daughter to her monthly doctor's appointments.

8. Villarreal has depression, a disability that substantially limits more than one major life activity and bodily function, including concentration, thinking and sleeping. Regardless of these substantial limitations, Villarreal exceptionally performed her job duties at Tropical Texas.

9. During Villarreal's last year of employment at Tropical Texas, she was repeatedly pressured by supervisors that she was missing too much work and was not accumulating paid-time off ("PTO"). Villarreal was told by supervisors that Tropical Texas "frowned upon" employees who did not have accumulated PTO and that it could be reason for disciplinary action or termination.

10. In July 2017, Villarreal obtained intermittent leave pursuant to the Family Medical Leave Act of 1993 ("FMLA") through pediatrician, Dr. A. Mercado, to protect her job when requesting time off to meet her daughter's medical needs. Villarreal also developed her own serious medical conditions. In December 2017 her gynecologist, Dr. A Tey, diagnosed her with a serious medical condition requiring surgery. When Villarreal spoke to her supervisor about her request for time off to have surgery, he asked if Villarreal could postpone the surgery because the department was short on staff, and they needed her to be at work. Villarreal consulted with her doctor, and the surgery was postponed until January 2018.

11. On January 4, 2018, Villarreal's serious medical condition worsened. Villarreal's

doctor provided a medical excuse, and her surgery was scheduled for January 10, 2018. Villarreal provided Tropical Texas with a doctor's note and proper FMLA documentation.

12. On March 9, 2018, Villarreal's daughter had a scheduled MRI in San Antonio, Texas for her heart and brain, which was ordered by her daughter's cardiologist, Dr. Brennan. In April 2018, the doctor provided results of the MRI, stating that Villarreal's daughter required another open-heart surgery, or her daughter would face a prognosis of congestive heart failure. However, the doctor informed Villarreal there was a risk her daughter could die from surgery due to her daughter's multiple serious medical conditions. This news caused severe mental/emotional distress to Villarreal, and she was out of work for approximately four days.

13. In May 2018, Villarreal's depression worsened, and she developed more serious medical conditions. In June 2018, Villarreal had an extreme depressive episode, which was diagnosed as severe depression. Villarreal had to be out of work. Villarreal's family doctor, Jessica Porras, PA, treated her and prescribed medication for her disability and severe medical condition. Porras also referred Villarreal to counseling services. Villarreal obtained proper FMLA documents and provided them to Tropical Texas's Human Resources ("HR") department. Villarreal returned to work on July 12, 2018 because she was notified by Tropical Texas that she exhausted her FMLA leave. It appears however that Villarreal's FMLA leave may have been miscalculated by Tropical Texas and that she may not have exhausted her FMLA leave.

14. On July 12, 2018, Villarreal returned to work and spoke with her acting supervisor, Alejandro Pacheco (assigned while her immediate supervisor, Josue Gutierrez, was on vacation). Villarreal expressed that since her disability resulted in the recent serious medical condition, she needed to reduce her work hours and have a flex schedule so that she could care for her daughter's disabilities/serious medical conditions as well as her own. Mr. Pacheco stated that he did not anticipate any problems with Villarreal's request, and he was glad she was back at work to assist

with the diagnosis of incoming patients. The acting supervisor said he would be contacting a manager at Tropical Texas, Brando Mireles, by email to inform him and reply to Villarreal. Villarreal then received an email from Mireles stating that her request was not approved.

15.  Villarreal submitted a written request for reconsideration on July 16, 2018 and pled again for a reasonable accommodation to reduce her schedule and provided a more detailed explanation of her and her daughter's recent and most current medical conditions and needs. Villarreal emailed this letter to Gutierrez, her immediate supervisor, and Mireles. Mireles replied that the written request was sent to HR.

16.  On July 23, 2018, Villarreal emailed Mireles to follow up on her request for an accommodation. Mireles replied that Tropical Texas's decision not to approve Villarreal's accommodation request would stand.

17.  On July 24, 2018, Villarreal emailed Mireles asking if he could provide her with the name of the administrator who reviewed her request. Mireles replied and redirected Villarreal to Odilia Arredondo, Tropical Texas' HR Director. Mireles then sent an email to several of Tropical Texas' administrators, including Arredondo, suggesting mutual separation as a response to Villarreal's requests. Arredondo responded that termination would be the only option.

18.  On that same day, Villarreal received a call from Angel Quinones, HR staff, telling her that Arredondo wanted to meet with her and that she needed to set up an appointment to meet with Arredondo. Villarreal contacted Arredondo and scheduled a meeting on July 25, 2018, at 2:30 P.M.

19.  On July 25, 2018, Villarreal met with Arredondo in her office. Arredondo commented that Villarreal's absences were a concern. Villarreal explained that both she and her daughter had serious medical conditions and disabilities. Arredondo responded by stating Tropical Texas "had been more than generous" in providing Villarreal with time off and that it was now

affecting the department's needs.

20. In this same meeting, Arredondo also commended Villarreal and told her she was an excellent clinician, and they had no complaints of the quality of her work. However, Arredondo then made the comment that Villarreal "was missing too much work." Villarreal told Arredondo that she felt like she was being discriminated against because of her need to take FMLA leave for her and her daughter's health conditions/disabilities. As a means of demoting Villarreal (and not engaging in the interactive process of providing accommodations to Villarreal), Arredondo asked her if she would consider moving to another position. Villarreal expressed that because she was qualified for her current job, this suggestion by HR was not a solution or reasonable accommodation. In this same meeting with HR, Villarreal mentioned that she had been denied her accommodation request for reduced work hours and flex her work schedule. Villarreal advised Arredondo that on July 12, she was told adjusting her schedule was not anticipated by Tropical Texas to cause any concern (i.e. undue burden on the company). Mireles was not available to meet on that date, but when she mentioned that Villarreal had talked to Alejandro Pacheco, Mireles discredited Pacheco stating that Pacheco's opinion did not matter. A follow up appointment was scheduled for July 27, 2018.

21. On July 27, 2018, at 8:00 a.m., a meeting was held with Josue Gutierrez, Brando Mireles, Odilia Arredondo, and Villarreal. Tropical Texas represented to Villarreal that she exhausted all her FMLA leave and offered Villarreal a demotion with the condition that she could not be absent from work (including absences for her and her daughter's care) for the next three to four months. Villarreal expressed to everyone at the meeting how this was more of a punishment rather than discussing a resolution (*i.e.* engage in the interactive process of Tropical Texas providing accommodations). Villarreal explained how other similarly situated LPHAs were being allowed to flex their schedule. In an attempt to engage in the interactive process, despite Tropical

Texas's lack of engagement, Villarreal proposed a working schedule that conformed to the recent announcement that Tropical Texas would be changing the center's hours of operation on Tuesday and Thursdays from 8:00 a.m. to 7:00 p.m. and every second Saturday from 8:00 a.m. to 12:00 p.m. Tropical Texas dismissed this reasonable request, since they intended to either demote or get rid of her because of her and her child's disabilities/serious medical conditions and use of FMLA. Arredondo then scheduled a follow-up meeting with Villarreal for July 31, 2018 at 9:00 a.m. Arredondo was adamant that Villarreal's absences were a problem. As a final desperate attempt to engage Tropical Texas in the interactive process, Villarreal explained how working 35 hours instead of 40 hours would not have any substantially negative effect on the department.

22. Arredondo feigned a lack of understanding because she did not have copies of the forms Villarreal submitted to Tropical Texas. Instead, Arredondo made an unreasonable offer for an LPHA position that she knew Villarreal could not do. When Villarreal expressed how she could not do the job Arredondo proposed, Arredondo said that Villarreal "would have to face repercussions." Villarreal asked Arredondo if she could file a grievance or complaint because she felt she was being discriminated against. Arredondo said Villarreal "did not have any other options." Villarreal then became very upset, suffered from anxiety symptoms, and started to cry. Because of her anxiety and mental state, Villarreal could not continue her workday. Villarreal advised her immediate supervisor she would be leaving work for the rest of the day. Villarreal also mentioned a scheduled medical appointment scheduled for that day. Villarreal's immediate supervisor said it was okay and approved her leaving for the day.

23. That same day, July 31, 2018., Villarreal received an email from Arredondo, stating that she had been terminated from her job. Tropical Texas had no legitimate business justification for Villarreal's termination. In fact, Tropical Texas fired Villarreal for her disabilities/serious medical conditions, her request for accommodation and FMLA leave, and her discrimination

complaints and desire to file a grievance.

## V.
## COUNT ONE: DISABILITY DISCRIMINATION UNDER THE ADA/ADAAA

24. Plaintiff incorporates and re-alleges the statements contained in Section IV, entitled *Factual Background*.

25. On July 31, 2018, Tropical Texas fired Plaintiff because of her disability (depression), real or perceived by Tropical Texas, in violation of the Americans with Disabilities Act of 1990, as amended ("ADA") and the ADA Amendments Act of 2008 ("ADAAA").

26. Plaintiff's disability was, at the very least, a motivating factor for Tropical Texas to terminate Plaintiff.

27. The Defendant, by and through its agents, servants, and employees, failed to accommodate Plaintiff and engage in the interactive process to accommodate Plaintiff's disability while similarly situated employees were able to work a flexible shift and less hours like Plaintiff requested.

28. As a result of said discriminatory treatment in violation of the ADA/ADAAA, Plaintiff's ultimate termination and Tropical Texas's acts described herein, Plaintiff has suffered damages, as further stated below.

## VI.
## COUNT TWO: FMLA INTERFERENCE

29. Plaintiff incorporates and re-alleges the statements contained in Section IV, entitled *Factual Background.*

30. Plaintiff was eligible for FMLA leave.

31. Defendant was an employer covered under the FMLA at the time of Plaintiff's termination.

32. Defendant discriminated against and interfered with and restrained Plaintiff's

exercise, attempt to exercise, and her right to FMLA benefits by denying Plaintiff's request for leave to care for her serious medical conditions and her child's serious medical conditions.

33. In terminating Plaintiff's employment and/or refusing to rehire or return Plaintiff to work with similarly situated coworkers, Defendant interfered with, restrained, or denied the exercise or attempted exercise of Plaintiff's right to take FMLA leave; retaliated against Plaintiff because Plaintiff sought protection under the FMLA; and treated Plaintiff less favorably than similarly-situated employees who had not taken FMLA leave, requested FMA leave, and/or given notice of a need to take leave.

34. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*.

35. Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

36. During the time that Plaintiff was employed by Defendant and requested FMLA benefits, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

37. While Plaintiff was employed by Defendant, Plaintiff had to be absent from work attend to her minor child's serious medical conditions and her own serious medical conditions.

38. Plaintiff was entitled to leave due to her and her daughter's health conditions related to her and her daughter's disabilities and her medical needs as provided in the FMLA in 29 U.S.C. § 2612(a)(1)(C).

39. Plaintiff was approved for leave under the FMLA by Defendant's insurance carrier, but Defendant did not properly request additional information or seek proper certification from the employee for FMLA qualifying leave, nor did Defendant provide Plaintiff with an adequate written warning or sufficient time to provide additional documentation, which violates the protections of the FMLA as outlined in 29 C.F.R. § 825.208(a)(2) and 29 U.S.C. § 2613.

40. Defendant's conduct was in violation of 29 U.S.C. §2601, *et seq*.

41.     Villarreal returned to work from FMLA leave after receiving a call from her employer that she needed to return to work on July 10, 2018 because she had exhausted her FMLA leave. It appears however that Villarreal's FMLA leave may have been miscalculated by Tropical Texas and that she may not have exhausted her FMLA leave.   Immediately she reached out to her supervisors advising that she needed an accommodation of a reduced work schedule. For several days there was no response from Tropical Texas. Villarreal continued to attempt to engage in an interactive process with Tropical Texas. Instead what transpired was a flurry of emails between management and HR characterizing Villarreal as a troubled employee, suspecting her of abusing the system but still not responding to her request to discuss an accommodation. On or around July 23 and 24, 2018, management and HR via inter office emails were recommending a separation of employment (termination).

42.     Villarreal again sent a written request to address the accommodation she requested, a reduced week schedule that her immediate supervisor indicated would not be a problem. Villarreal finally received a response denying her accommodation. On Friday July 27, 2018 Villarreal finally met with management and HR and proposed two flex schedules as an accommodation. They advised her that if they were to offer anyone of the schedules, Villarreal had to guarantee she would not miss one day of work for the following 3-4 months. Villarreal could not guarantee that due to her medical condition and her daughter's disability. HR told Villarreal they "had been more than generous in accommodating her absences".

43.     Villarreal followed up with management and HR to see if they were considering the schedules she proposed. The response was to offer her a position that involved being out of the office and seeing patients in the community that involved a significant amount of driving; a position they knew she could not accept given her mental state, medication and treatment. She advised HR of her medical condition sometime prior to this offer. Her position at the time of her

termination involved for the most part only driving to and from the office. Later that day, Villarreal received an email that they were proceeding with termination.

44. Villarreal's FMLA rights were interfered with and her employer retaliated against her because she attempted to exercise those rights.

45. As a result of the discriminatory treatment by Tropical Texas, the ultimate termination and Tropical Texas's acts described herein, Plaintiff has suffered damages as further stated below.

## VII.
## COUNT THREE: FMLA RETALIATION

46. Plaintiff incorporates and re-alleges the statements contained in Section IV, entitled *Factual Background.*

47. Plaintiff was eligible for FMLA leave.

48. Defendant was an employer covered under the FMLA at the time of Plaintiff's termination.

49. Plaintiff engaged in a protected activity by taking FMLA leave and requesting additional FMLA leave that she was entitled to.

50. Plaintiff engaged in a protected activity by opposing Tropical Texas's unlawful employment practices that violate the FMLA.

51. Defendant terminated Plaintiff because of her protected activities under the FMLA.

52. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*

53. Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

54. During the time that Plaintiff was employed by Defendant and requested FMLA benefits, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

55. While Plaintiff was employed by Defendant, Plaintiff had to be absent from work

attend to her minor child's serious medical conditions and her own serious medical conditions.

56. Plaintiff was entitled to leave due to her and her daughter's health conditions related to her and her daughter's disabilities and her medical needs as provided in the FMLA in 29 U.S.C. § 2612(a)(1)(C).

57. Plaintiff was approved for leave under the FMLA by Defendant's insurance carrier, but Defendant did not properly request additional information or seek proper certification from the employee for FMLA qualifying leave, nor did Defendant provide Plaintiff with an adequate written warning or sufficient time to provide additional documentation, which violates the protections of the FMLA as outlined in 29 C.F.R. § 825.208(a)(2) and 29 U.S.C. § 2613.

58. Defendant's conduct was in violation of 29 U.S.C. §2601, *et seq*.

59. As a result of the discriminatory treatment by Tropical Texas, the ultimate termination and Tropical Texas's acts described herein, Plaintiff has suffered damages as further stated below.

## VIII.
## Actual Damages

60. As a result of the incident made the basis of this suit, Plaintiff has incurred damages in the following respects:

**A.     Lost Earnings and Special Damages**

61. At the time of the incident complained of, Plaintiff was gainfully employed. As a proximate result of the wrongful conduct and corresponding acts of the Defendant employer, Plaintiff was unable to attend to her occupation and thereby suffered a loss of income for which she hereby sues. As a result of the wrongful conduct and corresponding acts of the Defendant employer, the Plaintiff's earnings, retirement and capacity to earn a livelihood were severely impaired. In all reasonable probability, the Plaintiff's loss of earnings and loss of earning capacity will continue long into the future, if not for the balance of the Plaintiff's natural life. Plaintiff

therefore sues for any lost earnings in the form of back pay, lost wages, front pay, retirement benefits, and fringe benefits, lost future earnings and/or diminished earning capacity to the extent permitted by law due to the acts complained of above.

**B.      Past and Future Mental Anguish**

62.     As a result of the incident described above, that is made the basis of this suit, Plaintiff has suffered physical injuries, sickness and/or illness as well as emotional distress, loss of enjoyment of life, mental anguish and other hedonic damages.  The Plaintiff has suffered feelings of anxiety, worthlessness, embarrassment, and inferiority. The Plaintiff has further suffered ill-health effects including, but not limited to, agitation, restlessness, sleeplessness, depression and/or loss of self-esteem due to the discriminatory treatment and/or her illegal termination or wrongful discharge.  In all reasonable probability, Plaintiff will continue to suffer such physical injuries, sickness and/or illness as well as emotional distress, loss of enjoyment of life, mental anguish and other hedonic damages for a long time into the future, if not for the balance of her natural life.

## IX.
## Exemplary Damages

63.     The conduct of the Defendant as set out above, was carried out and constituted such an entire want of care as to constitute a conscious indifference to the rights or welfare of the Plaintiff.  Because of the spite, ill-will, malicious and/or fraudulent intent held by the Defendant's management toward the Plaintiff, such management, acting in a willful and intentional manner, committed certain acts calculated to cause injury and/or damage to the Plaintiff.  Accordingly, the Defendant acted with malice, actual malice and/or a specific intent to injure the Plaintiff.  Plaintiff is hereby entitled to recover exemplary or punitive damages to deter such cruel and undignified procedures by the Defendant and its management in the future.  Accordingly, Plaintiff requests

that punitive damages be awarded against the Defendant as a result of its egregious violations of the law.

## X.
## Attorneys' Fees

64. By reason of the allegations of this Complaint and should Plaintiff be designated the "prevailing party", Plaintiff is entitled to recover attorney's fees in a sum that is reasonable and necessary. In this connection, Plaintiff will show that she has employed the undersigned attorney to assist her in the prosecution of this action. Plaintiff further seeks an upward adjustment or enhancement to the *lodestar* amount of attorney's fees to be determined in the prosecution of this lawsuit. A reasonable attorney's fee is further requested for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts. If ultimately successful in this case, Plaintiff fully expects that the defendant employer will appeal this case. Plaintiff seeks attorney's fees to compensate the Plaintiff for the attorney's fees she has and will incur in the prosecution of this lawsuit, both at trial and on appeal. Plaintiff further pleads for the recovery of reasonable and necessary expenses for the use of associate counsel, paralegals and/or law clerks that assist in the prosecution of the case. As permitted, Plaintiff also seeks to recoup all litigation expenses expended in the prosecution of this lawsuit.

## XI.
## Demand for Trial by Jury

65. Plaintiff, by and through her attorney of record make and file this demand for Trial by Jury in the above styled and numbered cause. Plaintiff requests that this case be set on the jury docket of the court for disposition in due order and as soon as practicable.

**WHEREFORE,** Plaintiff, **RAQUEL I. VILLARREAL** prays that this Honorable Court grant the following:

(1) Judgment against the Defendant, **TROPICAL TEXAS BEHAVIORAL HEALTH,** for the Plaintiff's actual damages;

(2) Attorney's fees;

(3) Pre-judgment interest allowed by law;

(4) Interest on said judgment at the legal rate from the date of judgment;

(5) For costs of suit herein; and

(6) For such other and further relief at law or in equity to which the Plaintiff may show herself justly entitled to receive and for which he shall forever pray.

Respectfully submitted,

**THE LAW OFFICES OF
CINDY A. GARCIA, P.C.**
1113 Nightingale Ave.
McAllen, Texas 78504
Telephone: (956) 412-7055
Facsimile: (956) 412-7105
thegarcialawfirm@gmail.com
cluna.garcialaw@gmail.com

By: /s/ cindy a. garcia
   Cindy A. Garcia
   State Bar No. 07631710
   Federal ID No. 58460

**ATTORNEY FOR PLAINTIFF
RAQUEL I. VILLARREAL**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 5th day of May 2020, a true and correct copy of the foregoing document was sent via electronic mail.

**VIA E-MAIL: rjnavarro@rampage-rgv.com**
Ricardo J. Navarro
**rdrinkard@rampage-rgv.com**
Robert L. Drinkard
**DAYTON NAVARRO ROCHA BERNAL & ZECH**
A Professional Corporation
701 E. Harrison Ste. 100
Harlingen, Texas 78550

By: /s/ cindy a. garcia
Cindy A. Garcia