United States District Court
Southern District of Texas

**ENTERED**

October 30, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAQUEL I. VILLARREAL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-053 |
| | § | |
| TROPICAL TEXAS BEHAVIORAL | § | |
| HEALTH, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT TROPICAL TEXAS BEHAVIORAL HEALTH'S MOTION FOR SUMMARY JUDGEMENT

Now before the Court is Defendant Tropical Texas Behavioral Health's Motion for Summary Judgement (Dkt. No. 24). After considering the Motion, the parties' responsive briefings (Dkt. Nos. 28, 29, 35), and the relevant law, the Court is of the opinion that Defendant's Motion (Dkt. No. 24) should be granted.

### I.    Factual and Procedural Background

Raquel Villarreal ("Villarreal") filed suit in this Court on February 13, 2019, alleging that Tropical Texas Behavioral Health ("Tropical"), Villarreal's past employer, violated the ADA/ADAAA and FMLA. Dkt. No. 1.[1] The basic facts of the case are undisputed. Villarreal began working for Tropical as a "Program Specialist/Licensed Professional Healing Arts ("LPHA")," around April 2016. Dkt. No. 32 at ¶ 6. Villarreal took FMLA leave in 2017 and 2018 to take time off to care for her minor child as well as to care for herself. *Id.* at ¶¶ 10–11, 13. Villarreal is the single parent to a minor child with multiple disabilities and suffers from a mental disability of depression herself. *Id.* at ¶¶ 7–8.

---

[1] Plaintiff additionally alleged that Defendant violated Title VII of the Civil Rights Act of 1964; however, she abandoned this claim when she amended her pleading on May 10, 2019. *Compare* Dkt. No.1, *with* Dkt. No. 15.

Villarreal's most recent FMLA leave began around June 2018 and ended on July 12, 2018, when Villarreal was "notified by [Defendant] that she exhausted her FMLA leave." *Id.* at ¶ 13. On the day that she returned to work, July 12, 2018, Villarreal "expressed that . . . she needed to reduce her work hours and have a flex schedule so that she could care for her daughter's disabilities/serious medical conditions as well as her own." *Id.* at ¶ 14. Villarreal met with Tropical's director of human resources three times to discuss Villarreal's employment and possible accommodations. *Id.* at ¶¶ 18–20. Villarreal was given two options to accommodate her disability: (1) she could flex her schedule in her current position if she could commit to taking no unprotected leave for 3–4 months, *id.* at ¶ 42, or (2) she could move to a similar position where she would be paid the same salary and allowed to plan her own schedule (i.e., work a flex schedule), *id.* at ¶ 43, Ex. 1 at 239:18–24, Ex. 2 at Bates 000327. Villarreal could not commit to taking no unprotected leave for 3–4 months and rejected the move to a vacant position. *Id.* at ¶ ¶ 42–43. Following Villarreal's final meeting with Tropical management, on July 31, 2018, she asked if she could file a complaint as she felt Tropical staff was discriminating against her because of her disability. *Id.* Later that same day, Plaintiff was terminated from her job via email. *Id.* at ¶ 21.

Plaintiff represents that she filed a complaint with the Equal Employment Opportunity Commission on November 1, 2018, and received a Dismissal and Notice of Rights letter on November 20, 2018. *Id.* at ¶¶ 4–5; Dkt. No. 1, Ex. A (Dismissal and Notice of Rights indicating that it was mailed on November 15, 2018). Plaintiff filed this action on February 13, 2019. *See* Dkt. No. 1.

In her Second Amended Complaint (Dkt. No. 32), Villarreal alleges multiple causes of action against Tropical, namely: (1) disability discrimination under the ADA/ADAAA, alleging

that Plaintiff was terminated at least in part due to her own disability; (2) FMLA interference; and (3) FMLA retaliation.[2] Dkt. No. 32 at ¶¶ 24–59. Tropical now moves for the Court to dismiss Villarreal's claims, contending that Villarreal cannot establish her claims as a matter of law. Dkt. No. 24 at 8–9; Dkt. No. 35 (Defendant's Supplemental Motion for Summary Judgement). The Court will examine each of Plaintiff's causes of action in turn.

## II.    Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit under the governing law and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c).  Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial.  *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c).  In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448,

---

[2] Plaintiff previously asserted a disability discrimination by association cause of action under the ADA/ADAAA based on her daughter's disabilities. This Court granted Defendant's motion to dismiss on that claim. *See* Dkt. No. 30. Therefore, Plaintiff's arguments based on her daughter's disability are not relevant to the remaining ADA/ADAAA claim.

454 (5th Cir. 2006).   However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

## III.   Evidentiary Issues

Tropical argues that Villarreal's affidavit attached to her summary judgement response (Dkt. No. 28) should be struck from the record under the sham affidavit rule. Dkt. No. 29 at 13–14. "The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgement." *Free v. Wal-Mart La., L.L.C.*, 815 Fed.Appx. 765, 766 (5th Cir. 2020) (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). Here, Tropical takes particular issue with Villarreal's argument that Tropical "may" have miscalculated her FMLA leave. Dkt. No. 29 at 13–14. Villarreal was deposed and, according to Tropical, never testified that Tropical denied her use of FMLA leave. *Id.* at 14. Instead, Villarreal acknowledged that she had used and exhausted her entire 12 weeks of FMLA leave and stated that she was not accusing Tropical of incorrectly calculating her FMLA leave. *Id.*; s*ee also* Dkt. No. 24, Ex. 1, p. 181:2–24, p. 131:8. The deposition transcript shows that when asked if she was ever denied FMLA to tend to her daughter, Villarreal answered that "[Defendant] did not tell me I could not use FMLA." Dkt. No. 24, Ex. 1, p. 181:23–24. When asked if she had exhausted all of her FMLA leave in July of 2018, when Defendant notified her that her leave was exhausted, Plaintiff agreed

that "yes" she had exhausted her FMLA leave at that time. *Id.*, Ex. 1, p. 184:10–15. When asked "[a]re you alleging in this lawsuit that [Defendant] incorrectly calculated exhaustion of your FMLA leave?" Villarreal said she was "not saying that [Defendant] incorrectly calculated it." *Id.*, Ex. 1, p. 185:12–16. However, Villarreal's deposition testimony was at times inconsistent with itself. Villarreal also testified that she did not know if she disagreed with Defendant's calculations. *Id.*, Ex. 1, p. 184:16–21. Villarreal said she did not know if she could trust the calculations Tropical had communicated to her. *Id.*, Ex. 1, p. 184:24. Therefore, Villarreal's assertion that Tropical "may" have miscalculated her FMLA leave is in fact consistent with the parts of her deposition in which she indicated she had questions as to the accuracy of Tropical's calculations. *Id.*, Ex. 1, p. 184:16–24.   As a result, Defendant's motion to strike Villarreal's affidavit is **DENIED**. *Cf. Free*, 815 Fed.Appx. at 766 (affirming application of the sham affidavit rule where plaintiff's affidavit introduced for the first time a statement incriminating to the defendant when plaintiff had specifically been asked during a deposition what the defendant had said). Whether Villarreal's assertion that Tropical may have miscalculated her FMLA leave creates a genuine issue for trial is discussed below in the analysis of Villarreal's FMLA interference claim.

## IV.    ADA Claim

The Americans with Disabilities Act (ADA) prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To prevail under the ADA, Plaintiff must plead and prove that: (1) she has a disability; (2) she is an otherwise qualified employee; and (3) she suffered an adverse

employment decision solely because of her disability. *Rizzo v. Children's World Learning Ctrs., Inc.,* 173 F.3d 254, 260 (5th Cir. 1999), *on reh'g en banc*, 213 F.3d 209 (5th Cir. 2000). The Fifth Circuit has held that a plaintiff alleging a failure to accommodate a disability, like Villarreal does here, must show that (1) plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known to the employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Section 12112(b)(5) provides that "to discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity. 42 U.S.C. § 12112(b)(5); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). Because the Court finds Villarreal has failed to establish a genuine issue of fact as to whether Tropical failed to make reasonable accommodations for her known limitations, it is unnecessary to analyze whether Villarreal is a qualified individual and whether her disability and its consequential limitations were known to the employer.

The Americans with Disabilities Act (ADA) provides that reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "When a qualified individual with a disability requests a reasonable, accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471

(5th Cir. 2009) (citing 29 C.F.R. pt. 1630, App., § 1603.9). "[T]he employer, using a problem

solving approach, should:"

    (1) Analyze the particular job involved and determine its purpose and essential functions;
    (2) Consult with the individual with a disability to ascertain the precise job-related
        limitations imposed by the individual's disability and how those limitations could be
        overcome with reasonable accommodation;
    (3) In consultation with the individual to be accommodated, identify potential
        accommodations and assess the effectiveness each would have in enabling the
        individual to perform the essential functions of the positions; and
    (4) Consider the preference of the individual to be accommodated and select and
        implement the accommodation that is most appropriate for both the employee and the
        employer.

*Jiles v. Wright Med. Tech., Inc.*, 313 F.Supp.3d 822, 841 (S.D. Tex. 2018) (citing 29 C.F.R. §

1630.9, App. (Westlaw) (Interactive Guidance on Title I of the Americans with Disabilities

Act)). "[T]he ADA does not provide a right to an employee's preferred accommodation but only

to a reasonable accommodation. *Kitchen v. BASF*, 952 F.3d 247, 254 (5th Cir. 2020) (citing

*EEOC*, 555 F.3d at 471 (5th Cir. 2009)).

      Consistent attendance is the essential duty that Villarreal's disability prevented her from

accomplishing. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (holding

an essential element of any job is the ability to appear for work and to complete assignments

within a reasonable period of time) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209,

213 (4th Cir. 1994); *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994)). Villarreal and Tropical

management communicated multiple times about potential accommodations and Villarreal met

with HR Director Odilia Arredondo on July 25th and Ms. Arredondo and multiple supervisors on

July 27th and 31st. *See* Dkt. No. 28, Ex. 1 at p. 230:22–232:4, p. 233:25–234:2, p. 247:21–248:24,

Ex. 17E at Bates 000049–50. Villarreal suggested a flex schedule of 30, 33, or 35 hours per week

as an accommodation. *Id.*, Ex. 1 at 237:7–16. Tropical told Villarreal they would approve her

flex schedule request if she could commit to taking no unprotected leave for 3–4 months. *Id.*

Villarreal could not agree to this condition, as she admitted she would still have to periodically miss work despite having no protected leave left. *Id*. Defendant then offered to move Villarreal to a similar position where she would be paid the same salary and allowed to plan her own schedule, giving Villarreal the flex schedule she wanted. *Id.*, Ex. 1 at 239:18–24, Ex. 2 at Bates 000327 (job description of new LPHA position listing shift as "flex schedule"). This new position involved seeing patients in the community instead of in the office. *Id.*, Ex. 1 at 238:18–19. Villarreal claims this was not a reasonable accommodation because Tropical knew she could not accept the new position "given her mental state, medication, and treatment." *Id.* at 26. According to Villarreal, her medication made her drowsy and her doctor had warned her not to drive while taking it. *Id.*, Ex. 1 at 240:20–241:19. However, Villarreal provides no supporting evidence of this restriction. Villarreal makes no claim that she was not driving herself to and from work and doctor's appointments. The only evidence before the Court relating to Villarreal's medical limitations makes no mention of an inability to drive while on medication. *Id.*, Ex. 2 at Bates 000323–26 (June 2018 doctor's note), Bates 000328–331 (July 2018 doctor's note). Villarreal submitted two documents, in the June and July of 2018 respectively, acknowledging Villarreal suffered from depression. The June 2018 doctor's note stated that Villarreal was not limited in the job activities she could perform but that she may need a reduced schedule, which she should discuss with her supervisors. Dkt. No. 24, Ex. 14 at 3–4. The July 2018 doctor's note stated that while Plaintiff would likely have episodic flare-ups preventing her from performing her job functions, it would not be medically necessary for her to be absent from work during the flare-ups but that she would need an appointment with a doctor. *Id.*

The evidence shows that Villarreal did not want to move positions.[3] That is not enough to

---

[3] Villarreal refers to this new position as a "demotion." However, she provides no explanation at all as to how the position was a demotion. *See* Dkt. No. 28 at 7, 21, 22 (Plaintiff's summary judgement response); Dkt. No. 32 at 6

create a fact issue as to the reasonableness of Tropical's proposed accommodation. *Kitchen* 952 F.3d at 254 ("[T]he ADA does not provide a right to an employee's preferred accommodation but only to a reasonable accommodation."). Reassignment of an employee to a vacant position is listed as a reasonable accommodation under the ADA. 42 U.S.C. § 12111(9)(B). Villarreal has failed to provide any evidence establishing a fact issue as to why reassignment options provided by Tropical would have been unreasonable in her case. Therefore, her ADA claim cannot stand and Tropical is entitled to summary judgement on this issue. *See Feist*, 730 F.3d at 452.

## V.    FMLA Interference Claim

"The [Family and Medical Leave Act (FMLA)] makes it unlawful for employers to 'interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under' the Act." *Amsel v. Tex. Water Dev. Bd.*, 464 Fed.Appx. 395, 400–01 (5th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)). To establish a *prima facie* interference claim, Plaintiff must show that (1) she was an eligible employee, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) her employer interfered with, restrained, or denied her the benefits to which she was entitled under the FMLA, and (6) she was prejudiced. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed.Appx. 312, 316 (5th Cir. 2013). "The term 'interference with' includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Bell v. Dall. Cnty.*, 432 Fed.Appx. 330, 334 (5th Cir. 2011) (quoting 29 C.F.R. § 825.220(b) (2010)). "With an interference claim, an employee must show that [she] was denied [her] entitlements under the FMLA, or, an employer did not respect the employee's FMLA entitlements." *Id.*

---

(Plaintiff's second amended complaint). Therefore, this is an unsubstantiated assertion and not legally sufficient evidence for purposes of a motion for summary judgement. *See Brown*, 337 F.3d at 541 ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

To support her argument that Tropical interfered with her use of FMLA leave, Villarreal claims that during her "last year of employment [with Defendant], she was repeatedly pressured by supervisors that she was missing too much work and was not accumulating paid-time off ('PTO'). [Villarreal] was told by supervisors that [Tropical] 'frowned upon' employees who did not have accumulated PTO and that it could be reason for disciplinary action or termination." Dkt. No. 32 at ¶ 9. Plaintiff does not point to any specific instances of this but did present a performance review from October 2017 in which one of the observations made was that "Mrs. Villarreal's attendance is a concern due to her low PTO balance." Dkt. No. 28, Ex. 4 at Bates 000069.

In *De La Garza-Crooks v. AT&T*, the Fifth Circuit addressed a similar case. The plaintiff brought only an interference claim under the FMLA, alleging she was discouraged from using her FMLA leave. *See De La Garza-Crooks v. AT&T*, 252 F.3d 436, 436 (5th Cir. 2001) (*per curiam*). Ms. De La Garza-Crooks provided details of specific meetings and specific AT&T staff who allegedly scolded her for utilizing her FMLA leave. *See* Brief of Appellant Linda De La Garza-Crooks at 5–6, *De La Garza-Crooks v. AT&T*, 252 F.3d 436, 436 (5th Cir. 2001) (No. 00-50969). However, the evidence showed that the defendant had never denied plaintiff any requested FMLA leave. Because defendant had never rejected her FMLA requests and plaintiff had taken all the FMLA leave available to her, the Fifth Circuit held plaintiff had not established a fact issue that precluded summary judgement. *De La Garza-Crooks*, 252 F.3d at 436 (citing *Graham v. State Farm. Mut. Ins. Co.*, 193 F.3d 1274, 1274 (11th Cir. 1999). "Generally, proof of injury under the FMLA requires evidence that the plaintiff was denied FMLA leave improperly." *Id.*

The result is the same here. Villarreal has failed to present any evidence that she refrained from taking FMLA leave to which she was entitled because of any actions of Tropical. To the contrary, the record shows that Villarreal took all FMLA leave available to her during the period relevant to this case. Although Villarreal provides evidence to show there may have been some miscommunication at times as to how much FMLA leave she had remaining, none of her examples question the time her leave expired. *See* Dkt. No. 28, Ex. 6 at Bates 000309 (email from HR stating a balance of 205 FMLA hours on 2/2/2018); Dkt. No. 28, Ex. 6 at Bates 000459 (tracker tool showing balance of 280 FMLA hours on 2/2/2018); Dkt. No. 28, Ex. 6 at Bates 000499 (email from HR stating a balance of 379.50 FMLA hours on 1/22/2018); Dkt. No. 28, Ex. 6 at Bates 000358 (tracker tool showing balance of 352 FMLA hours on 1/22/2018). Plaintiff makes no attempt to calculate her actual FMLA usage.  Plaintiff provides no evidence that her leave did not actually expire on July 12, 2018 when Defendant said it was to expire, or that she requested FMLA leave after July 12th and it was denied. Villarreal only asserts that Tropical "may have" miscalculated her leave. Dkt. No. 28 at 4; Dkt. No. 32 at 4, 10. For its part, Tropical provides a detailed record of Villarreal's FMLA leave to show that Villarreal was never denied use of FMLA leave. Dkt. No. 24 at 3, Exs. 11, 12, 17. The evidence reflects that Tropical not only allowed Villarreal to use FMLA leave for as long as she had hours remaining, but also allowed her to go over her statutory FMLA leave by 7.75 hours on July 12, 2018. *Id.* at 5.

As a result of Villarreal's failure to provide support that Tropical denied her FMLA leave to which she was entitled, her accusation is conclusory and Tropical is entitled to summary judgement in its favor on Villarreal's FMLA interference claim. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c); *see De La Garza-Crooks*, 252 F.3d at 436 (citing *Graham*, 193 F.3d at 1274) (requiring evidence that the plaintiff was denied FMLA leave improperly).

## VI.     FMLA Retaliation Claim

The FMLA, in addition to prohibiting interference, prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for exercising FMLA-protected rights. 29 U.S.C. § 2615(a)(2). Retaliation claims under the FMLA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Wheat v. Florida Parish Juvenile Just. Com'n*, 811 F.3d 702, 705 (5th Cir. 2016). This framework first requires the employee to set out a *prima facie* case of retaliation by establishing: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and (3) a causal link exists between her protected activity and the adverse action. *Id.* (citing *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489–90 (5th Cir. 2014) (Title VII case); *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2012) (FMLA case)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citations omitted).

Because the Court finds that (1) Tropical has satisfied its burden of articulating a legitimate nonretaliatory reason for termination and (2) Villarreal has failed to meet her burden of showing pretext, the court need not decide whether Villarreal has established a *prima facie* case for FMLA retaliation. Therefore, the Court will assume, without deciding, that Villarreal has made a *prima facie* case under the first step of the framework.

### 1.   Tropical's Nonretaliatory Reason for Termination

To satisfy step two of the framework, Tropical's "burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*,

12 / 16

530 U.S. 133, 142 (2000). Here, Tropical has clearly met its burden by producing a significant amount of evidence to show that Villarreal was terminated for taking excessive unprotected absences. Tropical's company policy states "[a]n employee who takes excessive unplanned or unexcused time off will have the appropriate time deducted from their PTO bank and may be subject to disciplinary action up to and including termination. Dkt. No. 24, Ex. 4 at Bates 000700. Violation of company policy is a legitimate and nondiscriminatory reason for termination. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); *Harville v. Tex. A&M Univ.*, 833 F. Supp. 3d 645, 658 (S.D. Tex. 2011) (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)).

There is ample evidence to support Tropical's proffered reason for terminating Villarreal. First, Odilia Arredondo's affidavit states Villarreal missed at least a portion of work on multiple days after exhausting her FMLA leave: July 13, 17, 18, 19, 20, 23, and 24. Dkt. No. 24, Ex. 17 at 2. Villarreal's absences were not protected, as she had no FMLA leave, PTO, or sick leave. *Id.* Much of this was confirmed by Villarreal in her deposition. *Id.*, Ex. 1, p. 245:4–8. Plaintiff admitted to being gone all day July 18, from 1 p.m. to 5 p.m. on July 19, from 1:30 p.m. to 5 p.m. July 23, and all day on July 24, despite having no protected leave. *Id.*, Ex. 1, p. 245:4–8. Second, the emails between management and HR reiterate this reasoning. On July 17, 2018, Hildebrando Mireles, a supervisor, emailed Odilia Arredondo and Hilda Garcia the following: "I'm having trouble with [Ms. Villarreal] being present for work consistently . . . Recently she attained a doctor's excuse for unapproved [leave without pay] absences to Arizona. I suspect abuse but that is only speculation." Dkt. No. 28, Ex. 5 at Bates 000570. On July 24, 2018, Josue Gutierrez, also a supervisor, emailed Hildebrando Mireles after Villarreal texted him at 7:50 a.m. that morning to say she wouldn't be in that day: "This continues to be a trend in which [Ms.

Villarreal] advises with very short amount of time to plan . . . This continues to affect the flow and overall production of this team." *Id.*, Ex. 5 at Bates 000588. Further, more emails show staff discussing the amount of time Ms. Villarreal had taken off since her protected leave was exhausted in July 12th and the problems her unprotected absences were causing her team. *Id.*, Ex. 5 at Bates 000590–92. A July 31, 2018 email from Odilia Arredondo to Villarreal provides "the agency cannot continue to allow excessive absences which you stated will be ongoing. If you are unable to accept the option [of moving to the vacant position] presented to you this morning then we are left with no choice but to proceed with neutral termination." *Id.*, Ex. 17F at Bates 000598. An August 20, 2018 letter from Arredondo to Villarreal recounting the discussions leading up to Villarreal's termination stated that after Villarreal turned down the offer to move to a vacant position, Arredondo "explained the repercussions this could have on [her] *because [she] no longer had any protected leave time*." *Id.*, Ex. 17E at Bates 000050 (emphasis added).

Tropical finds further support for their termination reasoning in Villarreal's admission that she was unable to guarantee she would not continue to take unprotected absences. *Id.*, Ex. 17 at 3; Dkt. No. 28 at 26, Ex. 1 at 237:7–16. Tropical's reasoning for terminating Villarreal has remained consistent and is supported by the evidence it has provided.

### 2. Villarreal's Evidence of Pretext

In the face of Tropical's legitimate, nonretaliatory reason for terminating Villarreal's employment, the burden shifts to Villarreal to establish that Tropical's reason for discharge was a pretext for discrimination. *LeMaire*, 480 F.3d at 388–89. Pretext cannot be established by creating only a weak issue of fact as to whether Tropical's reason for terminating her is untrue. *See* Reeves, 530 U.S. at 148. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy

of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)) (internal quotations omitted). In either respect, Villareal bears the burden of persuading the Court that Tropical unlawfully retaliated against her. *Id.* at 378 (citing Reeves, 530 U.S. at 142).

As evidence that Tropical retaliated against her because she sought protection under the FMLA, Villarreal points to Tropical terminating her employment "and/or refusing to rehire or return [her] to work with similarly situated coworkers." Dkt. No. 32 at ¶ 33. Plaintiff alleges that in being fired she was treated differently than similarly situated employees who had not taken or requested FMLA leave. *Id.* To support this claim, Plaintiff in her affidavit states that other LPHAs Magdalena and Jackie were being allowed to flex their schedule. Dkt. No. 28, Ex. 6 at 6. Plaintiff provides no details beyond this. We do not know if Magdalena or Jackie had taken FMLA leave prior to being approved for a flex schedule or if they had excessive unprotected absences. Therefore, the Court cannot conclude that Villarreal's evidence creates a fact issue as to whether she was treated disparately by being terminated after exhausting FMLA leave and incurring unprotected absences.

Next, relevant to the issue of whether Tropical's proffered reason is worthy of credence, Plaintiff points to the emails between management and HR characterizing Plaintiff as a troubled employee and suspecting her of abusing the system. *See* Dkt. No. 28 at 25, Ex. 5 at Bates 000570.  However, these emails were sent after Villarreal exhausted her protected leave and complain only of Villarreal's unprotected absences. There is no evidence that Tropical management complained of Villarreal's protected absence. Plaintiff also seems to argue that Defendant's proposing a move to a position despite allegedly knowing that Plaintiff could not accept that position is evidence of FMLA retaliation. *See* Dkt. No. 28 at 26. As discussed in the

analysis of the ADA claim, the evidence before the Court shows this offer to move Villarreal to a vacant position was a reasonable accommodation. The evidence shows that Tropical management took several steps to prevent termination of Villarreal, first offering her a flex schedule in her current position if she could commit to not missing work and then offering her a flex schedule in a similar position. Dkt. No. 28, Ex. 1 at 237:7–16, 239:18–24. When Villarreal failed to take steps to prevent future unprotected absences, she was terminated. Villarreal has not provided legally sufficient evidence to create a genuine issue of fact for trial that Tropical's reason for discharge is not believable or otherwise unworthy of credence. Therefore, and in light of the overwhelming evidence supporting the claim that Villarreal was terminated for excessive unprotected absences, Tropical is entitled to summary judgment on Villarreal's retaliation claim.

## VII.    Conclusion

Viewing the summary judgement evidence and the reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds there are no material issues of fact as to Plaintiff's claims. Thus, the Court finds that Defendant is entitled to judgement as a matter of law. For the foregoing reasons, the Court hereby **ORDERS** that Defendant's Motion for Summary Judgement (Dkt. No. 24) is **GRANTED**, and Plaintiff's claims asserted against Defendant are **DISMISSED** with prejudice.

SO ORDERED this 30th day of October, 2020, at McAllen, Texas.

Randy Crane
United States District Judge

16 / 16